## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------X

In re:                                           Chapter 7

DOWNEY FINANCIAL CORP.,                          Case No. 08-13041 (CSS)

                   Debtor.        **Objection Deadline: January 14, 2010 at
4:00 p.m.
Hearing Date: January 21, 2010 at 9:30
a.m.**

-------------------------------------------------------X

## MOTION OF THE FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF DOWNEY SAVINGS & LOAN ASSOCIATION, F.A., SEEKING AN ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY

The Federal Deposit Insurance Corporation (the "FDIC"), as Receiver ("FDIC-R") of Downey Savings & Loan Association, F.A. ("Downey S&L"), by its undersigned counsel, files this Motion for Relief From the Automatic Stay (the "Motion"),[1] seeking entry of an order lifting the automatic stay pursuant to § 362(d) of Title 11 of the United States Code (the "Bankruptcy Code"), to the extent that it is deemed to apply and may be required, so that the FDIC-R may exercise certain of its rights pursuant to Section

---

[1] The submission of this Motion shall not in any way constitute a submission by the FDIC-R to the jurisdiction or authority of the Bankruptcy Court for the resolution of any regulatory matter involving the Debtor and the FDIC-R. Nor is this Motion an admission that this Court is the appropriate forum for disputes between the FDIC-R and the Debtor. The filing of this Motion shall not constitute a waiver or consent by the FDIC-R of any: (a) right to Sovereign Immunity, whether the FDIC-R is acting in its capacity as Receiver; (b) right to have any and all final orders in any and all non-core matters entered only after *de novo* review by a United States District Court Judge; (c) right to trial by jury in any proceeding as to any and all matters so triable therein, whether or not the same be designated legal or private rights, or in any case, controversy or proceeding related thereto, whether or not such jury trial right is pursuant to statute or the United States Constitution; (d) right to have the reference of this matter withdrawn by the United States District Court in any matter or proceeding subject to mandatory or discretionary withdrawal; or (e) other rights, claims, actions, defenses, setoffs, recoupments or other matters to which the FDIC-R is entitled under any agreements or at law or in equity or under the United States Constitution. All of the foregoing rights are expressly reserved and preserved, without exception, and without the intention or purpose of conceding jurisdiction in any way by this filing or by any other participation in this matter or in this case. The FDIC-R expressly reserves all rights at law and equity to assert the preemption of the Bankruptcy Court's jurisdiction and the exclusive jurisdiction provided under Title 12, as applicable, with respect to the FDIC-R.

6402(k) of Title 26 of the United States Code (the "Internal Revenue Code") and 26 C.F.R. § 301.6402-7 ("Treas. Reg. § 301.6402-7"). By these provisions, as described more fully below, the FDIC-R is entitled to file a claim for a refund and/or file a loss return for the 2008 tax year as a fiduciary of Downey S&L, and any amendments to prior year's returns as may be permitted under law, and to take such other action as may be necessary to protect and preserve the claims of the receivership estate (the "Receivership") to tax refunds (collectively, the "Tax Rights"). To the extent the automatic stay applies (which the FDIC-R does not believe to be so), the FDIC-R also seeks, by this Motion, stay relief *nunc pro tunc* so as to permit the prior submission of a Form 56-F ("Notice Concerning Fiduciary Relationship of Financial Institution")[2] to the Internal Revenue Service (the "IRS") and/or grant relief from the automatic stay to allow the FDIC-R to submit (or re-submit) Form 56-F as Treas. Reg. § 301.6402-7 assumes will be done.

Importantly, the FDIC-R is not, by this Motion, seeking to recover a claim or exercise its rights against Downey Financial Corp. ("DFC" or the "Debtor"). Nor is the FDIC-R seeking, by this Motion, to take any action which precludes the Trustee from continuing his efforts to marshal assets on behalf of the Debtor's estate. As set forth in the relevant Treasury Regulations, the mere act of filing the tax return is itself not determinative of ownership of any refund which might be remitted by the IRS. Although the FDIC-R believes that the Tax Refunds rightfully belong to Downey S&L, the failed bank and thus now to the Receivership, the resolution of ownership of the tax refunds will be for another day and is not the subject of this Motion. Indeed, in the event that any

---

[2]     A sample copy of a Form 56-F is attached as Exhibit "A" to the Declaration of Melanie L. Cyganowski, sworn to on January 4, 2010 (the "Cyganowski Declaration").

tax refunds were remitted to the FDIC-R, the Receiver agrees to place the monies into escrow pending a judicial determination of ownership.

In support thereof, the FDIC-R asserts as follows:

## PRELIMINARY STATEMENT

1.      On September 14, 2009, the Chapter 7 Trustee (the "Trustee") filed a consolidated tax return with the IRS for tax year 2008 on behalf of the Debtor and each of its subsidiaries, including Downey S&L. Annexed to the return was an attachment in which the Trustee explained (without prior notice to the FDIC-R) that he sought a tax refund arising from the worthlessness of DFC's stock investment in Downey S&L. The intended consequence of the Trustee's chosen tax treatment was to retain any refund entirely for the DFC estate. Upon information and belief, the potential refund currently sought by the Trustee from the IRS is in excess of $300 million.[3]

2.      While the Trustee seeks to recover 100% of any tax refund on behalf of the DFC estate, in fact, the *source* of the overpayments to be refunded was *not DFC, but rather was Downey S&L.* Upon information and belief, in each of the tax years for which a refund may be sought, virtually every dollar that was paid to the IRS were funds of Downey S&L, which in each such year remitted funds to DFC for the payment of taxes to

---

[3]      With the recent enactment of the American Recovery and Reinvestment Act of 2009, all taxpayers (except TARP funding recipients) may now elect to increase the carryback period for an applicable net operating loss for up to five years, as opposed to two years under prior law. Upon information and belief, notwithstanding the Trustee's knowledge that the FDIC objects to the worthless stock basis of the return, the Trustee, without prior notice to the FDIC-R, has amended the September 14, 2009 consolidated tax return he filed, to request a refund totaling approximately $300 million, consistent with this recent change in law.

the IRS.[4]  In other words, *any refund* for overpayment in any of the applicable tax years is a refund of Downey S&L's funds -- not DFC's, and no refund would exist except for the funds that Downey S&L remitted to DFC for payment to the IRS.  Were Downey S&L filing a tax return separately, application of *its* net operating losses ("NOLs") in 2008 (the year Downey S&L was taken over by the FDIC) would entitle Downey S&L, *not* DFC, to all or substantially all of the tax refund in question.  Indeed, were it not for Downey S&L's losses, DFC's stock holdings would not be deemed "worthless" at all.  Nevertheless, upon information and belief, if the Trustee's "worthless stock" treatment were to be accepted, Downey S&L's NOLs would be extinguished and the FDIC-R would not be permitted to seek the refund to which it asserts the Receivership is entitled.  The FDIC-R has advised the Trustee of its objection to the Trustee's attempt to receive a windfall at the expense of the Receivership.

      3.      The FDIC-R is a fiduciary under law.  It is charged with the preservation and collection of all assets of a failed depository institution for the benefit of depositors and taxpayers.  The law recognizes that the FDIC's fiduciary duties entail seeking tax refunds that may be due failed depository institutions, even in the context, as here, where consolidated tax returns have previously been filed by a parent holding company, as agent of an affiliated group.  Under § 6402 of the IRC and Treas. Reg. § 301.6402-7, the FDIC, as a "fiduciary," is granted the right to serve as an alternate agent for a consolidated group, with the corresponding right to file a return separately from the parent holding company and to assert a separate basis for a refund — here, the carryback of Downey S&L's NOLs.

---

[4]      The FDIC-R has received tax information for each of the calendar years 2004-2008.  It is believed that the same analysis would pertain for 2003, the last year for which an operating loss can be carried back under the law as revised.

4.     By this Motion, the FDIC-R seeks an order lifting the stay, to the extent it is deemed to apply and may be required, to allow the FDIC-R to file the applicable tax return in accordance with § 6402 and applicable regulations, and to set forth before the IRS the basis for the tax treatment that the FDIC-R believes is appropriate – and fair – in these circumstances.  Moreover, the submission to the IRS of a specific form, a "Form 56-F," is required in order for the FDIC-R, as fiduciary, to exercise its Tax Rights.  While the FDIC-R has previously submitted such a form, the Trustee now asserts that it did so in violation of the stay – a claim that the FDIC-R entirely rejects.[5]  Nonetheless, to avoid any implication, the FDIC-R also seeks, by this Motion, stay relief *nunc pro tunc* so as to permit the prior submission of the Form 56-F to the IRS and/or grant relief from the automatic stay to allow the FDIC-R to submit (or re-submit) Form 56-F as Treas. Reg. § 301.6402-7 assumes will be done.[6]

5.     Lastly, it is important to note what this Motion does not seek.  As the FDIC-R has made plain to the Trustee (who nonetheless has rejected overtures of the FDIC-R to resolve this matter by stipulation), the FDIC-R is not seeking to retain any refund it may recover from the IRS by reason of exercise of its rights under § 6402 and Treas. Reg. § 301.6402-7.  Rather, the FDIC-R agrees to remit any such refund into the escrow account previously created pursuant to order of this Court, and further agrees that the funds shall remain in escrow subject to order of a court of applicable jurisdiction.  Indeed, as Treas. Reg. § 301.6402-7(j) expressly provides, the IRS' determination of the

---

[5]     By letter dated December 30, 2009 and email dated January 3, 2010, the Trustee rejected the FDIC-R's overture to resolve the issues raised by this Motion by stipulation among the parties.  In his letter, the Trustee asserted for the first time that the submission of the Form 56-F was in violation of the stay, and now demands that the FDIC-R immediately withdraw its previously-submitted Form 56-F.

[6]     The submission of a Form 56-F is not subject to the automatic stay in any event -- it merely places the IRS on notice that the fiduciary is now acting for the failed institution. *See* Treas. Reg. § 301.6402-7(d).  The FDIC asserts that the automatic stay is inapplicable to it in these circumstances and reserves all rights.

competing tax returns of the Trustee and the FDIC-R would not determine *ownership* of any resulting refund. *See* Treas. Reg. § 301.6402-7(j). Determination of ownership would be the province of a court ruling.

6.      In sum, the stay should be lifted, to the extent that it is deemed to apply and may be required, solely for the purpose of permitting the FDIC-R to exercise its rights under § 6402 of the IRC and Treas. Reg. § 301.6402-7 as a fiduciary for Downey S&L.

## BACKGROUND

### Appointment of the FDIC as Receiver

7.      On November 21, 2008 (the "Bank Closing Date"), the Office of Thrift Supervision closed Downey S&L and appointed the FDIC as the Receiver of Downey S&L. Immediately after the FDIC-R was appointed as the Receiver, U.S. Bank, National Association, Minneapolis, MN ("US Bank"), acquired the banking operations, including all the deposits, of Downey S&L, pursuant to a Purchase and Assumption Agreement (the "Agreement"), dated as of November 21, 2008. The FDIC-R retained certain interests and assets under the Agreement, including the rights to any and all tax refunds to which Downey S&L would be entitled.

8.      Prior to the Bank Closing Date, DFC was a savings and loan holding company that owned Downey S&L.

9.      The FDIC is a corporation organized and existing pursuant to the Federal Deposit Insurance Act, 12 U.S.C. §§ 1811, *et seq.*, with its principal place of business located in Washington, D.C. The FDIC is an independent agency created by the Congress of the United States that maintains the stability and public confidence in the

nation's financial system by insuring deposits, examining and supervising financial institutions, and managing receiverships.

10.    Pursuant to 12 U.S.C. § 1821(d)(2)(A)(i), the FDIC-R succeeds by operation of law to all rights, titles, powers, and privileges, including legal claims, of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution. *See* 12 U.S.C. § 1821(d)(2)(A)(i).    Further, pursuant to 12 U.S.C. § 1821(g)(1), and notwithstanding any other provision of federal law, the FDIC-R is subrogated to all rights of any payment to any depositors upon either payment to depositors or the making of provisions for payment to the depositors of Downey S&L. *See* 12 U.S.C. § 1821(g)(1). The FDIC acts to protect insured depositors and creditors of Downey S&L.

11.    The powers and responsibilities of the FDIC in its various capacities are set forth in Title 12 of the United States Code ("Title 12") and, in particular, the provisions of Title 12 enacted by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"). *See* Pub.L. No. 101-73, 103 Stat. 183 (1989)(codified in scattered sections of Title 12). Congress enacted FIRREA to alleviate the dire circumstances facing the savings and loan industry during the savings and loan crisis, ultimately seeking to restore public confidence in the banking system. *See Praxis Props., Inc. v. Colonial Savings Bank, S.L.A.*, 947 F.2d 49, 62 (3d Cir. 1991). To realize this goal, Congress established in FIRREA a comprehensive statutory scheme under which the FDIC is granted broad powers to manage, reorganize, and collect assets of a

failed depository institution for the benefit of depositors (and taxpayers). *See In re Landmark Land Co.*, 973 F.2d 283, 289 (4th Cir. 1992).

12. Among the powers of the FDIC-R in this regard include the power to:

    (i) take over the assets of and operate the insured depository institution with all the powers of the members or shareholders, the directors, and the officers of the institution and conduct all business of the institution;

    (ii) collect all obligations and money due the institution;

    (iii) perform all functions of the institution in the name of the institution which are consistent with the appointment as conservator or receiver; and

    (iv) preserve and conserve the assets and property of such institution.

12 U.S.C. § 1821(d)(2)(B). Additionally, the FDIC-R may exercise "such incidental powers as shall be necessary" to carry out the powers specifically enumerated in Title 12. *See* 12 U.S.C. § 1821(d)(2)(J).

13. Consistent with this broad legislative mandate, FIRREA precludes any court from taking any action to "restrain or affect the exercise of powers or functions of the Corporation as a conservator or receiver." *See* 12 U.S.C. § 1821(j). Indeed, the comprehensive and exclusive scheme of FIRREA indicates Congress' intent to allow the FDIC-R "full rein" to exercise its statutory authority to protect depositors and creditors without interference from bankruptcy courts or district courts. *See Landmark*, 973 at 290. Numerous courts have accordingly found themselves without jurisdiction to enjoin or otherwise interfere with actions taken by the FDIC when acting within the scope of its authority as receiver or conservator. *See, e.g., Gross v. Bell Savings Bank PA SA*, 974 F.2d 403, 408 (3d Cir. 1992)(district court does not have the ability to enjoin activity by the RTC where the Corporation is colorably acting within its enumerated powers);

*Telematics Int'l, Inc. v. NEMLC Leasing Corp.*, 967 F.2d 703 (1st Cir. 1992)(federal court lacks jurisdiction to enjoin FDIC from foreclosing on a certificate of deposit to which it acquired a secured interest as receiver); *Rosa v. Resolution Trust Corp.*, 938 F.2d 383 (3d Cir. 1991), *cert. denied*, 502 U.S. 981 (1991)(non-monetary provisions of injunction compelling payment of pension plan contributions impermissibly restrained the legitimate exercise of RTC's statutory powers, even though RTC's actions in terminating pension plan were in contravention of ERISA); *281-300 Joint Venture v. Onion*, 938 F.2d 35 (5th Cir. 1991)(district court lacked ability to enjoin the RTC, acting as conservator, from foreclosing on property that served as security for the failed institution's loan).[7]

**The Chapter 7 Case**

14.    On November 25, 2008 (the "Petition Date"), DFC filed a voluntary petition seeking relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

15.    On or about November 26, 2008, the Office of the United States Trustee appointed Montague S. Claybrook to serve as the interim Chapter 7 Trustee and he has continued in this capacity as the permanent Chapter 7 Trustee.

16.    On or about October 24, 2009, the FDIC-R filed a proof of claim in the Debtor's Chapter 7 case, fully preserving, *inter alia*, all jurisdictional rights of the FDIC-R.

---

[7]    While the FDIC-R recognizes that a number of courts have held that 12 U.S.C. § 1821(j) does not exempt the FDIC-R from operation of the automatic stay where the actions of the FDIC-R might affect property of the estate, the FDIC-R respectfully submits that this is not an appropriate interpretation of the explicit, preclusive language in this anti-injunction provision, and the FDIC-R reserves and all of its rights in this regard. *See Sunshine Dev., Inc., et al. v. FDIC*, 33 F.3d 106 (1st Cir. 1993); *In re Colonial Realty Co.*, 980 F.2d 125 (2d Cir. 1992). *But see Asquino v. FDIC*, 196 B.R. 25, 29 (D. Md. 1996).

**The FDIC's Rights as a Fiduciary Under the Internal Revenue Code and Regulations**

      17.    Section 6402(k) of the Internal Revenue Code provides:

> Notwithstanding any other provision of law, in the case of an insolvent corporation which is a member of an affiliated group of corporations filing a consolidated tax return for any taxable year and which is subject to a statutory or court-appointed fiduciary, the Secretary may by regulation provide that any refund for such taxable year may be paid on behalf of such insolvent corporation to such fiduciary *to the extent that the Secretary determines that the refund is attributable to losses or credits of such insolvent corporation.*

26 U.S.C. § 6402(k)(emphasis added). The applicable regulations are found in Treas. Reg. § 301.6402-7.

      18.    For the purposes of this statute, the FDIC-R constitutes a "fiduciary" to whom such refund may be remitted. *See* Treas. Reg. § 301.6402-7(b)(3)(i). Importantly, Treas. Reg. § 301.6402-7(b)(3) provides, in pertinent part, that a "fiduciary is (i) the Federal Deposit Insurance Corporation; ... in its capacity as an authorized receiver or conservator of an insolvent financial institution." In order to inform the IRS of its fiduciary status, the fiduciary must file Form 56-F, Notice Concerning Fiduciary Relationship of Financial Institution, with the applicable Internal Revenue Service Center. *See* Treas. Reg. § 301.6402-7(d)(1) ("To satisfy the notice requirement of this paragraph (d)(1), the fiduciary must file Form 56–F, Notice Concerning Fiduciary Relationship of Financial Institution, with the Internal Revenue Service Center indicated on the form").

      19.    Pursuant to and in accordance with this notice requirement, the FDIC-R, in connection with the administration of the Downey S&L Receivership, previously

submitted one or more Forms 56-F with the IRS. At no time has the FDIC-R attempted to obtain any refund on account of the 2008 NOLs or otherwise, seeking instead by this Motion authority to exercise its Tax Rights.

20.     In relevant part, Treas. Reg. § 301.6402-7(e)(1) provides that "[i]f...the fiduciary does not accept a claim for refund filed by the common parent, the fiduciary may claim a refund under this section by filing its own claim for refund under section 6402...." *See* Treas. Reg. § 301.6402-7(e)(1); Treas. Reg. § 301.6402-7(e)(3).

21.     If a fiduciary elects to file a claim for a refund or an application for a tentative carryback adjustment pursuant to the aforementioned provisions, the IRS "may, in its sole discretion, pay to the fiduciary all or any portion of the refund or tentative carryback adjustment that the Internal Revenue Service determines under this section to be attributable to the net operating losses of the institution." *See* Treas. Reg. § 301.6402-7(g)(1).

22.     Importantly, Treas. Reg. § 301.6402-7(j) provides that the procedures established by this section are "*not determinative of ownership* of any such amount among current or former members of a consolidated group (including the institution)," but merely determine the party to whom the IRS will pay a refund or tentative carryback adjustment. *See* Treas. Reg. § 301.6402-7(j) (emphasis added).

**The Filing of Consolidated Tax Returns Prior to the Bank Failure and Bankruptcy**

23.     The Internal Revenue Code authorizes affiliated groups to file consolidated income tax returns. Section 1501 of the Internal Revenue Code provides that "an affiliated group of corporations shall . . . have the privilege of making a consolidated return with respect to the income tax imposed by the [Internal Revenue

Code] for the taxable year in lieu of separate returns." Consistent with § 1501, the Secretary of the Treasury has promulgated regulations that allow a parent holding company to file a consolidated tax return as agent for its subsidiaries. *See* Treas. Reg. §1.1502-77.

24.     Upon information and belief, since 1998 and prior to the bankruptcy case and the Receivership, the Debtor, Downey S&L, and their affiliates (collectively, the "Consolidated Group") elected to file consolidated federal income tax returns under § 1501 of the Internal Revenue Code.

25.     The members of the Consolidated Group are parties to a certain tax sharing agreement, effective as of December 1, 1998 (as amended, the "Tax Sharing Agreement").[8] As of the date of this filing, the Trustee has neither assumed nor rejected the Tax Sharing Agreement.

26.     Allegedly in accordance with the provisions of the Tax Sharing Agreement, the Debtor prepared and filed consolidated tax returns of the Debtor and its affiliates for the tax years 1998 through 2007.

27.     Upon information and belief, Downey S&L funded substantially all of the tax payments made by the Consolidated Group for those years by paying those amounts (and, generally speaking, more than those amounts) to the Debtor, which in turn remitted payments to the IRS.

28.     On December 17, 2008, the IRS issued a tax refund check in the amount of $17,489,369.18 for the 2007 consolidated tax return filed by the Consolidated Group (the "2007 Tax Refund"). Because both FDIC-R and the Trustee claimed entitlement to

---

[8]     A copy of the Tax Sharing Agreement is annexed as Exhibit "B" to the Cyganowski Declaration.

the 2007 Tax Refund, the FDIC-R and the Trustee entered to a Stipulation establishing an escrow account (the "Escrow Account") to hold those proceeds (Docket No. 57), which this Bankruptcy Court approved by Order entered on January 23, 2009 (the "Escrow Order") (Docket No. 60).[9]

**The 2008 Consolidated Tax Return Filed by the Trustee**

29.     Downey S&L sustained NOLs in the year 2008.  Pursuant to applicable tax law, the carryback of these NOLs would entitle the Consolidated Group to a refund of income taxes paid in the previous five years.  Because Downey S&L funded substantially all of the tax payments made by the Consolidated Group and incurred almost all of the losses, the FDIC-R, as receiver for Downey S&L, would be entitled to all or almost all of the tax refund based on the NOLs.

30.     On September 14, 2009, the Trustee caused a Form 1120 Corporation Income Tax Return for the 2008 tax year (the "2008 Consolidated Tax Return") to be filed with the IRS.  A copy of the 2008 Consolidated Tax Return is annexed as Exhibit "C" to the Cyganowski Declaration and will be filed with the Court under seal upon entry of an Order by the Court.  The 2008 Consolidated Tax Return was signed by the Trustee but not by the FDIC-R or any other party.

31.     The last eight pages of the 2008 Consolidated Tax Return consists of a document entitled "Attachment to Form 8275 for 2008 Consolidated Federal Income Tax Return Downey Financial Corp. and Subsidiaries EIN 33-0633413" (the "Attachment").

---

[9]     Upon information and belief, there may be other tax refunds that were received by the Trustee and not placed into the Escrow Account.  To the extent that they exist, the Trustee should be required to account for any such tax refunds and to deposit them in the Escrow Account.  To date, with one exception, despite the requirement in the Escrow Order and repeated requests by the FDIC-R, the Trustee has not caused copies of the monthly statements of the Escrow Account to be provided to the FDIC-R.

32.     Notwithstanding that Downey S&L, not DFC, was the source of overpayments from which any refund could be paid, the Attachment states that the Trustee intends to take a deduction under 26 U.S.C. § 165(g)(3) for the "worthlessness of its stock as owner of all of the issued and outstanding stock of [Downey S&L]," and that the Trustee will cause, pursuant to § 172(b)(1)(A)(i) of the Internal Revenue Code, amended federal income tax returns for the two preceding taxable years[10] to be filed promptly with the IRS to claim its entitlement to a refund of previously paid corporate income taxes based on the worthlessness of its stock interest in Downey S&L. *See* Attachment, Ex. B, ¶¶ 11-12. At no time did the Trustee advise the FDIC-R of his intention to rely upon the worthless stock treatment rather than rely on Downey S&L's NOLs as a basis for a refund.

33.     It is the FDIC-R's understanding that because of certain caps placed on the amount of the tax refund that may be remitted, the amount of the refund is the same regardless of whether a claim is made based on a worthless stock theory or a theory that seeks to carryback Downey S&L's NOLs.

34.     The FDIC-R vehemently disagrees with the Trustee's actions in claiming such a deduction for "worthless stock." Indeed, such deduction may have the effect of eviscerating a claim for a tax refund based on the NOLs sustained by Downey S&L in 2008, thereby denying Downey S&L, and thus the FDIC-R as Receiver of Downey S&L, any portion of the tax refund (the "Tax Refund") to which it is entitled based on the losses it sustained and the taxes it paid as part of the Consolidated Group. The filing of

---

[10]     Now five years on an amended return.

the "worthless stock" deduction strongly suggests that the Trustee intends to argue that the bankruptcy estate, and not the Receivership, is entitled to these monies.

35.     However, the Trustee could not even assert a deduction for "worthless stock" were it not for the NOLs sustained by Downey S&L. This is true because any right the Trustee has to take a worthless stock deduction is derivative of the NOLs incurred by Downey S&L. *See In re Prudential Lines Inc.*, 114 B.R. 27, 31 (Bankr. S.D.N.Y.), *aff'd*, 119 B.R. 430 (S.D.N.Y. 1990), *aff'd*, 928 F.2d 565 (2d Cir. 1991), *cert. denied*, 502 U.S. 821 (1991); *see also* § 1821(d)(2)(A)(i)(FDIC, as conservator or receiver, succeeds to all rights, titles, powers, and privileges of, *inter alia*, any shareholder of an insured depository institution with respect to the institution and the assets of the institution). Had Downey S&L not sustained losses in the year 2008, it would not have been placed into receivership and its stock would not be worthless. *Id.*

36.     Further, deductions have little consequence unless there are taxes paid in prior years against which requests for refunds can be sought. Here, upon information and belief, the right to tax refunds which the Trustee is seeking is solely as a result of the payment of taxes made by Downey S&L in prior years. *DFC, on the other hand, paid no taxes to be refunded. See* Declaration of Stephan H. Wasserman, sworn to on January 4, 2010 (the "Wasserman Declaration"). This is illustrated in the chart below (for the years 2004 through 2008, which are each of the years for which a tax refund may be sought, except for year 2003 for which an analysis is not available to the FDIC-R but which is believed to be consistent with prior years):[11]

---

[11]     Even if the analysis were different, the payments made in 2004-2008 would still be a sufficient basis on which to base the FDIC-R's claim.

**Payment of Taxes by Downey S&L (in thousands)**

|  | 2004 Calendar Year | 2005 Calendar Year | 2006 Calendar Year | 2007 Calendar Year | 2008 Calendar Year | TOTAL |
|---|---|---|---|---|---|---|
| Total State and Federal Tax Payments made by Consolidated Group | $5,422 | $154,161 | $177,207 | $200,497 | $3,769 | **$541,056** |
| State and Federal Tax Paid by Downey S&L | $5,233 | $160,415 | $177,286 | $203,203 | $3,834 | **$549,971** |

37.     As the above table shows, substantially all proceeds for the payment of taxes DFC paid to the taxing authorities in the years noted were from funds received from Downey S&L.[12]  Between the years 2005 and 2008,[13] Downey S&L not only paid to the DFC its *own* share of the taxes owed by the Consolidated Group for a given tax year, but also paid to DFC *more* than DFC in turn forwarded to the tax authorities on behalf of the Consolidated Group. *See* Wasserman Declaration at ¶¶ 2-3.  Accordingly, it is the FDIC-R's position that not only under the law, but under equity, Downey S&L, and the FDIC-R as receiver of Downey S&L, is entitled to the Tax Refund.  Pursuing the Tax Refund on a worthless stock theory would provide a windfall to the Debtor at the expense of the FDIC-R, as successor to Downey S&L.

**Exercise of the Tax Rights Does Not Determine Ownership of the Refund**

38.     Treas. Reg. § 301.6402-7(j) expressly provides that the payment by the IRS of any refund or tentative carryback adjustment to the fiduciary is "not determinative

---

[12]     Two other DFC subsidiaries, DSL Service Co. and Downey Affiliated Insurance Agency, paid DFC a total of $11,745,000 and $30,000, respectively, for their share of taxes for the calendar years 2004-2008. With the exception of these sums, Downey S&L was the source of payments for all the taxes, and in fact generally overpaid DFC for taxes owed by the Consolidated Group.

[13]     Upon information and belief, the same is true with respect to taxes paid in the year 2003.

of ownership" of any such amount among the members of a consolidated group. *See* Treas. Reg. § 301.6402-7(j).

39.     By this Motion, the FDIC-R is not asking the Bankruptcy Court to determine the "ownership" of the tax refunds or whether the tax refunds are property of the DFC Chapter 7 bankruptcy estate or the Receivership. Such issues will be resolved another day, either by adversary proceeding before this Bankruptcy Court or litigation before another tribunal with requisite jurisdiction. The FDIC-R agrees, subject to approval by the Bankruptcy Court, that in the event that any tax refunds are received, such funds will be deposited into the Escrow Account where they will remain, without any presumption of ownership, until the funds are released pursuant to an Order of this Bankruptcy Court. Consequently, there is no prejudice that inures to the Trustee were this Motion to be granted.

## JURISDICTION

40.     This Bankruptcy Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

41.     By this Motion, the FDIC-R seeks entry of an order lifting the automatic stay, to the extent that it is deemed to apply and may be required, so that the FDIC-R may exercise the Tax Rights including, among other things, re-submitting (or deeming submitted), if necessary, a Form 56-F and filing a claim for a refund and/or a loss return for the 2008 tax year as a fiduciary of Downey S&L.

## BASIS FOR RELIEF REQUESTED

### The Automatic Stay Should Not Apply to the Exercise of the Tax Rights

42. Section 362(a) of the Bankruptcy Code effectuates a stay of, *inter alia*, "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," and "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case." *See* 11 U.S.C. § 362(a)(3) and (a)(6). The stay is not applicable to actions that neither take possession of estate property nor exercise control over it. *See Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 21, 116 S.Ct. 286, 290 (1995) (holding that bank's action of placing an administrative freeze on debtor's account pending resolution of the bank's right of setoff did not violate the automatic stay because the temporary refusal to pay was neither a taking of possession of debtor's property nor an exercising of control over it).

43. Even assuming, without conceding, that some portion of the anticipated Tax Refund might constitute property of the Debtor's estate, by taking these proposed actions to, among other things, file a claim for a refund and/or file a loss return for the 2008 tax year as a fiduciary of Downey S&L, the FDIC-R neither seeks to take possession of estate property nor exercise dominion over it. Rather, the FDIC-R wishes to exercise the rights granted to it under § 6402 of the Internal Revenue Code and Treas. Reg. § 310.6402-7 to file a loss year tax return and/or a claim for a refund, in its capacity as a fiduciary of a failed depository institution, and such other actions as may be required to protect and preserve the Receivership's interest in such tax proceeds. As explicitly stated in Treas. Reg. § 310.6402-7(j), a payment by the IRS to the FDIC-R is not a determination of ownership in this regard, but merely serves to discharge the IRS'

liability to remit previously overpaid amounts to an agent of a consolidated group. The FDIC-R agrees to deposit any such tax refund into the Escrow Account, subject to further order by the Court.

44.    Exercise by the FDIC-R of its rights as a fiduciary of a failed depository institution under the aforementioned applicable tax law is pursuant to, and consistent with, its statutory duties under Title 12 to, among other things, preserve and conserve the assets and property of such institution. *See* 12 U.S.C. § 1821(d)(2)(B)(iv).

**To the Extent That It Is Deemed to Apply and May Be Required, Cause Exists to Lift the Stay to Allow the FDIC-R to Exercise its Tax Rights**

45.    Should the Bankruptcy Court determine that the automatic stay applies to the FDIC-R's exercise of the Tax Rights, the stay should be lifted.

46.    Section 362(d)(1) of the Bankruptcy Code provides that:

> the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay –
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest....

11 U.S.C. § 362(d)(1). The FDIC bears the burden of showing that such cause exists. *See* 11 U.S.C. § 362(g).

47.    While the Bankruptcy Code does not define "cause," it is a flexible concept, and whether sufficient cause exists to lift the stay is determined by the totality of the circumstances on a case-by-case basis. *See In re Wilson*, 116 F.3d 87, 90 (3d Cir. 1997); *In re The Sco Group, Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007).

48.    This Court has developed a three-prong balancing test to determine whether to grant relief from the stay, which involves the consideration of the following factors: (1) whether any great prejudice to either the bankrupt estate or the debtor will

result from granting the relief, (2) whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor, and (3) the probability of the creditor prevailing on the merits. *See id.* at 857; *Izzarelli v. Rexene (In re Rexene Prods. Co.)*, 141 B.R. 574, 576 (Bankr. D. Del. 1992). The totality of the circumstances present in this case militate toward a finding of sufficient "cause" to warrant relief from the automatic stay.

49.     First and foremost, the Debtor's estate will not be prejudiced by the lifting of the automatic stay. While the worthless stock theory propounded by the Trustee with respect to the Tax Refund is intended to preclude recovery by the FDIC-R of any portion of the refund that is ultimately remitted by the IRS, the FDIC-R's pursuit of its rights under applicable tax law to serve as an alternate agent to whom the Tax Refund shall be remitted, and to seek a refund based on the NOLs generated by Downey S&L, is not intended to affect recovery by the Trustee if the estate is entitled to any portion of the Tax Refund. Among other things:

> (A)     The FDIC-R's actions will not result in any disposition with respect to ownership of the disputed Tax Refund and thus will take away nothing from the Debtor's estate.[14] Instead, the FDIC-R's exercise of the Tax Rights will ensure that the FDIC-R preserves its claim to any portion of the Tax Refund to which it is entitled, while at the same time still ensuring placement of the disputed tax refund into the Escrow Account, thereby preserving the parties' respective rights for judicial adjudication. *See, e.g., Pieklik v. Hudgins (In re Hudgins)*, 102 B.R. 495, 497 (Bankr. E.D. Va.

---

[14]     The Tax Sharing Agreement may relate to these issues and thus may be part of any litigation concerning the dispute over ownership of the Tax Refunds, whether the Agreement is assumed or rejected by the Trustee or repudiated by the FDIC-R.

1989)(granting personal injury tort plaintiff relief from the automatic stay in order to continue action against debtor);[15] and

(B)     Even if the FDIC-R recovers the amount of the Tax Refund to which it is entitled, the Trustee still retains a right to recover any remaining refund under the worthlessness stock deduction. The FDIC-R's exercise of the Tax Rights will not preclude a chance of recovery by the Trustee of the portion of the refund to which the Debtor is entitled.

50.     Second, the FDIC-R will face substantial hardship if the stay is not lifted. The Trustee's actions in claiming a "worthless stock" deduction in connection with the Tax Refund, without consulting the FDIC-R or taking its interests into account, is intended to undermine the rights accorded to the FDIC-R, under law, to assert a basis for a refund on account of Downey S&L's NOLs. This would work a substantial prejudice on the FDIC-R, as successor to Downey S&L, because most, if not all, of the Tax Refund is predicated upon taxes paid by Downey S&L. Were the FDIC-R unable to preserve its rights by invoking § 6402 of the Internal Revenue Code and related regulations, the Trustee could gain a windfall, while the FDIC-R, which represents the interests of all taxpayers, could be hindered in its ability seek the equitable allocation of the refund. The FDIC-R should be permitted to exercise the Tax Rights in order to (i) officially state its claim to all or a portion of the Tax Refund to which it is entitled, and (ii) preserve its rights with respect to such a claim and prevent the possibility that the FDIC-R, in not taking the action that it has a right and a fiduciary duty to take, could be deemed to have

---

[15]     In lieu of filing its own tax return, the FDIC-R requested that the Trustee stipulate and agree that the FDIC-R be deemed to have filed such a return, which if so ordered by this Court would have obviated the necessity for this Motion or of the FDIC-R filing such a tax return. The Trustee did not accept this proposal. As such, the Trustee's agreement to also deposit any refund he recovers from the IRS into the Escrow Account is insufficient to protect the FDIC-R.

21

waived any right it has to all or a portion of the Tax Refund. *See United States v. Rodrigues*, 159 F.3d 439, 448 (9th Cir. 1998)(faulting the RTC for "complain[ing] about a situation it could have prevented from arising" because it failed to exercise its right, under § 301.6402-7, to apply for the tax refunds due the failed depository institution for which it was a conservator).

51.    The third prong of the lift stay test, the movants' likelihood of success on the merits, requires only a "very slight" showing. *See Rexene Prods.*, 141 B.R. at 578 (citing *Peterson v. Cundy (In re Peterson)*, 116 B.R. 247, 250 (D. Colo. 1990)(merits analysis irrelevant when party seeks merely to liquidate a claim)). In any event, and although the issue of "ownership" of any refund is not before the Bankruptcy Court at this time, this prong is no doubt met here, as there is a substantial body of case law that holds that a member of a consolidated group is entitled to a tax refund arising from the filing of a consolidated tax return, where the refund sought constitutes either taxes paid by the consolidated tax group member or losses sustained by that member in the years at issue. *See, e.g., Capital Bancshares*, 957 F.2d 203, 208 (5th Cir. 1992)(FDIC was entitled to the tax refund where the bank generated the losses and the bank paid to the parent company a sum greater in aggregate than the disputed refund for its annual tax contribution); *In re Revco D.S., Inc.*, 111 B.R. 631 (Bankr. N.D. Ohio 1990)(income tax refund belonged to the former subsidiary member of consolidated group where the NOL was entirely attributable to the subsidiary and the refund sought represented the income taxes paid by income generated by the subsidiary); *Fed. Deposit Ins. Corp. v. Mercer Bancorp, Inc.*, 1990 WL 515173 (W.D. Mo. 1990)(FDIC, as receiver of subsidiary bank, was entitled to the tax refund because the bank was the entity who overpaid the tax which

the IRS refunded and the entity upon whose business losses the refund was based) (a copy of the opinion is attached as Exhibit "D" to the Cyganowski Declaration); *Jump v. Manchester Life & Cas. Mgmt. Corp.*, 438 F. Supp. 185 (E.D. Mo. 1977)(bankrupt subsidiary was entitled to its share of the refund generated by its losses and the unrecovered taxes it previously paid, and parent held this portion in specific trust); *In the Matter of Fla. Park Banks, Inc.*, 110 B.R. 986 (Bankr. M.D. Fla.)(FDIC, as receiver for bank subsidiary, was entitled to the entire tax refund of taxes previously paid by the bank subsidiary and that resulted from its NOLs); *see also In re Bob Richards Chrysler-Plymouth Corporation, Inc.*, 473 F.2d 262, 265 (9th Cir. 1973); *Prudential, supra*, 114 B.R. 27.

52.    The parent, as agent for the Consolidated Group for the purposes of administrative convenience in connection with the filing of consolidated tax returns, holds any tax refunds remitted by the IRS on account of such filing in trust for the members of the Consolidated Group, and is under a duty to return the tax refund to the appropriate member. *Bob Richards*, 473 F.2d at 265.  This principal-agent relationship cannot be overridden by a tax sharing agreement unless such an intention is expressly or impliedly manifested in a written agreement, and even then the court must examine the economic reality of the transaction rather than the words used.  *See BSD Bancorp, Inc. v. FDIC*, Case No. 93-12207-A11 (S.D. Cal. 1995)(a copy of the opinion is attached as Exhibit "E" to the Cyganowski Declaration).  The FDIC-R does not believe that any of these grounds are present here.  Given the foregoing jurisprudence, the FDIC-R meets the minimal standard for likelihood of success enunciated in *Rexene*.

## CONCLUSION

53.    The FDIC-R's exercise of the Tax Rights will cause no undue harm or prejudice to the Debtor's estate, as the exercise of the Tax Rights will not result in the determination of ownership of the Tax Refund, but is merely preservative of the FDIC-R's rights in accordance with its statutory and fiduciary duties as Receiver of Downey S&L, and ensure the placement of any refund that is remitted by the IRS into the Escrow Account for subsequent adjudication by the Bankruptcy Court at the appropriate time. As a result, the automatic stay, to the extent that it is deemed to apply and may be required, should be lifted so that the FDIC-R may proceed with the exercise of its Tax Rights.

WHEREFORE, the FDIC-R respectfully requests that this Court enter an Order, in the form attached hereto (i) to the extent that it is deemed to apply and may be required, lifting the automatic stay so that the FDIC-R may exercise the Tax Rights including, among other things, submitting, if necessary, a Form 56-F and filing a claim for a refund and/or a loss return for the 2008 tax year as a fiduciary of Downey S&L, and any amendments to prior year's returns as may be permitted under law, with any refund that may be remitted to the FDIC-R by the IRS on account of such filing to be deposited

in the Escrow Account as described above for determination of this Court hereafter and,

(ii) granting such other and further relief as this Court may deem just and proper.

Dated: January 4, 2010

BAYARD, P.A.

*Daniel O'Brien*

Neil B. Glassman (No. 2087)
Charlene D. Davis (No. 2336)
Daniel A. O'Brien (No. 4897)
222 Delaware Ave., Suite 900
Wilmington, Delaware 19899
Tel.: (302) 655-5000
Fax: (302) 658-6395

-and-

OTTERBOURG, STEINDLER,
HOUSTON & ROSEN, P.C.
Melanie L. Cyganowski
Jeffrey K. Cymbler
(Admitted *Pro Hac Vice*)
230 Park Avenue
New York, New York 10169
Tel.: (212) 661-9100
Fax: (212) 682-6104

*Counsel for the Federal Deposit Insurance*
*Corporation, in its Capacity as Receiver*