**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| DOWNEY FINANCIAL CORP., | : | Case No. 08-13041-(CSS) |
| | : | |
| Debtor. | : | Hearing Date: January 21, 2010 at 9:30 a.m. |
| | : | Objection Deadline: January 14, 2010 at 4:00 p.m. |

**CHAPTER 7 TRUSTEE'S MOTION FOR ENTRY OF AN ORDER PURSUANT TO
11 U.S.C. §§ 105(a) AND 362 FINDING THE FEDERAL DEPOSIT INSURANCE
CORPORATION AS RECEIVER FOR DOWNEY SAVINGS & LOAN ASSOCIATION,
F.A., VIOLATED THE AUTOMATIC STAY**

Montague S. Claybrook, the chapter 7 trustee (the "<u>Trustee</u>") for the estate of Downey Financial Corp. (the "<u>Debtor</u>"), hereby seeks the entry of an order pursuant to Section 105(a) and Section 362 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") finding the Federal Deposit Insurance Corporation as receiver for Downey Savings & Loan, F.A., (the "<u>Receiver</u>") violated the automatic stay (the "<u>Motion</u>"), and in support thereof states as follows.

**<u>Summary</u>**

The Receiver violated the automatic stay by filing a tax form post-petition which has prevented, in the first instance, the Trustee from collecting a tax refund belonging to the Debtor of approximately $145 million. Due to a recent change in tax law, that refund is now over $314 million. The Debtor filed for bankruptcy on November 25, 2008. The Receiver filed what is called a Form 56-F[1] on November 28, 2008. The Internal Revenue Service (the "<u>IRS</u>") has, in fact, informed the Trustee that it "can't" process the Trustee's tentative carryback claim for refund because of the Form 56-F. The Trustee asks this Court to enter an order striking the Form

---

[1] Form 56-F, Notice Concerning Fiduciary Relationship of Financial Institution.

1

56-F as *void ab initio* as done in violation of the stay so the Trustee may bring a total tax refund into the estate of over $314 million resulting from the Debtor's net operating losses ("NOLs").

**Jurisdiction**

1. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

2. Venue is proper pursuant to 28 U.S.C. § 1408 and 1409.

3. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

4. The statutory predicates in support of the relief requested herein are 11 U.S.C. §§ 105(a) and 362.

**Background**

**A.    The Receivership and Bankruptcy**

5. On November 21, 2008 (the "Receivership Date"), the Director of the Office of Thrift Supervision ("OTS"), by order number 2008-49, appointed the FDIC as the Receiver of Downey Savings & Loan Association, F.A. ("Downey Savings"), a federally chartered savings association, and took possession of Downey Savings. Downey Savings is a wholly-owned `subsidiary of the Debtor.

6. Immediately after its appointment, the Receiver sold substantially all of the former assets of Downey Savings, to U.S. Bank National Association ("U.S. Bank") pursuant to a purchase and assumption agreement, dated as of November 21, 2008 (the "Purchase and Assumption Agreement").

7. On November 25, 2008 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in this Court (the "Bankruptcy Case").

2

Immediately upon the filing of the Petition, the automatic stay in the Debtor's Bankruptcy Case prohibits any entity, including the Receiver, from, among other things, taking any action to obtain possession of property of the Debtor's bankruptcy estate or to exercise control over such property.

**B.      The Tax Sharing Agreement**

8.      Prior to the Receivership Date and Petition Date, the Debtor and Downey Savings, among others, were parties to that certain Termination and Amendment Number 1 to Tax Sharing Agreement, effective February 29, 2000 (the "Tax Sharing Agreement"). A copy of the Tax Sharing Agreement is attached hereto as **Exhibit A**.

9.      The Tax Sharing Agreement provides, in relevant part:

> A U.S. consolidated income tax return will be filed by Financial[2] for each taxable year for which this Agreement is in effect and for which members of the Affiliated Group[3] are required or permitted to file a consolidated tax return.
>
> ****
>
> Financial shall prepare and file consolidated returns, and any other returns, documents or statements required to be filed with the Internal Revenue Service with respect to the determination of the tax liability of Financial and the Affiliated Group members for all taxable periods commencing with the tax period applicable as of the date of the execution of this Agreement. <u>Financial shall have the right, in its sole discretion</u>: (i) <u>to determine</u> (A) <u>the manner in which such returns shall be prepared and filed</u>, including, without limitation, the manner in which any item of income, gain, loss, deduction or credit shall be reported; provided, however, that Financial shall consider in good faith any treatment proposed by the Affiliated Group members, (B) whether any extensions of the statute of limitations may be granted and (C) <u>the elections that will be made pursuant to the Code</u> on behalf of any member of the consolidated group (it being agreed, however, that Financial shall not unreasonably withhold its consent to any elections which members of the Affiliated Group desire to make); (ii) to contest, compromise or settle any adjustment or deficiency proposed, asserted or assessed as a result of any audit of any such returns; (iii) <u>to file</u>, prosecute, compromise or settle <u>any claim for refund</u>; and (iv) to determine whether any refunds to which the consolidated group may be entitled shall be paid by way of refund or credited against the tax liability of the consolidated group.

---

[2]  The Debtor is referred to as "Financial" in the Tax Sharing Agreement.
[3]  "Affiliated Group" shall include those corporations included in the filing of [Debtor's] consolidated tax return for federal income tax purposes, including Downey Savings. Tax Sharing Agreement, Section 2.1(b). *See Id.*, Section 1.3 ("Affiliated Group" shall have the meaning assigned in Section 1504(a) of the Code").

3

Tax Sharing Agreement, Section 2.1c.; 2.4a.  (emphasis and footnotes added).

10.     The Tax Sharing Agreement is property of the Debtor's bankruptcy estate pursuant to Section 541 of the Bankruptcy Code.

**C.     The Debtor's Tax Return**

11.     Three days after the Petition Date, on November 28, 2008, the Receiver filed a Form 56-F, Notice Concerning Fiduciary Relationship of Financial Institution ("Form 56-F"), with the IRS, notifying the IRS of the newly created fiduciary relationship between Downey Savings and the Receiver.  A copy of Form 56-F with transmittal letter, is attached hereto as **Exhibit B**.  Although Mr. James F. Vordtriede marked the box on the Form 56-F stating that a copy of the form "has" been sent to the common parent of the group (as required by applicable IRS regulation), it appears that Mr. Vordtriede did not send the form until March 12, 2009, three and a half months later.  He also sent the form to "Downey Financial Corporation" in Newport Beach addressed to "Sir or Madam" when he knew that Montague Claybrook was appointed as Trustee of the Downey Financial Corp. bankruptcy estate and that he was represented by counsel both of whom were located at an address other than Newport Beach, California.  At no point "has" the form been sent by the FDIC to the Trustee.

12.     The post-petition filing of the Form 56-F has prevented the Debtor's bankruptcy estate from receiving the Debtor's tax refund.

13.     On September 15, 2009, the Trustee, on behalf of the Debtor's bankruptcy estate, filed a 2008 consolidated tax return (the "2008 Tax Return").  A copy of the 2008 Tax Return is not attached due to its voluminous nature, but will be made available to the Court.  A copy of the 2008 Tax Return was provided to the Receiver on September 25, 2009.  The 2008 Tax Return

4

claimed a worthless stock deduction in the Debtor's investment in Downey Savings of $1,750,597,505.

14. On or about September 16, 2009, the Trustee filed a Form 1139, Corporation Application for Tentative Carryback Refund, for a tentative carryback refund claim (the "Tentative Carryback Refund") with the IRS pursuant to Section 6411 of title 26 of the Internal Revenue Code. The Tentative Carryback Refund sought to carryback the Debtor's worthless stock deduction as the Debtor's net operating loss to recover income taxes previously paid by the Debtor as a present tax refund. The Form 1139 sought a Tentative Carryback Refund of approximately $145,000,000 for the tax years ending December 31, 2006 and December 31, 2007.

15. By letter dated October 26, 2009, attached hereto as **Exhibit C**, the IRS indicated that they "can't approve" the Form 1139 and the Trustee's Tentative Carryback Refund. The IRS advised the Trustee that the:

> Form 1139, Corporation Application for Tentative Carryback Refund, cannot be processed. [The Trustee's] application does not contain the signature of the FDIC. The FDIC filed a Form 56-F, Notice Concerning Fiduciary relationship of Financial Institution, with the Service.

16. Subsequent to the Trustee's filing of the Form 1139, President Obama signed the Worker, Homeownership and Business Assistance Act of 2009 on November 6, 2009,[4] which permits the Trustee to carryback the Debtor's NOL for up to 5 years, instead of the normal 2 year carryback rule.

---

[4] 26 U.S.C. §§ 6511 & 172(b)(1)(H) (as amended by § 13 of the Worker, Homeownership, and Business Assistance Act of 2009 (Pub. L. No. 111-92, 123 Stat. 29840 (the "2009 Act").

17. On December 31, 2009, because of the Receiver's improper post-petition Form 56-F filing and to take advantage of the additional 3 years of carryback under the 2009 Act, the Trustee, on behalf of the Debtor's bankruptcy estate, filed a Form 1120X, U.S. Federal Income Tax Claims for Refunds for Overpayments in Tax, for the Taxable Years Ending December 31, 2003, 2004, 2005, 2006, and 2007 (the "Amended Returns"). The Trustee's Amended Returns claimed refunds arising from the Debtor's worthless stock deduction in the Debtor's investment in Downey Savings of $19,707,343.36; $31,758,454.81; $116,256,584.75; $107,928,565.43; and $38,684,249.85 for those respective years, for a total of $314,335,197.20. Copies of the Amended Returns are not attached due to their voluminous nature, but will be made available to the Court. Copies of the Amended Returns will also be provided to the Receiver.

18. By letter dated December 30, 2009, attached hereto as **Exhibit D**, the Trustee, by and through his attorneys, sent a letter to the Receiver's counsel requesting that the Receiver "withdraw the IRS Form 56-F that was filed post-petition." The Trustee informed the Receiver's counsel that the post-petition filing of the Form 56-F was an act to obtain possession of property of the bankruptcy estate and to exercise control over property of the bankruptcy estate in violation of 11 U.S.C. § 362. To date, the Receiver has not withdrawn the Form 56-F, and in fact, recently filed a motion for *nunc pro tunc* relief to permit prior submission of the Form 56-F.

**Relief Requested**

19. The Trustee respectfully requests that the Court enter an order finding the Receiver violated the automatic stay pursuant to 11 U.S.C. §§ 105 and 362; and strike the Form 56-F as an act done in violation of the stay and thus, *void ab initio*.[5]

**Argument**

A. <u>11 U.S.C. § 105</u>

20. Section 105(a) of the Bankruptcy Code provides in pertinent part:

> <u>The Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title.</u> No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11. U.S.C. § 105(a) (emphasis added).

21. Section 105(a) serves as the statutory basis for the civil contempt power of bankruptcy judges. *See In re Stephen W. Gross, P.C.*, 84 B.R. 377, 385 (Bankr. E.D. Pa. 1988).

B. <u>11 U.S.C. § 362</u>

22. Section 362(a) of the Bankruptcy Code provides in pertinent part:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities of –
>
> ****
>
> (3) <u>any act</u> to <u>obtain possession</u> of property of the estate or of property from the estate or to <u>exercise control</u> over <u>property of the estate</u>.

11 U.S.C. § 362(a) (emphasis added).

---

[5] The Trustee reserves the right to seek an award of actual damages, including costs and attorneys' fees, and punitive damages, and to assess those damages as sanctions against the Receiver pursuant to 11 U.S.C. §§ 105(a) and 362(k)(1) resulting from the Receiver's stay violation.

23. Section 362(a)(3) implements a stay of any action, whether against the debtor or third parties, that seeks to obtain possession of or exercise control over property of a debtor's estate. *Borman v. Raymark Indus., Inc.*, 942 F.2d 1031, 1035 (3d Cir. 1991) (*citing* 11 U.S.C. § 362(a)(3)). "[T]here is no doubt that the scope of the automatic stay is broad." *In re Krystal Cadillac Oldsmobile GMC Truck, Inc.*, 142 F.3d 631, 637 (3d Cir. 1998).

24. The automatic stay applies to the FDIC, as well as other government entities. *In re Colonial Realty Co.*, 980 F.2d 125, 134 (2d Cir. 1992). In addition, the automatic stay applies equally to actions taken by a receiver to exercise control over the debtor's estate. *In re Hull*, No. 02-10216, 2003 WL 22000599, * 2 (Bankr. D. Del. 2003) (citing *Underwood v. Hilliard (In re Rimsay, Ltd.)*, 98 F.3d 956, 961 (7th Cir. 1996)). Thus, it is clear that the Receiver is required to, if otherwise possible, obtain relief from the automatic stay. It is equally clear it has not sought such relief until just yesterday, but rather engaged in actions designed to divert the estate's property to it.

C. **11 U.S.C. 541**

25. Section 541(a)(1) of the Bankruptcy Code provides in pertinent part:

> (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
>
> (1) Except as provided in subsection (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

11 U.S.C. §541(a)(1).

26. Courts have consistently held that "federal tax refunds themselves have long been defined as property of the estate for purposes of bankruptcy" pursuant to 11 U.S.C. § 541(a)(1). *In re Harchar*, No. 98-13277, 2006 WL 3196846, *9 (Bankr. N.D. Ohio 2006) (the debtors' federal tax refund was 'property of the estate' because § 541(a)(1) is "expansive and includes all

of a debtors' legal and equitable interests in property"). *See also Borman*, 942 F.2d at 1035 (3d Cir. 1991) (estate property does not have to be in a debtor's possession for § 362(a)(3) to apply); *Williams v. Johnson (In re Williams Bros. Asphalt Paving Co.)*, 56 F.3d 66 (6th Cir. 1995) (debtor's anticipated refund was property of the estate). Furthermore, a debtor's interest in a carryback of a NOL "constitutes property of the estate within the scope of 11 U.S.C. § 541(a)(1) and is entitled to the protection of the automatic stay imposed pursuant to 11 U.S.C. § 362(a)(3)." *In re Southeast Banking Co.*, No. 91-14561, 1994 WL 1893513, *2 (Bankr. S.D. Fla. 1994) (finding that a transfer of the debtor's common stock would impair or eliminate the value of the debtor's interest in the NOL and constituted an exercise of control over property of the debtor's estate in violation of § 362(a)(3)).

27. Loss-carryback refund claims for losses incurred by a debtor in tax years prior to the filing of a bankruptcy petition are property of a debtor's bankruptcy estate. *Segal v. Rochelle*, 382 U.S. 375, 380-81 (1966). Loss-carryback refund claims are "sufficiently rooted in the prebankrutpcy past . . . that it should be regarded as property of the estate." *Segal*, 382 U.S. at 381. The Court in *In re Roy Glenn* explained the holding in *Segal* that "as of the date the petition was filed[,] the debtors had a property interest in the refund claim because § 70a(5) of the Bankruptcy Act vested in the trustee the debtors' title to the property." *In re Roy Glenn*, 207 B.R. 418, 421 (E.D. Pa. 1997) (finding that the debtor's refund was "sufficiently rooted in the pre-bankruptcy" life of the debtor that it was property of the estate). Furthermore, Judge Mary Walrath of this Court recently followed *Segal* in *In re Flying J, Inc.*, a copy of which is attached as **Exhibit E**, and held that a tax loss for a current tax year, and a corresponding tentative refund claim for previous tax years, are property of the debtor's estate when the debtor files for bankruptcy relief before the end of the current tax year. *In re Flying J, Inc.*, No 08-133484, 9

9

[D.I. 2451] (Walrath, J.) (Bankr. D. Del. Dec 28, 2009) (*citing Segal v. Rochelle*, 382 U.S. 375, 380 (1966)). In *In re Flying J, Inc.*, the "loss-carryback refund claim was 'sufficiently rooted in the pre-bankruptcy past'" that it was property of the debtor's bankruptcy estate for purposes of 11 U.S.C. § 553. *Flying J,* at 9.

28. The Debtor's Tentative Carryback Refund - and all tax refunds - are property of the Debtor's estate pursuant to 11 U.S.C. § 541(a)(1) and are entitled to protection under 11 U.S.C. § 362(a)(3). The Trustee claimed the Debtor's own losses on the 2008 Tax Return. The Amended Returns carry back the Debtor's losses to obtain taxes previously paid. Any tax refund generated from the carryback of the Debtor's NOLs are property of the estate. In line with the Supreme Court and this Court's precedent in *Segal* and *In re Flying J, Inc.*, a tax refund resulting from the Debtor's loss is "sufficiently rooted in the pre-bankruptcy past" to make it property of the estate.

D. **The Stay Violation**

29. Preventing a debtor from receiving a tax refund for a period of time "exercise[s] control" over property of a debtor's estate in violation of 11 U.S.C. § 362(a)(3). *In re Harchar*, 2006 WL 3196846, at *13; *In re Del Mission Ltd.*, 98 F.3d 1147, 1151 (9th Cir. 1996) (a State's efforts to collect disputed taxes and retain disputed taxes violates the automatic stay provisions pursuant to § 362(a)(3) because the State is exercising control over the property of the debtor's estate); *In re Southeast Banking Co.*, 1994 WL1893513, at *2 (an act that impairs or eliminates the value of a tax refund constitutes an exercise of control over the property of the debtor's estate in violation of § 362(a)(3)). Even the act of sending a letter to a third party violates the automatic stay when the letter attempts to "exercise control" over property of the debtor's estate. *In re All Trac Transp.*, 306 B.R. 859, 870 (Bankr. N.D. Tex. 2004).

30. The Receiver took an affirmative act to "exercise control" over the Trustee's right to file the Debtor's tax returns and is preventing the IRS from paying to the Trustee a very large tax refund. The Form 56-F filed by the Receiver "exercise[ed] control" over the Tentative Carryback Refund because it has the effect of preventing the Trustee from receiving the Tentative Carryback Refund. In the letter dated October 26, 2009, the IRS specifically denied the Form 1139 because the "FDIC filed Form 56-F." See **Exhibit B**. The Receiver's affirmative interference violates the automatic stay protection afforded to property of the estate under 11 U.S.C. § 362(a)(3). Therefore, this Court should enter an order finding the Receiver violated the automatic stay and strike the Form 56-F as *void ab initio*.

**WHEREFORE**, the Debtor, respectfully requests the entry of an Order by the Court finding the Receiver violated the automatic stay pursuant to 11 U.S.C. §§ 105 and 362; strike the Form 56-F as an act done in violation of the stay and thus, *void ab initio*; and for such other relief as may be just and proper.

Respectfully submitted,

**FOX ROTHSCHILD LLP**

*/s/ Sheldon K. Rennie*
Sheldon K. Rennie (DE Id. No. 3772)
919 North Market Street, Suite 1300
Wilmington, DE 19801-3046
Tel (302) 654-7444/Fax (302) 656-8920
srennie@foxrothschild.com

-and-

Michael Menkowitz
William H. Stassen
2000 Market Street, Twentieth Floor
Philadelphia, PA 19103-3291
Tel (215) 299-2897/Fax (215) 299-2150
mmenkowitz@foxrothschild.com

<div style="display: flex;">

Date: January 5, 2010

-and-

Raymond M. Patella
1301 Atlantic Avenue
Midtown Building - Suite 400
Atlantic City, NJ 08401
Tel (609) 572-2254/Fax (609) 348-6834
rpatella@foxrothschild.com

Attorneys for Montague S. Claybrook,
Chapter 7 Trustee for the estate of Downey
Financial Corp.

</div>