# EXHIBIT A

# TERMINATION AND AMENDMENT NUMBER 1 TO
# TAX SHARING AGREEMENT
## among
## DOWNEY FINANCIAL CORP.
## and
## AFFILIATES

WHEREAS, Downey Financial Corp. ("Financial"), Downey Savings and Loan Association, F.A. ("Bank"), DSL Service Company ("Service"), Downey Auto Finance Corp. ("Auto"), Downey Affiliated Insurance Agency ("Insurance"), and DSL/Sierra Vista, Inc. ("Sierra Vista") have heretofore entered into that certain Tax Sharing Agreement effective as of the 1st day of December, 1998;

WHEREAS, as of January 21, 2000 Bank, Auto and Auto One Acceptance Corporation, a Texas corporation (herein "Auto One"), entered into that certain Stock Purchase Agreement;

WHEREAS, pursuant to the terms of the Stock Purchase Agreement, as a condition to the Closing, Bank and Auto are required to deliver to Auto One an agreement terminating to Auto One's satisfaction, all of Auto's obligations and liabilities under the Tax Sharing Agreement effective upon the Closing;

WHEREAS, pursuant to the terms of the Stock Purchase Agreement, Section 1.2 (c) Auto One and Bank shall cause to be prepared a post Closing Balance Sheet (in the same format as the Prior Month Balance Sheet), and which post Closing Balance Sheet will include an accrual for current income taxes payable for Auto's last month of operations prior to the Closing;

WHEREAS, effective upon the Closing, Auto will be cease to be a wholly owned subsidiary of Bank, a member of Affiliated Group as herein defined and Auto will be acquired by and merged into Auto One.

NOW THEREFORE, in consideration of the promises and of the mutual covenants and agreements hereinafter set forth, the parties agree to amend the Tax Sharing Agreement to terminate Auto as a party hereto, effective upon the Closing and subject to the terms of the Stock Purchase Agreement as follows:

## AMENDMENT NO. 1.

### Article I

### DEFINITIONS

Unless otherwise indicated, the following terms shall, for the purposes of this Agreement, be defined as follows:

1.1 <u>Code</u> shall mean the Internal Revenue Code of 1986, as amended.

1.2 <u>Independent Public Accountant</u> shall mean the firm of certified independent public accountants as may from time to time be retained by Financial.

1.3 <u>Affiliated Group</u> shall have the meaning assigned in Section 1504(a) of the Code.

Article II

TAX SHARING

2.1 <u>Federal Income Tax</u>.

a. It is the desire and intent of the parties to this Agreement to establish a method for allocating the consolidated tax liability of each member among the Affiliated Group (hereinafter defined), for reimbursing Financial for payment of such tax liability, for compensating members of the Affiliated Group for use of their losses or tax credits, and to provide for the allocation and payment of any refund arising from a carryback of losses or tax credits from subsequent taxable years.

b. The "Affiliated Group" shall include those corporations included in the filing of Financial's consolidated tax return for federal income tax purposes. Financial (which is the common parent corporation), Bank and Insurance (which are wholly owned subsidiaries of Financial), Auto, Service, and Butterfield Services Inc. (which are wholly owned subsidiaries of Bank), and Sierra Vista (which is a wholly owned subsidiary of Service) are members of the Affiliated Group. Auto will cease to be a member of the "Affiliated Group" effective upon the Closing of the Stock Purchase Agreement with Auto One. Bank shall pursuant to the Stock Purchase Agreement Section 1.2 (c), cause to be prepared with Auto One a post Closing Balance Sheet (in the same format as the Prior Month Balance Sheet), which post Closing Balance Sheet will include an accrual of current income taxes payable for Auto's last month of operations prior to the Closing. In the event additional corporations become members of the Affiliated Group, or if Butterfield Services Inc. becomes an active corporation, the parties to this Agreement shall use their best efforts to include such corporations as parties to this Agreement.

c. A U.S. consolidated income tax return will be filed by Financial for each taxable year for which this Agreement is in effect and for which members of the Affiliated Group are required or permitted to file a consolidated tax return. The members of the Affiliated Group shall execute and file such consents, elections and other documents that may be required or appropriate for the proper filing of such returns.

d. For each taxable period, members of the Affiliated Group shall compute their separate tax liability as if they had filed a separate tax return. The separate return tax liability of the members of the Affiliated Group shall be computed in a manner consistent with the provisions of Treasury Regulation Section 1.1552-1(a)(2)(ii). In no instance shall the allocation of tax liability to any member of the Affiliated Group pursuant to this Agreement be less favorable than the tax liability which would result from such member filing a separate tax return.

e. Payment of the consolidated tax liability for a taxable period shall include the payment of estimated tax installments due for such taxable period, and members of the Affiliated Group shall pay to Financial their estimated tax payments no earlier than ten (10) days prior to the due date for the payment, and in no event later than such due date. Overpayments of estimated tax by members of the Affiliated Group as determined by Financial shall be refunded to the appropriate members of the Affiliated Group within seven (7) business days of the earlier of 1) the receipt of such overpayment from taxing authorities, or 2) at such time as, and to the extent that, the overpayment is reflected in reduced quarterly installments of taxes due.. Estimated tax payments made by members of the Affiliated Group shall not exceed the amount which would be due and currently payable to taxing authorities if such Affiliated Group member had filed a separate tax return.

f. If for any taxable period the sum of the separate return liability of each member of the Affiliated Group, including Financial, exceeds the consolidated tax liability for such period as a result of any excess losses or tax credits of one or more of the members, then Financial shall pay to each member of the Affiliated Group that Member's share of the tax benefit resulting from such excess losses or tax credits, as reflected on the Affiliated Group's consolidated return. Such payment shall be made within seven (7) business days after the date of filing, including extensions, for the consolidated return for such period. It is intended that this adjustment reflect Treasury Regulation Section 1.1502-33(d).

g. If part or all of an unused loss or tax credit is allocated to a member of the Affiliated Group pursuant to Treasury Regulation Section 1.1502-79, and is carried back or forward to a year in which the Affiliated Group member filed a separate return or a consolidated return with another affiliated group, any refund or reduction in tax liability arising from the carryback or carryforward shall be retained by the subject Affiliated Group member. Notwithstanding the above, Financial shall determine whether an election shall be made not to carry back part or all of a consolidated net operating loss for any taxable year in accordance with Section 172(b)(3) of the Code. If any Affiliated Group member would have benefited from a carryback of an unused loss or tax credit on a separate-return basis, such benefit shall be reflected in the allocation of taxes pursuant to this Agreement.

h. If the consolidated tax liability is adjusted for any taxable period, whether by means of an amended return, claim for refund, or after a tax audit by the Internal Revenue Service, the liability of the Affiliated Group members shall be recomputed by Financial to give effect to such adjustments. In the case of a refund, Financial shall make payment to each Affiliated Group member for its share of the refund, determined in the same manner as in paragraph (d) above, within seven (7) business days after the refund is received by Financial. In the case of an increase in tax liability, each Affiliated Group member shall pay to Financial its allocable share of such increased tax liability no earlier than ten (10) days prior to the due date for the payment, and in no event later than such due date. The Affiliated Group members' allocable share of increased tax liability shall be based upon each member's contribution to the adjustment as if each member had filed a separate return.

2.2 Certain State Taxes. Affiliated Group members shall file state tax returns as required by state law and pay the appropriate tax. State taxes resulting from combined reporting under unitary tax principles shall be shared by the entities included in the combined report in proportion to their relative contributions to the state tax liability, as determined by reference to the proportion of state taxable income before apportionment contributed by each member under the combined report. Any required estimated state tax payments will be paid by Financial on behalf of the Affiliated Group members. If the state tax return is reviewed by the state taxing authority and adjustments are made which will either increase or decrease the tax previously reported and paid, the Affiliated Group members affected by such adjustments shall pay all costs or receive all benefits from such adjustment. In the event that such state taxes are increased or decreased because of combined reporting under unitary tax principles, each member of the Affiliated Group shall pay its allocable share (or receive its allocable benefit) resulting from such combined reporting. In no event shall the state tax liability or benefit allocated to any Affiliated Group member under this Agreement be less favorable than if such member had filed a tax return on a separate basis.

2.3 Other Taxes. Either Financial or the other Affiliated Group members may from time to time become subject to additional taxes by federal, state or local authorities. In such event the members of the Affiliated Group shall consult with each other to determine a mutually acceptable form of allocation or apportionment of such taxes, provided, however, that the Delaware franchise tax shall be paid by Financial. In no event shall the allocation of the tax liability from

3

such additional taxes be less favorable to any Affiliated Group member than if such member had filed a tax return on a separate basis.

2.4 Procedural Matters.

a. Financial shall prepare and file consolidated returns, and any other returns, documents or statements required to be filed with the Internal Revenue Service with respect to the determination of the tax liability of Financial and the Affiliated Group members for all taxable periods commencing with the tax period applicable as of the date of the execution of this Agreement. Financial shall have the right, in its sole discretion: (i) to determine (A) the manner in which such returns shall be prepared and filed, including, without limitation, the manner in which any item of income, gain, loss, deduction or credit shall be reported; provided, however, that Financial shall consider in good faith any treatment proposed by the Affiliated Group members, (B) whether any extensions of the statute of limitations may be granted and (C) the elections that will be made pursuant to the Code on behalf of any member of the consolidated group (it being agreed, however, that Financial shall not unreasonably withhold its consent to any elections which members of the Affiliated Group desire to make); (ii) to contest, compromise or settle any adjustment or deficiency proposed, asserted or assessed as a result of any audit of any such returns; (iii) to file, prosecute, compromise or settle any claim for refund; and (iv) to determine whether any refunds to which the consolidated group may be entitled shall be paid by way of refund or credited against the tax liability of the consolidated group.

b. Financial, to the extent such information is available, shall promptly notify the members of the Affiliated Group of any tax liability or refund issue, and shall advise and consult in good faith with such members with respect to contest, compromise or settlement thereof.

c. In the event of any disagreement as to the method of, or principles followed in, the computation, or as to the amount of income, deduction, gain, loss or credit, the parties shall submit the dispute to the Independent Public Accountant and the determination of such firm shall be conclusive and binding.

d. Nothing in this Agreement shall be construed as permitting Bank to pay any portion of its deferred tax liability to Financial, nor as permitting Financial to forgive any portion of Bank's deferred tax liability.

2.5 Cooperation.

a. At all times during which this Agreement is in force, the parties shall make available to each other during normal business hours and in a manner which will not interfere with the other parties' business, its financial, tax, accounting, and legal staff to the extent reasonably required in connection with the preparation of tax returns and other tax matters.

b. In the event of the termination of this Agreement, the parties will use their best efforts to make available to the others, upon written request, its officers and employees in connection with any tax proceedings.

Article III

MISCELLANEOUS

3.1 Entire Agreement. This Termination and Amendment No. 1 to the Tax Sharing Agreement contains the entire understanding of the parties hereto with respect to the subject matter contained herein. No alteration, amendment or modification of any of the terms of this

Termination and Amendment No. 1 to the Tax Sharing Agreement shall be valid unless made by an instrument signed by an authorized officer of the parties hereto. This Termination and Amendment No. 1 is to be effective upon the Closing of the Stock Purchase Agreement as to Auto and the members of the Affiliated Group.

3.2 Termination. This Agreement may be terminated by any party hereto upon thirty (30) days prior written notice to the other parties.

3.3 Law Governing. This Agreement has been made in and shall be construed and enforced in accordance with the laws of the State of California, as such laws may from time to time be amended or revised.

3.4 Headings. The headings contained in this Agreement are inserted for convenience only and shall not constitute a part hereof.

3.5 Notices. Any notice, demand, claim or other communication under this Agreement shall be in writing and shall be deemed to have been given upon the delivery or mailing thereof, as the case may be, if delivered personally or sent by certified mail, return receipt requested, postage prepaid, to the parties at the following addresses (or at such other address as a party may specify by notice to the others):

If to Financial, to:

Downey Financial Corp.
3501 Jamboree Road
Newport Beach, CA 92660
Attention: President

If to Bank, to:

Downey Savings and Loan Association, F.A.
3501 Jamboree Road
Newport Beach, CA 92660
Attention: President

If to Service, to:

DSL Service Company
3501 Jamboree Road
Newport Beach, CA 92660
Attention: President

If to Insurance, to:

Downey Affiliated Insurance Agency
3501 Jamboree Road
Newport Beach, CA 92660
Attention: President

If to Sierra Vista, to:

DSL/Sierra Vista, Inc.
3501 Jamboree Road
Newport Beach, CA 92660

5

Attention: Managing Shareholder

3.6 <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.

3.7 <u>Assignments, Third Party Beneficiaries</u>. This Agreement shall be binding upon and shall inure only to the benefit of the parties hereto and their respective successors and assigns. This Agreement is not intended to benefit any person, other than the parties hereto and such successors and assigns, and no such person shall be a third party beneficiary hereof.

3.8 <u>Successor Corporations</u>. This Agreement is binding upon and shall inure to the benefit of any successor corporations, whether by statutory merger, acquisition of assets or stock, or otherwise, to any of the parties hereto to the same extent as if the successor had been an original party to the Agreement.

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Agreement effective as of this 29th day of February, 2000.

DOWNEY FINANCIAL CORP.
a Delaware corporation

By: _____
Chief Operating Officer
Paul Woollatt


DOWNEY SAVINGS AND LOAN ASSOCIATION, F.A.
a Federal Association

By: _____
Chief Operating Officer
Paul Woollatt


DSL SERVICE COMPANY
a California corporation

By: _____
President
Daniel D. Rosenthal

DOWNEY AFFILIATED INSURANCE AGENCY
a California corporation

By: _____
Chief Operating Officer
Paul Woollatt

DSL/SIERRA VISTA, INC.
a California corporation

By: _____
DSL Service Company
Managing Shareholder

Der /
Amend#1.Agr.doc