# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------X

In re:                                       Chapter 7

DOWNEY FINANCIAL CORP.,                      Case No. 08-13041 (CSS)

     Debtor.               **Re: Docket No. 290**

-------------------------------------------------------X

## OBJECTION OF THE FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF DOWNEY SAVINGS AND LOAN ASSOCIATION, F.A., TO CHAPTER 7 TRUSTEE'S MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 362 FINDING THE FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR DOWNEY SAVINGS AND LOAN ASSOCIATION, F.A., VIOLATED THE AUTOMATIC STAY

BAYARD, P.A.
Neil B. Glassman (No. 2087)
Charlene D. Davis (No. 2336)
Daniel A. O'Brien (No. 4897)
222 Delaware Ave., Suite 900
Wilmington, Delaware 19899
Tel.: (302) 655-5000

OTTERBOURG, STEINDLER,
HOUSTON & ROSEN, P.C.
Peter Feldman
Melanie L. Cyganowski
(Admitted Pro Hac Vice)
230 Park Avenue
New York, New York 10169
Tel.: (212) 661-9100

*Counsel for the Federal Deposit Insurance Corporation, in its Capacity as Receiver*

Dated: January 14, 2010

# TABLE OF CONTENTS

Page No.

PRELIMINARY STATEMENT ................................................................. 2

BACKGROUND ................................................................................... 6

    The FDIC-R's Role as a Fiduciary of Downey S&L ................................. 6

    DFC's Filing of Consolidated Tax Returns as an Agent of Downey S&L .......... 7

    The FDIC's Rights as a Fiduciary Under the Internal Revenue Code .......... 8

    The Tax Sharing Agreement ............................................................. 10

    The Trustee's Application for Tentative Carryback Refund ...................... 13

    The Form 56-F ............................................................................... 14

    The Trustee's Recognition That the Filing of the Form 56-F Does Not
    Violate the Stay ............................................................................. 15

    The Effect of a Form 56-F ................................................................ 16

ARGUMENT ...................................................................................... 17

I.    SUBMISSION OF A FORM 56-F IS NOT AN ACT TO OBTAIN
    POSSESSION OF PROPERTY OF THE ESTATE OR OF PROPERTY
    FROM THE ESTATE OR TO EXERCISE CONTROL OVER
    PROPERTY OF THE ESTATE IN VIOLATION OF 11 U.S.C.
    § 362(a)(3) ..................................................................................... 17

    A.    The Automatic Stay May Not Be Used as a Sword ...................... 17

    B.    Filing of the Form 56-F Does Not Run Afoul of § 362(a)(3) ........ 18

    C.    The Case Law Cited by the Trustee Does Not Support His
    Position ................................................................................. 20

II.    THE TRUSTEE'S MOTION IS PROCEDURALLY IMPERMISSIBLE ........ 23

    A.    The Trustee Cannot Proceed by Motion ................................... 24

    B.    The Tax Refunds Do Not Constitute "Property" of the Debtor's
    Estate ................................................................................... 26

1.  DFC, as Agent/Trustee of Downey S&L, Has No Equitable Interest in the Tax Refund, and Therefore the Tax Refund is Not "Property" of the Estate ........................................................ 27

2.  Permitting DFC to Appropriate the Entire Tax Refund Would Be Contrary to the Case Law and Would Unjustly Enrich the Estate ............................................................ 30

3.  The Tax Sharing Agreement Does Not Alter DFC's Status as Agent/Trustee of Downey S&L, Nor Can It ................................. 31

CONCLUSION .............................................................................................. 32

# TABLE OF AUTHORITIES

Page No.

Asquino v. FDIC,
    196 B.R. 25 (D. Md. 1996)..................................................................... 5

Beiger v. IRS,
    496 U.S. 53 (1990)............................................................................... 27

BSD Bancorp, Inc. v. FDIC,
    Case No. 93-12207-A11....................................................................... 31

Cano v. GMAC Mortgage Corp. (In re Cano),
    410 B.R. 506 (Bankr. S.D. Tex. 2009) ...............................................18, 19, 20

Capital Bancshares, Inc. v. United States,
    957 F.2d 203 (5th Cir. 1992) ............................................................... 30

Citizens Bank of Maryland v. Strumpf,
    516 U.S. 16 (1995)............................................................................... 21

City of Farrell v. Sharon Steel Corp.,
    41 F.3d 92 (3d Cir. 1994)..................................................................... 28

Clayton v. King (In re Clayton),
    235 B.R. 801 (Bankr. M.D.N.C. 1998) ............................................... 17

Crump v. IRS (In re Crump),
    No. 96-1157, 1996 U.S.App. LEXIS 33449 (10th Cir. December 23, 1996) ..................... 25

Derringer v. Fitch,
    No. Civ. 03-149 MV/RLP, 2005 WL 5111008 (D. N.M. 2005) ........................................ 20

Heikkila v. Carver (In re Carver),
    828 F.2d 463 (8th Cir. 1987).............................................................. 20

In re All Trac Transportation, Inc.,
    306 B.R. 859 (Bankr. N.D. Tex. 2004)................................................22, 23

In re Altman,
    254 B.R. 509 (D. Conn. 2000).............................................................. 24

In re Astor Group, Inc.,
    No. 07-22176 JPK, 2007 WL 4893488 *1 (Bankr. N.D. Ind. Nov. 9, 2007) ..................... 24

In re Bevill, Bresler & Schulman Asset Mgmt. Corp.,
    896 F.2d 54 (3d Cir. 1990) .................................................................. 31

In re Brown,
No.03-13118-JW, 2009 Bankr. LEXIS 1489 (Bankr. D. S.C. 2009) ................................. 25

In re Cannon,
277 F.3d 838 (6th Cir. 2002) ................................................................................... 27

In re Columbia Gas Systems Inc.,
997 F.2d 1039 (3d Cir. 1993) .............................................................................27, 28

In re Colonial Realty Co.,
980 F.2d 125 (2d Cir. 1995) ..................................................................................... 5

In re Del Mission Limited.,
98 F.3d 1147 (9th Cir. 1996) ................................................................................... 22

In re Fla. Park Banks, Inc.,
110 B.R. 986 (Bankr. M.D. Fla. 1989) ...............................................................30, 31

In re Flying J. Inc.,
No. 08-133484 MFW (Bankr. D. Del. December 28, 2009).................................29, 20

In re Formisano,
148 B.R. 217 (Bankr. N.J. 1992) ............................................................................. 19

In re Harchar,
2006 WL 3196846 (Bankr. N.D. Ohio 2006).......................................................21-22

In re Harchar,
393 B.R. 160 (Bankr. N.D. Ohio 2008) ...........................................................passim

In re Hearthside Baking Co., Inc.,
397 B.R. 899 (Bankr. N.D. Ill. 2008)....................................................................... 24

In re Hull,
No. 02-10216-MFW, 2003 WL 22000599 (Bankr. D. Del. 2003)..............................27, 30

In re Johnson,
346 B.R. 190 (9th Cir. 2006) .................................................................................. 24

In re Landmark Land Co.,
973 F.2d 283 (4th Cir. 1992) .................................................................................... 7

In re Newcomer,
416 B.R. 166 (Bankr. D. Md. 2009) ........................................................................ 20

In re Omni Graphics, Inc.,
119 B.R. 641 (Bankr. E.D. Wis. 1990) ........................................................... 19

In re Price,
134 B.R. 313 (Bankr. N.D. Ill. 1991)............................................................... 22

In re Prudential Lines Inc.,
114 B.R. 27, 31 ..........................................................................................30, 31

In re Risner,
317 B.R. 830 (Bankr. D. Idaho 2004).........................................................17, 18

In re TMCI Electronics,
279 B.R. 552 (Bankr. N.D. Cal. 1999)............................................................. 30

In re Waste Alternatives, Inc.,
171 B.R. 147 (Bankr. M.D. Fla. 1994) ............................................................ 26

In re Whitehall Jewelers Holdings, Inc.,
2008 WL 2951974 *6 (Bankr. D. Del. 2008)................................................18, 19

In re Young,
193 B.R. 620 (Bankr. D.C. 1996) .................................................................... 23

Jump v. Manchester Life & Casualty Mgmt. Corp.,
438 F.Supp. 185 (E.D. Mo. 1977), aff'd 579 F.2d 449 (8th Cir. 1978) .........28, 30

Matter of Maple Mortgage Inc.,
81 F.3d 592 (5th Cir. 1996) ............................................................................ 27

McHenry v. Key Bank (In re McHenry),
179 B.R. 165 (B.A.P. 9th Cir. 1995)................................................................ 18

Rexnord Holdings, Inc. v. Bidermann,
21 F.3d 522 (2d Cir. 1994) ............................................................................. 20

Rosengren v. GMAC Mortgage Corp.,
2001 WL 1149478 at *4 (D. Minn. August 7, 2001)......................................... 17

Savers Fed. Savings and Loan Assoc. v. McCarthy Constr. Co.
(In re Knightsbridge Dev. Co. Inc.),
884 F.2d 145 (4th Cir. 1989) ......................................................................19, 20

Segal v. Rochelle,
382 U.S. 375 (1996) ....................................................................................... 29

SLW Capital, LLC v. Mansaray-Ruffin (In re Mansaray-Ruffin),
    530 F.3d 230 (3d Cir. 2008) ............................................................................. 26

Smith v. Tele-Comm., Inc.,
    134 Cal. App. 3d 338 (Cal. Ct. App. 1982) ...................................................... 32

Sunshine Dev., Inc. et al. v. FDIC,
    33 F.3d 106 (1st Cir. 1993) ................................................................................ 5

United States v. Bass Fin. Corp.,
    No. 83 C 706 (N.D. Ill. 1984) ........................................................................ 30

United States v. REVCO D.S., Inc. (In re REVCO D.S., Inc.),
    111 B.R. 631 (Bankr. N.D. Ohio 1990) .......................................................... 30

Western Dealer Mgmt., Inc. v. England
    (In re Bob Richards Chrysler-Plymouth Corp., Inc.),
    473 F.2d 262 (9th Cir. 1973) ...................................................................passim

Federal Statutes
11 U.S.C. § 105 ............................................................................ 1, 24
11 U.S.C. § 362 ............................................................................passim
11 U.S.C. § 541 ............................................................................ 27
11 U.S.C. § 553 ............................................................................ 29
12 U.S.C. § 1821 .........................................................................5, 6, 7
26 U.S.C. 6036 ............................................................................ 14
26 U.S.C. 6402 ...........................................................................3, 8, 9, 14
26 U.S.C. 6903 ............................................................................ 14

Federal Rules
Federal Rule of Bankruptcy Procedure 7001 ........................................ 5, 24, 25, 32

Federal Regulations
26 C.F.R. § 1.502-77 .................................................................... 8
26 C.F.R. § 301.6402-7 ................................................................passim
26 C.F.R. § 301.6903-1 ................................................................ 14
63 Fed. Reg. 64757 (Nov. 23, 1998) .................................................12, 13

Secondary Sources
10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
*Federal Practice and Procedure* § 2751 (1998) ................................... 25

5 Collier on Bankruptcy ¶ 541.11 (15th ed. rev. 2009) .......................... 28

The Federal Deposit Insurance Corporation (the "FDIC"), as Receiver ("FDIC-R" or the "Receiver") of Downey Savings and Loan Association, F.A. ("Downey S&L"), by its undersigned counsel, files this Objection (the "Objection"),[1] to the Motion of the Chapter 7 Trustee (the "Trustee") of Downey Financial Corp. ("DFC" or the "Debtor") for Entry of an Order Pursuant to 11 U.S.C. §§ 105(a) and 362 Finding the Federal Deposit Insurance Corporation as Receiver for Downey Savings and Loan Association, F.A., Violated the Automatic Stay (Docket # 290) (the "Automatic Stay Motion").

In support thereof, the FDIC-R asserts as follows:

*[Remainder of page intentionally left blank.]*

---

[1]     The submission of this Objection shall not in any way constitute a submission by the FDIC-R to the jurisdiction or authority of the Bankruptcy Court for the resolution of any regulatory matter involving the Debtor and the FDIC-R. Nor is this Objection an admission that this Court is the appropriate forum for disputes between the FDIC-R and the Debtor. The filing of this Objection shall not constitute a waiver or consent by the FDIC-R of any: (a) right to Sovereign Immunity, whether the FDIC-R is acting in its capacity as Receiver; (b) right to have any and all final orders in any and all non-core matters entered only after de novo review by a United States District Court Judge; (c) right to trial by jury in any proceeding as to any and all matters so triable therein, whether or not the same be designated legal or private rights, or in any case, controversy or proceeding related thereto, whether or not such jury trial right is pursuant to statute or the United States Constitution; (d) right to have the reference of this matter withdrawn by the United States District Court in any matter or proceeding subject to mandatory or discretionary withdrawal; or (e) other rights, claims, actions, defenses, setoffs, recoupments or other matters to which the FDIC-R is entitled under any agreements or at law or in equity or under the United States Constitution. All of the foregoing rights are expressly reserved and preserved, without exception, and without the intention or purpose of conceding jurisdiction in any way by this filing or by any other participation in this matter or in this case. The FDIC-R expressly reserves all rights at law and equity to assert the preemption of the Bankruptcy Court's jurisdiction and the exclusive jurisdiction provided under Title 12, as applicable, with respect to the FDIC-R.

{BAY:01463928v1}

## PRELIMINARY STATEMENT

1.      One of the most significant disputes in this Chapter 7 case concerns the ownership of tax refunds that approximate at least $315 million in total. Both the FDIC-R and the Trustee assert ownership of the refunds – the FDIC-R on account of net operating losses ("NOLs") owned by Downey S&L; the Trustee on account of stock ownership in Downey S&L, which the Trustee deems to be worthless as a consequence of Downey S&L's losses and its resulting takeover by the FDIC-R.

2.      DFC, a shell company, was parent of Downey S&L and certain related service entities. Under a tax sharing agreement, DFC, for itself and as agent for Downey S&L and its affiliates, was the entity that remitted tax payments to the Internal Revenue Service ("IRS") on behalf of the consolidated tax group (the "Consolidated Group"). On that basis, the Trustee filed a tax return on September 14, 2009 (which he subsequently amended on December 31, 2009), in which, without prior notice to the FDIC-R, he asserted ownership of the tax refunds based on the purported worthless stock deduction – thereby seeking to eliminate the NOLs owned by Downey S&L to the prejudice of the FDIC-R, as fiduciary for its receivership estate (the "Receivership"). The Trustee asserted ownership of the refunds even though Downey S&L, not DFC, was the source of funds for payment of the taxes on which any refund could be based, while DFC paid none, and further, even though in paying the taxes to the IRS on behalf of the Consolidated Group, DFC acted solely as an *agent,* while at all times Downey S&L was the principal.

3.      The tax law protects the FDIC-R, and the taxpayers it represents, in circumstances as these. Among other things, 26 C.F.R. § 301.6402-7 ("Treas. Reg. § 301.6402-7"),

implementing § 6402(k) of Title 26 of the United States Code (the "Internal Revenue Code"),[2] authorizes the FDIC-R, as a fiduciary, to file its *own* tax return on behalf of its receivership estate if it disagrees with the return filed by the parent on behalf of a consolidated group, and permits the FDIC-R to act as an *alternate agent* for the consolidated group for this purpose.

4. *The FDIC-R, however, did not file its own tax returns or seek to act as an alternate agent.* Rather, as this Court is aware, on January 4, 2010, the FDIC-R filed a motion for relief from the automatic stay, to the extent it is applicable (Docket # 286) (the "Lift Stay Motion"), to permit it to file the alternate tax returns that Treas. Reg. § 301.6402-7 authorizes.

5. The FDIC-R filed its motion only after a December 22, 2009 telephone call with the Trustee. During that call, the FDIC-R gave notice of its intent to file the Lift Stay Motion on January 4, 2010 unless the parties could obviate the need for motion practice by entering into a stipulation pursuant to which the tax refund would be deposited into escrow, reserving all parties' rights thereto, so that ownership of the refund could be litigated thereafter.

6. In response to the FDIC-R's December 22 telephone call, the Trustee sent a letter dated December 30, 2009 in which he rejected the FDIC-R's proposal and in addition, *for the first time*, asserted that the FDIC-R had violated the automatic stay because, on November 28, 2008, three days after this case commenced, an FDIC-R representative (not an attorney) had submitted a so-called Form 56-F, "Notice Concerning Fiduciary Relationship of Financial Institution" ("Form 56-F"), to the IRS. That form, which the FDIC-R is instructed to submit to the IRS, provides notice to the IRS that the FDIC-R, as a receiver, has become the fiduciary for a failed institution. As set forth below, under no circumstances can the mere act of filing a Form 56-F be considered to be a violation of the automatic stay, and no case cited by the Trustee or

---

[2] While Treas. Reg. § 301.6402-7(a)(1) makes reference to § 6402(i) of the Internal Revenue Code, this section has since been re-codified as § 6402(k).

3

known to the FDIC-R has so held. To the contrary, even assuming *arguendo* that the refunds in issue are estate property (and the FDIC-R asserts that they are not), filing of the Form 56-F notice is not a basis to find that the stay has been violated.

7. Action, or in this case, inaction, speaks louder than words, and the Trustee's inaction shows that the Trustee agrees that the filing of the Form 56-F does not constitute a stay violation. Time records filed on December 31, 2009 by the Trustee's professionals in a recent application for allowance establish that the Trustee knew by October 29, 2009 that the FDIC-R had submitted the Form 56-F to the IRS – the Trustee's professionals had even researched whether filing a Form 56-F was a stay violation in the days thereafter. The Trustee, however, took *no action* regarding this alleged stay violation until he sent his letter of December 30, eight days *after* learning that the FDIC-R intended to make its Lift Stay Motion if the Trustee would not consent to the relief sought. Until the December 30 letter, the Trustee never mentioned this alleged stay violation to the FDIC-R, notwithstanding the multiple emails, telephone calls and even at least one face-to-face meeting between the professionals for the Trustee and the FDIC-R in that two-month time frame after October 29, including communications concerning taxes, tax refunds and tax returns. Had the Trustee truly believed that the filing of the Form 56-F was a stay violation, with adverse effects upon the DFC estate, he unquestionably would have acted promptly, and not have waited to trumpet the purported stay violation only after learning that the FDIC-R would move this Court for stay relief. Indeed, the alleged prejudice to the DFC estate that the Trustee asserts was occasioned by the filing of Form 56-F – delay in receipt of tax refunds – is of a shorter period (assuming *arguendo* it even occurred) than the Trustee's delay in raising this alleged stay violation thereafter. In short, the Automatic Stay Motion is not made in

good faith, but rather, is an effort at litigation gamesmanship that ill-behooves the Trustee in view of the significant issues (and monetary amounts) involved.[3]

8.     Equally troubling is the Trustee's attempt through the Automatic Stay Motion to obtain a "finding" that the refunds in issue are owned by the DFC estate. This bit of legerdemain – the finding is found only in the proposed order attached to the motion and not in the motion itself – is not only factually in error but is prohibited by the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules," and each a "Bankruptcy Rule"). The requested finding (i) requires a determination of the parties' respective interests in the property at issue, which in turn may necessitate the interpretation of a tax sharing agreement to the extent it is in effect between the parties, as well as significant factual findings, including the historical payment of the taxes by Downey S&L, which can only be made after a plenary trial, and (ii) in substance seeks a declaratory judgment in the guise of mere finding. Under Bankruptcy Rules 7001 (2) and (9), if the Trustee seeks that determination, he must seek it in an adversary proceeding, not by motion, a point that is well taken when the complexity of the issues before the Court are considered.[4]

9.     In short, this motion is substantively and procedurally without merit. It should be denied.[5]

---

[3]     In light of the Trustee's belated assertion on December 30, 2009 that filing of the Form 56-F violated the stay, in the Lift Stay Motion, the FDIC-R seeks *nunc pro tunc* stay relief to permit its submission of the Form 56-F to the IRS.

[4]     The FDIC-R reserves all rights, upon the institution of such an adversary proceeding, to seek to withdraw the reference or transfer venue, or seek other relief as may be appropriate.

[5]     While the FDIC-R recognizes that a number of courts have held that 12 U.S.C. § 1821(j) does not exempt the FDIC from operation of the automatic stay where the actions of the FDIC might affect property of the estate, the FDIC respectfully submits that this is not an appropriate interpretation of the explicit, preclusive language in this anti-injunction provision, and the FDIC-R reserves all and of its rights in this regard. *See Sunshine Dev., Inc., et al. v. FDIC*, 33 F.3d 106 (1st Cir. 1993); *In re Colonial Realty Co.*, 980 F.2d 125 (2d Cir. 1992). *But see Asquino v. FDIC*, 196 B.R. 25, 29 (D. Md. 1996).

5

## BACKGROUND

### The FDIC-R's Role as a Fiduciary of Downey S&L

10.     On November 21, 2008 (the "Bank Closing Date"), the Office of Thrift Supervision closed Downey S&L and appointed the FDIC as the Receiver of Downey S&L.[6] Prior to the Bank Closing Date, DFC was a savings and loan holding company that owned Downey S&L.  On November 25, 2008 (the "Petition Date"), DFC filed a voluntary petition seeking relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").  On or about November 26, 2008, the Office of the United States Trustee appointed Montague S. Claybrook to serve as the interim Chapter 7 Trustee and he has continued in this capacity as the permanent Chapter 7 Trustee.

11.     As of the Bank Closing Date, pursuant to 12 U.S.C. § 1821(d)(2)(A)(i), the FDIC-R succeeded by operation of law to all rights, titles, powers, and privileges, including legal claims, of a failed insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution.  *See* 12 U.S.C. § 1821(d)(2)(A)(i).

12.     Further, pursuant to 12 U.S.C. § 1821(g)(1), and notwithstanding any other provision of federal law, the FDIC-R is subrogated to all rights of any payment to any depositors upon either payment to depositors or the making of provisions for payment to the depositors of Downey S&L.  *See* 12 U.S.C. § 1821(g)(1).  The FDIC acts as a fiduciary of Downey S&L to protect insured depositors and creditors of Downey S&L, as well as in the interests of all taxpayers.  Accordingly, Congress has endowed the FDIC with broad powers to manage,

---

[6]     The FDIC-R respectfully refers the Court to the Lift Stay Motion for a fuller description of the pertinent background and incorporates the relevant information therein by reference.

reorganize, and collect assets of a failed depository institution for the benefit of depositors (and taxpayers). *See In re Landmark Land Co.*, 973 F.2d 283, 289 (4th Cir. 1992).

13.     Among the powers granted the FDIC-R include the power to:

(i)     take over the assets of and operate the insured depository institution with all the powers of the members or shareholders, the directors, and the officers of the institution and conduct all business of the institution;

(ii)    collect all obligations and money due the institution;

(iii)   perform all functions of the institution in the name of the institution which are consistent with the appointment as conservator or receiver; and

(iv)    preserve and conserve the assets and property of such institution.

12 U.S.C. § 1821(d)(2)(B).  Additionally, the FDIC may exercise "such incidental powers as shall be necessary" to carry out the powers specifically enumerated in Title 12 of the United States Code. *See* 12 U.S.C. § 1821(d)(2)(J).

**DFC's Filing of Consolidated Tax Returns as an Agent of Downey S&L**

14.     The Internal Revenue Code authorizes affiliated groups to file consolidated income tax returns. Section 1501 of the Internal Revenue Code provides that "an affiliated group of corporations shall . . . have the privilege of making a consolidated return with respect to the income tax imposed by the [Internal Revenue Code] for the taxable year in lieu of separate returns." Consistent with § 1501, the Secretary of the Treasury has promulgated regulations that authorize a parent company to file a consolidated tax return on behalf of its subsidiaries. *See* 26 C.F.R. §1.1502-77.

15.     In so acting, however, the parent serves solely as the *agent* of its affiliates.  Treas. Reg. §1.1502-77 provides that, generally speaking, the common parent serves as the agent for an affiliated group with respect to all matters relating to the tax liability for that consolidated return year. *See* 26 C.F.R. §1.1502-77(a)(1)(i).  Consequently,

7

> [t]he only reason the tax refunds are not being paid directly to the
> subsidiary is because income tax regulations require that the parent
> act as the sole agent, when duly authorized by the subsidiary, to
> handle all matters relating to the tax return …. But these
> regulations are basically procedural in purpose and were adopted
> solely for the convenience and protection of the federal
> government. The Internal Revenue Service is not concerned with
> the subsequent disposition of tax refunds and none of its
> regulations can be construed to govern this issue.

*Western Dealer Mgmt., Inc. v. England (In re Bob Richards Chrysler-Plymouth Corp., Inc.)*, 473

F.2d 262, 265 (9th Cir. 1973).

16.     Indeed, the parent can be removed from its role as agent. For instance, Treas.

Reg. § 1.502-77 provides that a "substitute agent," described in paragraph (a)(1)(ii), may take the

place of the common parent of the affiliated group with respect to all matters relating to the tax

liability of the group. *See* 26 C.F.R. § 1.502-77(a)(1)(i)-(ii).

17.     Moreover – and importantly for this case – the FDIC-R may, as a fiduciary,

replace the parent as agent in accordance with § 6402 of the Internal Revenue Code and Treas.

Reg. § 301.6402-7. *See* 26 C.F.R. § 1.502-77(g); *see also* Form 56-F, at 2 ("However, if the

financial institution is a member of a consolidated group, the provisions of Regulations section

1.1502-77 apply *to the extent not modified by section 6402(k) and Regulations section 301.6402-

7*.") (emphasis added).

**The FDIC's Rights as a Fiduciary Under the Internal Revenue Code**

18.     The FDIC-R's right under the Internal Revenue Code to replace the parent as

agent of an affiliated group that files consolidated tax returns stems from its capacity as a

fiduciary of a failed depository institution. Section 6402(k) of the Internal Revenue Code

provides:

> Notwithstanding any other provision of law, in the case of an
> insolvent corporation which is a member of an affiliated group of

8

corporations filing a consolidated tax return for any taxable year and which is subject to a statutory or court-appointed fiduciary, the Secretary may by regulation provide that any refund for such taxable year may be paid on behalf of such insolvent corporation to such fiduciary *to the extent that the Secretary determines that the refund is attributable to losses or credits of such insolvent corporation.*

26 U.S.C. § 6402(k)(emphasis added). Treas. Reg. § 301.6402-7 implements this section of the Internal Revenue Code.

19. This regulation expressly recognizes the FDIC-R's status as a "fiduciary" to whom such refund may be remitted under § 6402(k). As defined in Treas. Reg. § 301.6402-7(b)(3), in relevant part, a "fiduciary is (i) the Federal Deposit Insurance Corporation ... in its capacity as an authorized receiver or conservator of an insolvent financial institution." *See* 26 C.F.R. § 301.6402-7(b)(3)(i).

20. Treas. Reg. § 301.6402-7 provides the FDIC-R, as a fiduciary, with certain affirmative rights to file a claim for a refund or a tax return as an alternate agent for the affiliated group. In relevant part, Treas. Reg. § 301.6402-7(e)(1) provides that "[i]f...the fiduciary does not accept a claim for refund filed by the common parent, the fiduciary may claim a refund under this section by filing its own claim for refund under section 6402...." *See* 26 C.F.R. § 301.6402-7(e)(1); *see also* 26 C.F.R. § 301.6402-7(e)(3). A prerequisite for the fiduciary's filing of a claim for refund is that the fiduciary first have filed the Form 56-F and satisfy certain other notice provisions of Treas. Reg. § 301.6402-7. *See* Form 56-F, at 2 (a copy of Form 56-F is attached as Exhibit "A" to the to the accompanying Declaration of Melanie L. Cyganowski, sworn to January 14, 2010 (the "Cyganowski Declaration")).

21. If a fiduciary elects to file a claim for a refund or an application for a tentative carryback adjustment pursuant to the aforementioned provisions, the IRS "may, in its sole

discretion, pay to the fiduciary all or any portion of the refund or tentative carryback adjustment that the Internal Revenue Service determines under this section to be attributable to the net operating losses of the institution." *See* 26 C.F.R. § 301.6402-7(g)(1).

22.    Importantly, Treas. Reg. § 301.6402-7(j) provides that the procedures established by this section are "not determinative of ownership of any such amount among current or former members of a consolidated group (including the institution)," but merely determine the party to whom the IRS will pay a refund or tentative carryback adjustment. *See* 26 C.F.R. § 301.6402-7(j).

**The Tax Sharing Agreement**

23.    The tax regulations do not affect tax sharing agreements among members of an affiliated group, and the IRS' determination of the portion of a refund or tentative carryback adjustment payable to the fiduciary under Treas. Reg. § 301.6402-7 is made without regard to any tax sharing agreement that may be in place. *See* 26 C.F.R. § 301.6402-7(g)(4)(i). Allegedly in accordance with the provisions of a tax sharing agreement, effective as of December 1, 1998 (as amended, the "Tax Sharing Agreement"),[7] entered into among the members of the Consolidated Group, and applicable tax regulations, DFC prepared and filed consolidated tax returns of the Consolidated Group for the tax years 1998 through 2007. (However, as of the date of this Objection, the Trustee has neither assumed nor rejected the Tax Sharing Agreement.[8])

24.    The Tax Sharing Agreement accords certain rights to DFC, as agent, including rights relating to the tax treatment to be followed in the Consolidated Group's return, a right that

---

[7]    A copy of the Tax Sharing Agreement is annexed as Exhibit "B" to the Cyganowski Declaration. The 2000 amendment to the Tax Sharing Agreement did not result in any substantive change to the agreement, but rather served to terminate Downey Auto Finance Corp. as a party thereto.
[8]    Nevertheless, the Trustee cites to provisions of the Tax Sharing Agreement in his motion and asks this Court to interpret the Tax Sharing Agreement within the context of the Trustee Motion. *See* Automatic Stay Motion, ¶¶ 8-9, Ex. A.

10

the Trustee trumpets. However, that "right" is limited. Among other things, and without limitation, under the Tax Sharing Agreement, DFC is required to seek the input of its affiliates on the tax elections made in any given tax year, something which the Trustee failed to do, filing his tax return without any prior review by, or notice to, the FDIC-R. *See* Cyganowski Declaration, Ex. B, §§ 2.4(a)(i)(A) (requiring DFC to "consider in good faith any treatment proposed by the Affiliated Group members"); § 2.4(a)(i)(C) (providing that "[DFC] shall not unreasonably withhold its consent to any elections which members of the Affiliated Group desire to make"); § 2.4(b) (requiring that DFC "promptly notify the members of the Affiliated Group of any tax liability or refund issue, and shall advise and consult in good faith with such members with respect to contest, compromise or settlement thereof"); § 2.5 (setting forth DFC's duty of cooperation at all times during which the Tax Sharing Agreement is in force).

25.     Second, the Trustee (in DFC's shoes) is merely an *agent* of Downey S&L,[9] and the Tax Sharing Agreement does not otherwise affect Downey S&L's ownership of the underlying tax remittances.

26.     Third, the Tax Sharing Agreement expressly provides that "[i]n no instance shall the allocation of tax liability to any member of the Affiliated Group pursuant to this Agreement be less favorable than the tax liability which would result from such member filing a separate tax return." *See* Cyganowski Declaration, Ex. B at § 2.1(d); *compare id.* at § 2.1(e)("Estimated tax payments made by members of the Affiliated Group shall not exceed the amount which would be due and currently payable to taxing authorities if such Affiliated Group member had filed a separate tax return").

---

[9]     The Trustee acknowledges as much in the attachment to his amended claim for refund, stating, among other things, that "[t]he filing of a bankruptcy petition by a common parent of an affiliated group of corporations does not terminate *the parent's status as agent for the group.*" *See* Claims for Refund for Overpayments in Federal Income Tax for the Calendar Years Ending December 31, 2003, 2004, 2005, 2006 and 2007 (a copy is attached as Exhibit "C" to the Cyganowski Declaration, to be filed under seal or as otherwise directed by the Court).

27.     In furtherance of this last directive, § 2.1(g) of the Tax Sharing Agreement also provides that "[i]f any Affiliated Group member would have benefited from a carryback of an unused loss or tax credit on a separate-return basis, such benefit shall be reflected in the allocation of taxes pursuant to this Agreement." *See id.* at § 2.1(g).   Moreover, if the consolidated tax liability is adjusted for any taxable period such that a refund is paid to the Consolidated Group, § 2.1(h) requires DFC to pay to each Consolidated Group member its share of the refund, as determined under the Tax Sharing Agreement. *See id.* at § 2.1(h).[10]

28.     These provisions of the Tax Sharing Agreement are consistent with the uniform policy statement issued in 1998 by the four main bank regulatory agencies, including the FDIC, regarding intercompany tax allocation agreements for banks, like Downey S&L, that file an income tax return as members of a consolidated group.  *See* Interagency Policy Statement on Income Tax Allocation In A Holding Company Structure, 63 Fed. Reg. 64757 (Nov. 23, 1998)(the "Policy Statement," a copy of which is annexed as Exhibit "D" to the Cyganowski Declaration).

29.     For instance, the Policy Statement similarly provides that the amount and timing of payments or refunds should be no less favorable to a depository institution subsidiary than if it were a separate taxpayer. *See id.*  Under the Policy Statement, a bank subsidiary that incurs a loss for tax purposes should receive its share of the refund in an amount no less than the amount the institution would have been entitled to receive as a separate entity. *See id.*  Importantly, consistent with the tax regulations discussed above, the Policy Statement recognizes that the

---

[10]     Each of these provisions supports the notion that the tax refunds belong to the respective Consolidated Group member and are, at best, held by DFC, as parent, in trust.  Importantly, from a bankruptcy point of view, the tax refunds constitute property of the Receivership -- not simply a "claim" that the FDIC-R has against the bankruptcy estate.

parent acts solely as agent for its principal, *i.e.*, the bank subsidiary, and that the subsidiary's

share of the tax refund remains, at all times, property of the subsidiary:

> a parent company that receives a tax refund from a taxing authority
> obtains these funds *as agent for the consolidated group on behalf
> of the group members*.    Accordingly, an organization's tax
> allocation agreement or other corporate policies *should not purport
> to characterize refunds attributable to a subsidiary depository
> institution that the parent receives from a taxing authority as the
> property of the parent.*

*See id.* (emphasis added).  Any practice by a bank holding company parent that is not consistent

with the Policy Statement has the potential to be viewed by bank regulators as an "unsafe and

unsound" practice that would result in either informal or formal corrective action.  *See id.*  This

is not an empty statement; engaging in such practice is subject to a variety of enforcement

mechanisms, not the least of which include regulatory takeover of the bank.

**The Trustee's Application for Tentative Carryback Refund**

30.    On September 14, 2009, the Trustee caused a Form 1120 Corporation Income Tax

Return for the 2008 tax year (the "2008 Consolidated Tax Return") to be filed with the IRS.

Upon information and belief, the Trustee thereafter filed a Form 1139, Corporation Application

for Tentative Carryback Refund (the "Trustee's Refund Application").  *See* Automatic Stay

Motion, ¶14.  The Trustee's Refund Application purportedly sought to carryback the Debtor's

worthless stock deduction to obtain a tax refund on account of taxes previously remitted to the

IRS.  *See id.*

31.    On December 31, 2009, the Trustee amended his returns, filing a Form 1120X,

U.S. Federal Income Tax Claims for Refunds for Overpayments in Tax, for the Taxable Years

Ending December 31, 2003, 2004, 2005, 2006, and 2007 (the "Trustee's Amended Returns"), in

part, to take advantage of the additional 3 years of carryback for NOLs provided under a change

in the tax law that was made subsequent to the initial filing of the Trustee's Refund Application. *See* Automatic Stay Motion, ¶17. Upon information and belief, this increased the Trustee's requested refund from approximately \$145,000,000 to \$314,335,197.20.[11]

**The Form 56-F**

32.     Under law, whenever it becomes a receiver, and thus a fiduciary, of a failed depository institution, the FDIC-R is instructed to give the IRS notice of that fact. *See* 26 U.S.C. §§ 6036 & 6903; 26 C.F.R. § 301.6903-1. Accordingly, shortly after its appointment as Receiver of Downey S&L, the FDIC-R submitted a Form 56-F to the IRS to inform it of its appointment as a fiduciary of Downey S&L. *See* Automatic Stay Motion, Ex. B.

33.     In relevant part, § 6036 provides: "Every receiver ... or other like fiduciary ... shall give notice of his qualification as such to the Secretary in such manner and at such time as may be required by regulations of the Secretary." *See* 26 U.S.C. § 6036; *see also* 26 C.F.R. §301.6903-1(a)("Rights and obligations of fiduciary. Every person acting for another person in a fiduciary capacity shall give notice thereof to the district director in writing.").

34.     The instructions to the Form 56-F further direct:

> Form 56-F must be filed with the IRS within 10 days from the date the fiduciary is appointed to act as a receiver or conservator. In addition, it should be filed in every subsequent tax year that the fiduciary continues to act as the receiver or conservator for that financial institution for purposes of section 6402(k).

*See* Cyganowski Declaration, Ex. A at 2.[12]

---

[11]     The total amount may actually be approximately \$330 million. The discrepancy between this number and the figure that the Trustee cites in the Trustee's Amended Returns appears to stem from the Trustee's failure to modify the applicable Alternative Minimum Tax as permitted under relevant tax law.

[12]     *See also* 26 C.F.R. § 301.6402-7(d)(1). That regulation states that in addition to the filing of a Form 56-F, "in its sole discretion, the Internal Revenue Service may treat notice to it in any other manner as satisfying the notice requirement under this paragraph (d)(1)." *See* 26 C.F.R. § 301.6402-7(d)(1). In the attachment appended to the 2008 Consolidated Tax Return, the Trustee informed the IRS that the FDIC-R was appointed as the Receiver of Downey S&L – indeed, this "change of control" is the basis for his claim that DFC's stock in Downey S&L was made worthless. *See* Attachment to Form 8275 For 2008 Consolidated Federal Income Tax Return, ¶¶ 7-8 (a copy is

35.     Pursuant to these requirements, the FDIC-R, in connection with its administration of the Downey S&L Receivership, submitted a Form 56-F to the IRS, and thereafter submitted an updated Form 56-F, as instructed by law.

**The Trustee's Recognition That the Filing of the Form 56-F Does Not Violate the Stay**

36.     According to the Trustee, by letter dated October 26, 2009, the IRS informed the Trustee that it could not "process" the Trustee's Refund Application because the Trustee's application did not contain the signature of the FDIC, *see* Automatic Stay Motion, ¶15, Ex. C, apparently the result of the IRS' view that when a Form 56-F is filed, the taxpayer on behalf of the consolidated group that files a Form 1139 is required to obtain the signature of the FDIC-R, as fiduciary for the failed institution.[13]  The Trustee asserts that the IRS failed to process the Trustee's Refund Application because the FDIC-R submitted a Form 56-F to the IRS.  *See* Automatic Stay Motion, ¶ 30.

37.     The Trustee unquestionably knew of the FDIC-R's submission to the IRS of a Form 56-F by, at the very latest, October 29, 2009, the date that the Trustee apparently received a copy of the October 26 letter from the IRS.  According to the Application of Fox Rothschild LLP for Third Interim Expenses and Reimbursement of Expenses as Attorneys to Montague S. Claybrook, Chapter 7 Trustee, for the Period August 1, 2009 through November 30, 2009 (Docket #284) (the "Fox Rothschild Third Fee Application"), senior tax and bankruptcy attorneys at Fox Rothschild LLP reviewed the October 26 letter, had numerous discussions of

---

attached as Exhibit "E" to the Cyganowski Declaration, to be filed under seal or as otherwise directed by the Court). Accordingly, the IRS may choose to treat the Trustee's *own* notification to the IRS of the FDIC-R's fiduciary status as appropriate notice for purposes of § 6402 and Treas. Reg. § 301.6402-7.  This only further demonstrates the extent to which submitting a Form 56-F is an act that does not violate the automatic stay, and that the Trustee's own notification to the IRS of the FDIC-R's fiduciary status nullifies any suggestion that the FDIC-R violated the automatic stay.

[13]     The IRS appears to interpret Treas. Reg. § 301.6402-7(e)(2) to require that both the fiduciary and the common parent sign an application for tentative carryback adjustment once notice of a fiduciary relationship has been processed, regardless of whether it is the fiduciary or the common parent files the application.  However, Treas. Reg. § 301.6402-7(e) by its terms only pertains to "Filing requirements of the fiduciary," not of the parent.

"tax issues" contemporaneously thereafter, and spent over twenty hours in the following days researching the issue of whether the filing of the Form 56-F could be considered a violation of the automatic stay.[14]

38.    Notwithstanding this knowledge, and the fact that counsel for the FDIC-R had, just three days prior on October 26, 2009, traveled to Philadelphia to meet with Trustee's counsel, the Trustee failed to make any mention of Form 56-F, let alone his view that the submission of such a notice violated the automatic stay, in any of the multiple communications between the Trustee and the FDIC-R over the ensuing next two months.[15] It was only *after* the FDIC-R told the Trustee that it would file a motion to lift stay for authority to file its own tax returns (unless the parties could resolve the matter through stipulation), that the Trustee, eight days later, in a letter rejecting the FDIC-R's overtures of settlement,[16] asserted for the first time that the Form 56-F was allegedly a stay violation. *See* Letter from Melanie L. Cyganowski, Esq., to William H. Stassen, Esq. (January 5, 2010), attached as Exhibit "F" to the Cyganowski Declaration. Notably, the Trustee provided no explanation for the two-month delay in asserting his position with respect to the Form 56-F.

**The Effect of a Form 56-F**

39.    The Trustee's belated reliance on submission of a form intended, under law, to give notice to the IRS of the FDIC-R's takeover of a failed depository institution underscores the weakness (and strategic nature) of his motion. While the Form 56-F is a prerequisite for a fiduciary to exercise its rights under Treas. Reg. § 301.6402-7 to file an alternate tax return, the

---

[14]    *See* Fox Rothschild Third Fee Application, Ex. A-1 at 103 (time entry of R. Antaramian noting that he "review[ed] letter from IRS re Form 1139"), 104 (time entry of M. Menkowitz noting that he "review[ed] 56F and IRS issues"), 107-108 (time entries of J. Manfrey and R. Patella regarding research on, and consideration of, FDIC automatic stay issues, as well as multiple discussions among senior attorneys), 110 (same).

[15]    These communications are elaborated on in further detail in the accompanying Cyganowski Declaration.

[16]    After the FDIC-R filed the Lift Stay Motion, the Trustee requested that the parties meet, and counsel for the parties have resolved to schedule a meeting to further explore the possibility of consensual resolution of the issues currently before the Court.

filing of a Form 56-F, without more, does not constitute, among other things, the filing of a tax return or the filing of a claim for a tax refund, or an act as a substitute agent. At no time has the FDIC-R filed a tax return or filed an application for tentative carryback adjustment as an alternate agent for the Consolidated Group.

## ARGUMENT

I.  **SUBMISSION OF A FORM 56-F IS NOT AN ACT TO OBTAIN POSSESSION OF PROPERTY OF THE ESTATE OR OF PROPERTY FROM THE ESTATE OR TO EXERCISE CONTROL OVER PROPERTY OF THE ESTATE IN VIOLATION OF 11 U.S.C. § 362(a)(3)**

40.     The Trustee asserts that the mere filing of a Form 56-F with the IRS constitutes an act that violates the automatic stay pursuant to § 362(a)(3) of the Bankruptcy Code. Submission of a Form 56-F, without more, is not, and cannot, be a stay violation, and no case the Trustee cites holds it to be.

### A.     The Automatic Stay May Not Be Used As a Sword

41.     The automatic stay "was not designed to be used as a kind of spring-loaded gun against creditors who wander into traps baited by the debtor." *Clayton v. King (In re Clayton)*, 235 B.R. 801, 807 (Bankr. M.D.N.C. 1998). The debtor is under a duty to exercise due diligence in protecting and pursuing his rights and in mitigating his damages with regard to such violations. *Cf. Rosengren v. GMAC Mortgage Corp.*, 2001 WL 1149478 at *4 (D. Minn. August 7, 2001)("[T]he unnecessary escalation of a matter of somewhat limited consequence which could have been resolved by much less lawyering does not make economic or emotional sense. Such escalation creates damages, magnifies costs, and burdens the system. More significantly, such efforts reveal a lack of perspective.")(a copy of this opinion is attached as Exhibit "G" to the Cyganowski Declaration); *see also In re Risner*, 317 B.R. 830, 840 (Bankr. D. Idaho 2004).

42. The Trustee knew about the Form 56-F and any purported implication it may have on the automatic stay no later than October 29, 2009. The fact that he waited to inform the FDIC-R of his purported position until after the FDIC-R advised him of its intent to move this Court for stay relief is proof positive that the Trustee did not view the simple submission of a Form 56-F as an event that triggered a stay violation under § 362(a)(3).[17]

**B.** **Filing of the Form 56-F Does Not Run Afoul of § 362(a)(3)**

43. Irrespective of the Trustee's failure to act, the filing of a Form 56-F is not a stay violation. Section 362(a)(3) of the Bankruptcy Code operates as a stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). In asserting that the FDIC-R's submission of a Form 56-F to notify the IRS of its fiduciary status violated § 362(a)(3), the Trustee misinterprets the scope of the "acts" covered by this section (or of any other section of § 362). Courts that have grappled with the scope of this provision, particularly in light of the 1984 amendment that added the "exercise control" language to the statute, have generally concluded that the intent and purpose of § 362(a)(3) is to prohibit the taking or conversion of estate property or the refusal to turn over estate property within a creditor's physical possession. *See Cano v. GMAC Mortgage Corp. (In re Cano)*, 410 B.R. 506, 525 (Bankr. S.D. Tex. 2009). Under no circumstances can the filing of the Form 56-F be deemed to fall within this restriction.

44. In particular, the prohibited act of exercising control implies an *affirmative act* taken on the part of a creditor. *See In re Young*, 193 B.R. 620, 625 (Bankr. D.C. 1996); *see, e.g.,*

---

[17] Moreover, even if he did view it as such, he failed to mitigate any perceived damages arising from the filing of the Form 56-F by waiting several weeks from the time he learned of the submission of the Form 56-F to request that the FDIC-R withdraw it. Given the foregoing, the Trustee is not entitled to the relief he seeks. *Cf., e.g., McHenry v. Key Bank (In re McHenry)*, 179 B.R. 165 (B.A.P. 9th Cir. 1995) (debtors were not entitled to damages for creditor's willful violation of automatic stay in contacting debtors regarding delinquent car payments, as debtors never sought return of car after it was repossessed by creditors); *Risner*, 317 B.R. 830 (attorneys fees were not warranted as damages for willful stay violations where attorney, rather than contacting creditor in attempt to resolve stay violations, had immediately sought sanctions from the bankruptcy court).

18

*In re Omni Graphics, Inc.*, 119 B.R. 641 (Bankr. E.D. Wis. 1990)(§ 362(a)(3) violation by a creditor that sold collateral at post-petition public sale and exercised control over estate property thereby). Indeed, use of the word "exercise" "connotes the positive acts of bringing into play, making effective in action, bringing to bear, exerting." *See Young*, 193 B.R. at 625. Similarly, the term "control" necessarily requires a creditor to exercise some authority or influence over the property in derogation of the estate. *See In re Harchar*, 393 B.R. 160, 170 (Bankr. N.D. Ohio 2008). The same applies to the positive act "to obtain possession." *See, e.g., In re Formisano*, 148 B.R. 217 (Bankr. N.J. 1992)(tax lien sale was "act to obtain possession" property of the estate).

45.     Filing a Form 56-F is neither an act to "obtain possession" of property of the estate or to "exercise control" over property of the estate. Notably, the Trustee has not cited to any case in which this Court or any other court has found that the filing of a Form 56-F is a violation of the automatic stay under § 362(a)(3), and the FDIC-R knows of none. Nor is this surprising given that the submission of a Form 56-F to the IRS is a procedural device, exercised by a fiduciary upon its attainment of fiduciary status, that serves the purpose of notifying the IRS of its recent fiduciary capacity. A Form 56-F does not "grab" anything from a debtor's estate; it is not an "affirmative act" against property of the debtor's estate for the purposes of § 362(a)(3). While the Form 56-F may be required in order for a fiduciary to exercise its rights under Treas. Reg. § 301.6402-7, the Form 56-F itself does not constitute the exercise of those rights, which are the subject of the Lift Stay Motion. *See, e.g., Savers Fed. Savings and Loan Assoc. v. McCarthy Constr. Co. (In re Knightsbridge Dev. Co. Inc.)*, 884 F.2d 145 (4th Cir. 1989) (*lis pendens* did not violate § 362(a)(3), though post-petition arbitration award violated § 362(a)(1)); *Cano*, 410 B.R. at 525 (misallocating funds or sending default notices does not violate §

362(a)(3)); *In re Newcomer*, 416 B.R. 166 (Bankr. D. Md. 2009) ("validation notice" sent by loan servicer to debtor's non-debtor spouse to collect on debt associated with property held by the spouses as tenants by the entirety, unlike acceleration notice that threatened foreclosure, was not a violation).

46.     Submission of a Form 56-F may be seen as akin to a "ministerial" act that is done pursuant to a duty delineated by a rule or law. It is well-accepted that post-petition ministerial acts performed in such manner do not violate the automatic stay. *See, e.g., Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 527 (2d Cir. 1994); *Knightsbridge*, 884 F.2d at 148; *Heikkila v. Carver (In re Carver)*, 828 F.2d 463, 464 (8th Cir. 1987). If an obligation to act is defined by law and is plainly defined, the resulting act constitutes such a "ministerial" act that escapes the cognizance of § 362. *See, e.g., Derringer v. Fitch*, No. Civ. 03-149 MV/RLP, 2005 WL 5111008 (D. N.M. 2005) (post-petition filing and service of a notice of completion of briefing was a "ministerial" act that did not violate the automatic stay) (a copy of this opinion is attached hereto as Exhibit "H" to the Cyganowski Declaration).

**C.     The Case Law Cited by the Trustee Does Not Support His Position**

47.     In support of his motion, the Trustee cites inapposite case law that does not lend support to his assertion. For example, the Trustee's contention that preventing a debtor from receiving a tax refund for a period of time "exercises control" over property of a debtor's estate in violation of § 362(a)(3) holds no water, and the case law he cites for this proposition does not support his contention.[18] *See* Automatic Stay Motion, ¶ 29.

---

[18]     In the first instance, the FDIC-R's actions did not prevent the Debtor's receipt of the tax refund. Indeed, there is no proof that the IRS would have paid the Debtor, particularly in light of the Trustee having subsequently submitted Amended Returns to the IRS that seek approximately $170 million more in refunds. Further, there is a distinction between "processing" a refund and "paying" a refund, with the former referring specifically to the IRS' consideration of the taxpayer's claim for a refund and the arguments the taxpayer makes in support thereof. *Cf. Harchar*, 393 B.R. at 178 (stating that "it is not practicable to expect that the IRS will issue a refund as soon as a tax return is filed. Processing is necessary.").

48.     Even if it can be said that the filing of a Form 56-F has occasioned a delay in the

Trustee's receipt of tax refunds (which, after all, it did not, as any such delay is not a result of the

FDIC-R's compliance with law, but may be due rather to the manner in which the IRS interprets

its regulations), that assertion is misguided under the facts of this case.  Any delay in the receipt

of refunds is primarily a consequence of the Trustee's conduct: not only did the Trustee fail to

act for two months after his receipt of the IRS' October 26 letter, but, on December 31, 2009, the

day after he advised the FDIC-R of the alleged stay violation, the Trustee filed the Amended

Returns, seeking approximately $170 million more in tax refunds, itself a likely basis for any

subsequent delay.  In any event, as a matter of law, the Supreme Court, in its unanimous opinion

of *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16 (1995), recognized that a temporary delay

in payment is not tantamount to a § 362(a)(3) stay violation.  In *Strumpf*, the Supreme Court held

that a bank's action of placing an administrative freeze on a debtor's account pending resolution

of the bank's right of setoff did not violate the automatic stay under § 362(a)(3) because the

temporary refusal to pay was neither a taking of possession of debtor's property nor an exercise

of control over it.  *See Strumpf*, 516 U.S. at 21.

49.     Rather than cite to *Strumpf*, the Trustee cites *In re Harchar*, 2006 WL 3196846

(Bankr. N.D. Ohio 2006) ("*Harchar I*") (a copy of this opinion is attached to the Cyganowski

Declaration as Exhibit "I") , an inapposite case, for the proposition that a delay in receiving a tax

refund violates § 362(a)(3).  However, the Trustee fails to cite to the later decision, *In re

Harchar*, 393 B.R. 160 (Bankr. N.D. Ohio 2008) ("*Harchar II*"), which entirely undermines his

position.  *Harchar* involved a computer freeze instituted by the IRS on the debtors' account.

*Harchar I* was predominantly influenced by the procedural posture of the case, namely, on a

motion to dismiss in which the Court was required to deem all of the factual allegations of the

complaint as correct. However, in *Harchar II*, the subsequent substantive disposition of the same case, on cross-motions for summary judgment, the Bankruptcy Court held that the delay of approximately six months between filing of the tax return and payment by the IRS of a refund to the debtors due to the IRS' freeze was not so excessive as to rise to the level of "exercise of control" over estate property. *Harchar*, 393 B.R. at 178; *see also In re Price*, 134 B.R. 313, 319-20 (Bankr. N.D. Ill. 1991) (delay by the IRS in processing a debtor's claimed tax refund, even though "highly suspect," did not constitute a proscribed act to exercise control over property of the estate in violation of § 362(a)(3)).

50.    The other cases that the Trustee cites are similarly inapposite. For instance, in *In re Del Mission Limited*, 98 F.3d 1147 (9th Cir. 1996), a state taxing agency compelled a debtor to pay to it all outstanding taxes and interest it was owed by refusing to approve a sale of the debtor's liquor license, and then knowingly retained the taxes that the debtor paid to it in contravention of a bankruptcy court order that directed their turnover. Here, the FDIC-R neither has possession of estate property nor took any affirmative action to obtain control over estate property. Indeed, the benign and ministerial nature of the FDIC-R's act of filing a Form 56-F, when compared to the facts of *Del Mission*, only serves to *establish* that the filing of a Form 56-F is not a stay violation.

51.    The same is true for *In re All Trac Transportation, Inc.*, 306 B.R. 859 (Bankr. N.D. Tex. 2004) – a case that the Trustee contends stands for the proposition that the mere sending of a letter to a third party may violate the automatic stay. In that case, the court was faced with a bank that, with no business reason to do so, on two occasions sent 538 letters to customers of the debtor that instructed the customers to send to the bank all amounts owing to the debtor and threatened the recipients of the letters with liability if they failed to do so. *See All*

*Trac*, 306 B.R. at 879. Not surprisingly, the court held that the sending of the letters, in those circumstances, constituted an act to obtain control over property of the bankruptcy estate in violation of § 362(a)(3). *See id.* The bad motive ascribed to the bank by the *All Trac* Court in was further compounded by the bank's numerous and egregious violations of the automatic stay by, among other things, willfully transferring the debtor's funds into its own account, applying the balance of a demand account to the debtor's prepetition line of credit, and collecting funds that did not belong to it. There is no similar egregious course of action in the case at bar. In stark contrast, the FDIC-R has at all times remained open to engaging in open discussions and negotiations with Trustee and his counsel with respect to tax and other issues, and has sought relief from this Court prior to taking any acts that could potentially be interpreted as implicating the automatic stay under § 362.

## II.    THE TRUSTEE'S MOTION IS PROCEDURALLY IMPERMISSIBLE

52.    It is axiomatic that to sustain an action for a violation of § 362(a)(3), the Debtor must demonstrate that the property interest involved is estate property. *See Harchar*, 393 B.R. at 167 (stating that an action under § 362(a)(3) requires three elements: (1) a property interest is involved; (2) the property interest is estate property; and (3) there occurred either an act to obtain possession of the estate property or there existed an act to exercise control over estate property). Despite the fact that the issue of ownership of the tax refunds has not yet been appropriately placed before this Court for adjudication, the Trustee seeks a declaration, in the guise of a "finding of fact" in the proposed Order attached to the Automatic Stay Motion, that any tax refund that is owing from the 2008 Consolidated Tax Return is property of the estate. Not only is this contrary to the facts and economic realities at hand, as well as contrary to law and the agency relationship in effect between DFC and Downey S&L, but even more fundamentally, his

23

effort to proceed by motion to request such a declaration flies in the face of the Bankruptcy Rules.

## A.    <u>The Trustee Cannot Proceed by Motion</u>

53.    Under Bankruptcy Rule 7001, a party must proceed by way of an adversary proceeding if it seeks, *inter alia*, "(2) to determine the validity, priority, or extent of a lien or other interest in property … [or] (9) to obtain a declaratory judgment relating to any of the foregoing…." *See* Fed. R. Bankr. P. 7001(2) & (9); *see also In re Astor Group, Inc.*, No. 07-22176 JPK, 2007 WL 4893488 *1 (Bankr. N.D. Ind. Nov. 9, 2007)(a copy of this opinion is attached to the Cyganowski Declaration as Exhibit "J").

54.    It is black letter law that a determination of interests in property requires an adversary proceeding. *In re Johnson*, 346 B.R. 190, 195 (9th Cir. 2006); *see also In re Hearthside Baking Co., Inc.*, 397 B.R. 899, 902 (Bankr. N.D. Ill. 2008); *In re Altman*, 254 B.R. 509, 516 (D. Conn. 2000). As a result, a bankruptcy court is not authorized to enter an order that determines interests in property in the context of a motion in a contested matter. *See In re Whitehall Jewelers Holdings, Inc.*, 2008 WL 2951974 *6 (Bankr. D. Del. 2008) (a copy of this opinion is attached to the Cyganowski Declaration as Exhibit "K"). Nor does Section 105 of the Bankruptcy Code provide a bankruptcy court with such authority, as "§ 105 is not a roving commission to do equity or to do anything inconsistent with the Bankruptcy Code." *See Johnson*, 346 B.R. at 195.

55.    The Trustee's transparent attempt to skirt the requirements of the Bankruptcy Rules by seeking his requested determination by motion rather than adversary proceeding divests the FDIC-R of the rights and benefits that the Federal Rules of Bankruptcy and Civil Procedure

would provide, and is reason alone to deny the Automatic Stay Motion.[19] *See In re Brown*, No. 03-13118-JW, 2009 Bankr. LEXIS 1489, *8 n.6 (Bankr. D. S.C. 2009) (noting that debtor's failure to seek the requested relief through an adversary proceeding, as required by Bankruptcy Rule 7001(2) and (9), offers an additional ground to deny debtor's motion to declare judgment entered against him void as violative of the automatic stay) (a copy of this opinion is attached as Exhibit "L" to the Cyganowski Declaration).

56. Moreover, the Trustee's attempt to obtain a "finding" that the refunds at issue (in an amount of at least $315 million) are estate property impermissibly seeks a declaratory judgment. However the Trustee may disguise his intent, in seeking such "finding," the Trustee is seeking a declaration of his alleged property rights in and to the refunds at issue. A declaratory judgment "gives a means by which rights and obligations may be adjudicated in cases involving an actual controversy that has not reached the stage at which either party may seek a coercive remedy and in cases in which a party who could sue for coercive remedy has not done so." 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2751, at 456 (1998). The finding sought by the Trustee seeks nothing less than such a declaration, which requires a determination not only of the parties' respective rights to the refund and the facts on which such rights are based, but an interpretation of the Tax Sharing Agreement (to the extent it is in effect) and various statutory authorities, including those cited to in this Objection. Simply stated, under Bankruptcy Rule 7001, if the Trustee seeks such a declaration, he must proceed by adversary proceeding. *See, e.g., Crump v. IRS (In re Crump)*, No. 96-1157, 1996 U.S. App. LEXIS 33449 *2 (10th Cir. December 23, 1996)(a copy of this opinion is attached to the Cyganowski Declaration as Exhibit "M").

---

[19]    Among the other rights accorded to the FDIC-R in an adversary proceeding, if one were to be brought by the Trustee, is the right to seek to change venue or seek other relief pursuant to Title 12 of the United States Code.

57. Moreover, the Trustee's failure to act by adversary proceeding to obtain this declaration of rights prejudices the FDIC-R. Plainly, the issues before the Court on this point are complex and substantial. A potential $330 million in tax refunds is in dispute. The record before the Court on the Automatic Stay Motion is woefully incomplete for such a determination to be made. *See, e.g., In re Waste Alternatives, Inc.*, 171 B.R. 147, 148 (Bankr. M.D. Fla. 1994)(noting complexity of the issues raised). By contrast, the Federal Rules of Civil Procedure provide the proper procedural safeguards so that this issue can be litigated, with a complete record – after a plenary trial if need be – and following appropriate discovery and briefing. In seeking to "slip one by" through the "proposed finding," the Trustee undermines the FDIC-R's due process rights. *See SLW Capital, LLC v. Mansaray-Ruffin (In re Mansaray-Ruffin)*, 530 F.3d 230, 242 (3d Cir. 2008) ("[W]here the [Bankruptcy] Rules require an adversary proceeding – which entails a fundamentally different, and heightened, level of procedural protections – to resolve a particular issue, a creditor has the due process right not to have that issue resolved without one").

**B.      The Tax Refunds Do Not Constitute "Property" of the Debtor's Estate**

58. Even assuming this Court were to even entertain the Trustee's request for a declaration by his Automatic Stay Motion, the Trustee has failed to demonstrate that the refunds are "property" of the estate subject to the protection of the automatic stay.[20] As reflected below, the issues that need to be resolved, many of which will require individual determination, are complex and require adjudication through a plenary action, not a motion. These issues, which are not ripe for resolution by this Court on the Automatic Stay Motion, without the corresponding record that only a plenary action could provide, include, among others: (a)

---

[20]      Among other fatal deficiencies, the Trustee places *no* evidentiary facts before the Court in support of his requested finding of fact from the Court.

whether DFC merely acts as agent for Downey S&L for the purpose of filing a consolidated tax return; (b) whether any refund that is remitted in connection with the return is held in trust by the Trustee and is the property of the FDIC-R; and (c) whether the Trustee's assertion of the worthless stock deduction bears any relevance or affects the determination that the refund constitutes property of the Receivership.

> **1.    DFC, as Agent/Trustee of Downey S&L, Has No Equitable Interest in the Tax Refund, and Therefore the Tax Refund is Not "Property" of the Estate**

59.    Section 541 of the Bankruptcy Code delineates the categories of interests that may appropriately constitute "property" of a bankruptcy estate. *See* 11 U.S.C. § 541(a). Included in a bankruptcy estate are "all legal or equitable interests of the debtor in property as of the commencement of the case." *See* 11 U.S.C. § 541(a)(1).

60.    However, § 541(d) qualifies this by providing, in relevant part:

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest … becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

*See* 11 U.S.C. § 362(d). As a result, if a debtor does not own an equitable interest in property as of the petition date because he merely holds it as a trustee in trust for another, that interest is not "property" of the estate. *See Beiger v. IRS*, 496 U.S. 53, 59 (1990); *see also In re Columbia Gas Systems Inc.*, 997 F.2d 1039, 1059 (3d Cir. 1993); *Matter of Maple Mortgage Inc.*, 81 F.3d 592 (5th Cir. 1996); *In re Cannon*, 277 F.3d 838 (6th Cir. 2002); *In re Hull*, No. 02-10216-MFW, 2003 WL 22000599, at *2 (Bankr. D. Del. 2003) (a copy of this opinion is attached as Exhibit "N" to the Cyganowski Declaration).

61.     The exclusion from estate property of a trust res has been held to apply with the same force to constructive trusts as to express trusts. *See Columbia Gas Systems*, 997 F.2d at 1059 ("Congress clearly intended the exclusion [of trust funds from the debtor's estate] created by section 541(d) to include not only funds held in express trust, but also funds held in constructive trust."); *City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95 (3d Cir. 1994)(quoting *Columbia Gas*); *see also* 5 Collier on Bankruptcy ¶541.11[7] (15th ed. rev. 2009).

62.     At best, DFC only receives the tax refunds in issue in its capacity as an agent for the Consolidated Group. DFC thus acts as a trustee for a specific trust, and is under a duty to return the tax refund to the estate of the principal, in this case Downey S&L. *See Bob Richards*, 473 F.2d at 265; *see also Jump v. Manchester Life & Casualty Mgmt. Corp.*, 438 F.Supp. 185, 188 (E.D. Mo. 1977), *aff'd* 579 F.2d 449 (8th Cir. 1978). As such, "[t]he trust res is not owing to the [subsidiary]'s estate but rather is *owned* by it." *See Bob Richards*, 473 F.2d at 265 (emphasis added). This distinction is paramount: the FDIC-R is not arguing that it has merely a claim as the largest creditor of this estate. Rather, the FDIC-R is arguing that the tax refunds are its property and that it owns them.

63.     Ignoring both his role as agent for Downey S&L and the fact that any refund derives from Downey S&L's overpayments, not DFC's, the Trustee asserts that he filed a claim for a refund "to recover income taxes *previously paid by the Debtor* as a present tax refund." *See* Automatic Stay Motion, ¶14 (emphasis added); *see also id.* at ¶28 ("The Amended Returns carry back the Debtor's losses to obtain taxes previously paid.").

64.     Upon information and belief, Downey S&L funded substantially all of the tax payments made by the Consolidated Group for those years by paying those amounts (and, generally speaking, more than those amounts) to DFC, which in turn remitted payments to the

IRS. *See* Declaration of Stephen H. Wasserman, sworn to January 4, 2010 (the "Wasserman Declaration"). In asserting that DFC paid the taxes, the Trustee equates writing a check to the IRS as an agent of the Consolidated Group with being the actual *source* of the funds from which the payment was made.[21]

65. As such, the Trustee's reliance on *In re Flying J. Inc.*, No. 08-133484 MFW (Bankr. D. Del. December 28, 2009), to support his argument that the refunds in issue are "property" of the DFC estate is misplaced. There, as recognized by Judge Walrath, the court was faced with a narrow legal issue – whether a tax refund was a pre-petition debt for purposes of 11 U.S.C. § 553, or was instead a post-petition claim ineligible for setoff. *See In re Flying J.*, Automatic Stay Motion, Ex. E, at 1. Finding that *Segal v. Rochelle*, 382 U.S. 375, 380 (1996), which held that a debtor's claim to a tax refund was "sufficiently rooted in the prebankruptcy past" so as to constitute property of the estate, was dispositive on the issue, Judge Walrath concluded that the tax refund was indeed a pre-petition debt that could be setoff against the IRS' pre-petition tax claims. *See id.* at 7 & 9.

66. That generic, black-letter proposition – that a debtor's refund that arises pre-petition but is obtained post-petition is property of the estate – does not change the fact that DFC *does not have an equitable interest in the refund.* Arguing, as the Trustee does, that *Segal* and *In re Flying J.* mandate the conclusion that any tax refunds resulting from the carryback of NOLs by the Debtor are property of the DFC estate completely overlooks that DFC, as a mere agent for Downey S&L, holds any such refunds in trust for Downey S&L and acquired no equitable

---

[21] Nor could DFC even make the payments on its own accord, as at all relevant times Downey S&L funded DFC, a mere shell company with no operating income of its own. *See* Downey Financial Corp., Annual Report (Form 10-K), at 1 (Feb. 29, 2008)(stating that DFC was "funded by the Bank and presently operates as the Bank's holding company"). DFC's role in the "paying" of taxes to the IRS was limited to serving as a mere intermediary that would accept monies funneled up to it from members of the Consolidated Group – which, pursuant to § 2.1(d) of the Tax Sharing Agreement, would calculate their separate tax liability for each taxable period as if they had filed a separate tax return – and then transmit the monies to the IRS as an agent for the Consolidated Group.

interest to these monies.[22] Judge Walrath herself noted this distinction in another case cited by the Trustee, *In re Hull*, in which she concluded that property in which the debtor did not have an equitable interest did not implicate the automatic stay. *See Hull*, Cyganowski Declaration, Ex. N, at *3.

## 2. Permitting DFC to Appropriate the Entire Tax Refund Would Be Contrary to the Case Law and Would Unjustly Enrich the Estate

67. The Trustee asserts that the refund is owned by the DFC estate because it arises from the deemed worthlessness of its stock in Downey S&L. That is in error. Any purported NOLs that DFC incurred are purely derivative of Downey S&L's losses. *See In re Prudential Lines Inc.*, 114 B.R. 27, 31 (Bankr. S.D.N.Y.)("Here, [the parent company]'s right to take a worthless stock deduction is completely derivative of the losses incurred by [the subsidiary]. Without those losses [the subsidiary] would not be insolvent and its stock would not be worthless.").

68. It is well-established that a refund that is attributable to the earnings history of one member of an affiliated group is owned by that member. *See Bob Richards*, 473 F.2d at 265; *Capital Bancshares, Inc. v. United States*, 957 F.2d 203 (5th Cir. 1992); *Jump*, 438 F.Supp. 185; *In re TMCI Electronics*, 279 B.R. 552 (Bankr. N.D. Cal. 1999); *United States v. REVCO D.S., Inc. (In re REVCO D.S., Inc.)*, 111 B.R. 631 (Bankr. N.D. Ohio 1990); *In re Fla. Park Banks, Inc.*, 110 B.R. 986 (Bankr. M.D. Fla. 1989); *United States v. Bass Fin. Corp.*, No. 83 C 706 (N.D. Ill. 1984) (a copy is attached to the Cyganowski Declaration as Exhibit "O"). In fact, a member is entitled to the *entire* tax refund if it could have generated the same tax refund with or

---

[22] For the same reason, the cases that the Trustee cites for the general proposition that tax refunds and NOLs are property of the estate within the scope of 11 U.S.C. § 541 are similarly irrelevant. *See* Automatic Stay Motion, ¶26. Merely because tax refunds may constitute "property" of the estate *where the debtor has an equitable interest in them* does not convert them into estate property where this predicate equitable interest does not exist.

without the debtor parent company's losses. *See Fla. Park Banks*, 110 B.R. at 989 (FDIC was entitled to the entire refund, where the subsidiary bank generated 87.61% of the loss).

69.     Here, any claim for refund is attributable to Downey S&L's earnings history[23] and its funding of tax payments, not DFC's, thus making Downey S&L the entity that is entitled to the refund. *See Bob Richards*, 473 F.2d at 265; *Prudential*, 114 B.R. at 31. As such, DFC has a duty as a matter of law to remit to Downey S&L that portion of the refund to which it is entitled. Permitting DFC to obtain all of the tax refund, in which it does not have an equitable interest, unjustly enriches it. *See Bob Richards*, 473 F.2d at 265.

### 3.     The Tax Sharing Agreement Does Not Alter DFC's Status as Agent/Trustee of Downey S&L, Nor Can It

70.     The existence of a tax sharing agreement does not alter the common law rule. *See BSD Bancorp, Inc. v. FDIC*, Case No. 93-12207-A11, at 10 (S.D. Cal. 1995) (a copy of the opinion is attached as Exhibit "P" to the Cyganowski Declaration); *cf. In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 896 F.2d 54 (3d Cir. 1990) (using the reasoning of *Bob Richards* to find that a corporation was merely a trustee holding funds for another corporation where the securities repurchase agreements between the companies stated that certain bond interest payments would be property of the latter). Rather, the common law rule first enunciated in *Bob Richards* can only be altered if the terms of the members' agreement override the rule, and even then the court must examine the economic reality of the transaction rather than the words used in the agreement. *See BSD Bancorp*, Cyganowski Declaration, Ex. P, at 10-11.

71.     The Tax Sharing Agreement in this case does not change the principal-agent relationship between Downey S&L and DFC. The Tax Sharing Agreement consistently provides

---

[23]     Indeed, in apparent recognition of this fact, the Trustee hedges his claim for a refund in the Trustee's Amended Returns by asserting an alternative "protective" ground for recovery that instead seeks to carryback *Downey S&L*'s NOLs. *See* Cyagnowski Declaration, Ex. C.

that DFC "shall make payment" to Downey S&L on account of any refund it receives from the IRS as agent of the Consolidated Group. *See* Cyganowski Declaration, Ex. B, § 2.1(h); *see also id.* § 2.1(e) (providing that DFC "shall pay" to each member of the Consolidated Group its share of the tax benefit resulting from excess losses or tax credits of one or more of the members). Nor could the Tax Sharing Agreement have altered the principal-agent relationship – and the ownership by Downey S&L of its refund – without contravening federal banking regulatory requirements.[24] *See* Cyganowski Declaration, Ex. D.

72.     As demonstrated by the foregoing, the determination that the Trustee asks this Court to make by way of motion involves consideration of complex issues of fact and law. Such issues cannot be decided by motion, with the attendant lack of appropriate procedures and a complete record upon which to base a decision; the Trustee is required by Bankruptcy Rule 7001 to proceed by adversary proceeding if he seeks that determination.

## CONCLUSION

73.     The Automatic Stay Motion is without merit and is litigation stratagem intended to divert attention from the FDIC-R's good faith efforts to avoid the confrontation the Trustee appears intent on pursuing. As reflected by his months of inaction after receipt of the October 26 letter from the IRS, the Trustee well knows that the filing of the Form 56-F is not a step to obtain possession of or exercise control over estate property. Indeed, the refunds in issue are not even established as yet to be estate property, nor is the Automatic Stay Motion the proper forum in which to make that complex determination. The FDIC-R's conduct has been in all respects proper. There is no stay violation. The Automatic Stay Motion should be denied in its entirety.

---

[24]     Further, the Tax Sharing Agreement states that it is to be governed by the laws of the state of California. Under California law, a parent corporation filing a consolidated tax return may not appropriate to itself the entire tax benefit where the subsidiary contributed to the tax savings. *See Smith v. Tele-Comm., Inc.*, 134 Cal. App. 3d 338, 343-46 (Cal. Ct. App. 1982).

Dated: January 14, 2010

BAYARD, P.A.

*Daniel O'Brien*

Neil B. Glassman (No. 2087)
Charlene D. Davis (No. 2336)
Daniel A. O'Brien (No. 4897)
222 Delaware Ave., Suite 900
Wilmington, Delaware 19899
Tel.: (302) 655-5000
Fax: (302) 658-6395

-and-

OTTERBOURG, STEINDLER,
HOUSTON & ROSEN, P.C.
Melanie L. Cyganowski, Esquire
Peter Feldman, Esquire
(Admitted *Pro Hac Vice*)
230 Park Avenue
New York, New York 10169
Tel.: (212) 661-9100
Fax: (212) 682-6104

*Counsel for the Federal Deposit Insurance
Corporation, in its Capacity as Receiver*