IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| In re: | : | Chapter 7 |
|---|---|---|
| DOWNEY FINANCIAL CORP., | : | Case No. 08-13041 (CSS) |
| | : | Hearing Date: January 21, 2009 at 9:30 a.m. |
| Debtor. | : | |
| | : | Ref. Docket Nos. 286 and 290 |

## OBJECTION OF THE AD HOC COMMITTEE OF BONDHOLDERS TO THE MOTION OF THE FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF DOWNEY SAVINGS & LOAN ASSOCIATION, F.A., SEEKING AN ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY; AND STATEMENT IN SUPPORT OF THE CHAPTER 7 TRUSTEE'S MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 362 FINDING THE FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR DOWNEY SAVINGS & LOAN ASSOCIATION, F.A., VIOLATED THE AUTOMATIC STAY

The Ad Hoc Committee of Bondholders (the "Bondholders")[1] hereby files this objection (the "Objection") to the *Motion of the Federal Deposit Insurance Corporation, as Receiver of Downey Savings & Loan Association, F.A., Seeking an Order Granting Relief from the Automatic Stay* [Docket No. 286] (the "FDIC's Motion"); and statement in support of the *Chapter 7 Trustee's Motion for Entry of an Order Pursuant to 11 U.S.C. §§ 105(a) and 362 Finding the Federal Deposit Insurance Corporation as Receiver for Downey Savings & Loan Association, F.A., Violated the Automatic Stay* [Docket No. 290] (the "Trustee's Motion"). The Bondholders are holders of approximately 50% of the 6 1/2% Senior Notes due July 1, 2014 issued by Downey Financial Corp. (the "Debtor"). In support of this Objection, the Bondholders respectfully represent as follows:

---

[1] The Ad Hoc Committee of Bondholders is composed of the following Bondholders: Normandy Hill Capital, L.P., Scoggin Capital Management, L.P., Ore Hill Partners LLC and Banc of America Securities, LLC.

## PRELIMINARY STATEMENT

1.  The Bondholders, as significant stakeholders in the Debtor's chapter 7 bankruptcy estate, support, repeat and join with the Chapter 7 Trustee (the "Trustee") in requesting that this Court grant the relief requested in the Trustee's Motion. The Bondholders also support the Trustee in his opposition to the FDIC's Motion as well as in all of his efforts that maximize the value of the Debtor's estate for the benefit of its creditors.

2.  The Federal Deposit Insurance Corporation (the "FDIC") in its motion strongly implies that it will seek a determination from *another court* as to the rightful ownership of any tax refunds (the "Tax Refunds") received in the future by the Trustee or the FDIC, in its capacity as receiver of Downey Savings & Loan Association, F.A. ("Downey S&L"). While the Bondholders fully support the Trustee in its motion and in opposition to the FDIC's motion, they want to emphasize that, irrespective of the ruling of this Court on the two motions, this Court should retain exclusive jurisdiction to determine the ownership of the Tax Refunds. Congress has vested bankruptcy courts with exclusive jurisdiction over "all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." 28 U.S.C. § 1334(e)(1); 28 U.S.C. § 157(a). And a bankruptcy court's jurisdiction is exclusive for determining whether certain property constitutes property of a debtor's estate. 11 U.S.C. § 541(a); *Foster-El v. Beretta U.S.A. Corp.*, 163 F. Supp. 2d 67, 71 (D.D.C. 2001).

3.  For the avoidance of doubt, the Bondholders request that any order that may be entered by this Court with respect to the FDIC's Motion, if necessary, make clear that this Court has exclusive jurisdiction to determine the ownership of the Tax Refunds.

## STATEMENT IN SUPPORT OF THE TRUSTEE'S MOTION

4. The Bondholders hereby support, repeat and join with the Trustee in requesting that the Court grant the relief requested in the Trustee's Motion. Furthermore, the Bondholders agree with and reiterate the points and arguments raised by the Trustee in the Trustee's Motion.

5. Through the FDIC Motion, the FDIC is attempting to exercise control over the Tax Refunds, the largest asset of the Debtor's estate, without going through ordinary bankruptcy processes. Such a maneuver runs contrary to the purpose of the automatic stay and is antithetical to the orderly nature of a chapter 7 liquidation. The FDIC has the opportunity to assert its claim to the Tax Refunds through the proof of claim process,[2] which also allows for the participation of the Debtor and other interested parties. To allow the FDIC to exercise control over the Tax Refunds at this stage of the Debtor's case, without a ruling from the Bankruptcy Court as to who owns the Tax Refunds, would deprive the Debtor and other parties in interest of their right to argue in this Court that the Tax Refunds are the rightful property of the Debtor's estate. Therefore, the Bankruptcy Court should rule that the FDIC violated the automatic stay and strike the Form 56-F as an act done in violation of the automatic stay and thus, void ab initio.

## OBJECTION TO THE FDIC'S MOTION

6. The Bondholders support, repeat and join with the Trustee in objecting to the FDIC's Motion. The Bondholders further object to the FDIC's Motion because it is clear that the FDIC plans to try to have the substantive dispute regarding the ownership of the Tax Refunds decided by another court, and that is improper and runs contrary to well-settled precedent.

---

[2] The FDIC filed a proof of claim in the Debtor's chapter 7 case on October 24, 2009 in which the FDIC claims rightful ownership of the Tax Refunds.

3

*Background*

7.     Along with the FDIC's Motion, the FDIC filed a proposed form of order (the "Proposed Order"), which states, in part:

> In the event that the Trustee or the FDIC-R receive any tax refunds, such monies shall be placed into the Escrow Account (as that term is defined in the Motion) created pursuant to the Order of this Court entered on January 23, 2009 (Docket No. 60),[3] with all rights of the FDIC-R and the Trustee fully preserved.

Proposed Order at 3, ¶ 4. The term "Escrow Account" refers to the account established pursuant to the stipulation entered into by the Trustee and the FDIC (the "Stipulation") to hold the proceeds of a tax refund check in the amount of $17,489,369.18, related to the 2007 taxable year and issued by the Internal Revenue Service on December 17, 2008. The Stipulation was approved in an order issued by this Court on January 28, 2009 [Docket No. 67]. In the Stipulation, the FDIC and the Trustee agreed that no monies would be distributed out of the Escrow Account unless approved by "a final order of *this Court* which is no longer subject to appeal or being appealed . . . approving the distribution and release of such monies." Stipulation, p. 3 (emphasis added). The Stipulation was filed in the Bankruptcy Court, and the introductory paragraph of the Stipulation defines "Court" as being the court in which the Debtor filed its chapter 7 petition. On the face of the Proposed Order, therefore, the FDIC seeks to have the Tax Refunds, whether received by the Trustee or the FDIC, deposited into the Escrow Account subject to a determination by this Court as to the ownership of such Tax Refunds.

8.     The FDIC's Motion, however, paints a different picture. The FDIC's Motion strongly suggests that the FDIC will seek to have the ownership of the Tax Refund determined

---

[3]   Docket Number 60 is an order entered by the Court on January 23, 2009 shortening the time for the hearing on the Trustee's motion to approve the Stipulation. As no escrow account was established pursuant to this order, the FDIC is presumably referencing the Court's Order Approving Stipulation Between The Trustee And The Federal Deposit Insurance Corporation Re: Establishment Of Escrow Account [Docket No. 67] entered on January 28, 2009.

4

by a court outside of the District of Delaware. Specifically, the FDIC makes the following statements in the FDIC's Motion:

> As the FDIC-R has made plain to the Trustee . . . the FDIC-R is not seeking to retain any refund it may recover from the IRS by reason of exercise of its rights under § 6402 and Treas. Reg. § 301.6402-7. Rather, the FDIC-R agrees to remit any such refund into the escrow account previously created pursuant to order of this Court, and further agrees that the funds shall remain in escrow *subject to order of a court of applicable jurisdiction.*

FDIC's Motion, p. 5 (emphasis added).

> By this Motion, the FDIC-R is not asking the Bankruptcy Court to determine the "ownership" of the tax refunds or whether the tax refunds are property of the DFC Chapter 7 bankruptcy estate or the Receivership. Such issues will be resolved another day, either by adversary proceeding before this Bankruptcy Court *or litigation before another tribunal with requisite jurisdiction.*

FDIC's Motion, p. 17 (emphasis added). These statements appear to contradict the language of the Proposed Order and the Stipulation that the FDIC already agreed to, which provide that this Court's approval is required for the distribution and release of funds from the Escrow Account.

***This Court Has Exclusive Jurisdiction to Determine the Ownership of the Tax Refund***

9. The exclusive jurisdiction of this Court with respect to property of the Debtor is set forth in 28 U.S.C. § 1334(e)(1), which provides, "[t]he district court in which a case under title 11 is commenced or is pending shall have *exclusive jurisdiction*—(1) of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate . . . ." (emphasis added). "[A] court that assumes jurisdiction over property first may exercise that jurisdiction to the exclusion of other courts." *Foster-El*, 163 F. Supp. 2d at 71.

10. The District Court for the District of Columbia recently addressed this issue in a case with nearly identical facts. *See Washington Mutual, Inc. v. FDIC*, Civ. Act. No. 09-533 (RMC) (D.D.C. March 20, 2009). In *Washington Mutual*, the FDIC, acting as a receiver for

5

Washington Mutual Bank ("WMB"), sought to have the District Court for the District of Columbia determine whether certain property—including tax refunds—was property of WMB or WMB's parent, Washington Mutual, Inc. ("WMI"), a debtor whose chapter 11 case is pending in the District of Delaware. The District Court for the District of Columbia held that, "[t]o the extent any of WMI's claims here relate to property that may be considered part of the bankruptcy estate, this Court is barred from making any determinations as to the ownership of that property." *Washington Mutual Inc. v. FDIC*, Civ. Act. No. 09-533 (RMC), at 5 (D.D.C. Jan. 7, 2010).[4]

11. Similarly, because the Trustee asserts that the Tax Refunds constitute property of the Debtor's bankruptcy estate, all other courts are barred from making a determination as to whether the Tax Refunds are indeed rightfully owned by the Debtor or the FDIC. *See, e.g., Parker N. Am. Corp. v. RTC (In re Parker)*, 24 F.3d 1145, 1154 (9th Cir. 1994) (upholding jurisdiction of bankruptcy court to adjudicate preference action against entities in receivership); *All Seasons Kitchen, Inc. v. FDIC*, 145 B.R. 391, 396-97 (D. Vt. 1992) (ruling that a bankruptcy court has jurisdiction to determine its own jurisdiction and may therefore decide whether an asset belongs to an FDIC receivership or to a debtor in order to determine whether 12 U.S.C. § 1821 divests the bankruptcy court of jurisdiction); *Washington Bancorp. v. FDIC*, No. 95-1340, 1996 WL 148533, *7 (D.D.C. March 19, 1996) ("There is 'not a scintilla of a suggestion that Congress intended that debtors who owe money to FDIC should have to go through the FIRREA claims process, nor of any intent to deprive the Bankruptcy Court of jurisdiction to determine issues arising from FDIC's claims against those debtors'" (*quoting All Seasons*, 145 B.R. at 397)); *Rare, LLC v. Marciano (In re Rare, LLC)*, 298 B.R. 762, 764 (Bankr. D. Colo. 2003) ("Defendants have taken it upon themselves to make the determination of what is and is not

---

[4] A copy of this decision is attached hereto as Exhibit A.

property of the bankruptcy estate. They did, and continue to do so, at their peril, for it lies within the exclusive province of the bankruptcy courts to determine what interests are part of the estate.").

12.  Moreover, given the applicability of the automatic stay as described in detail in the Trustee's Motion, no other court may hear proceedings concerning the ownership of the Tax Refunds without leave of this Court. *See Washington Mutual*, Civ. Act. No. 09-533 (RMC), at 6 ("[T]he Bankruptcy Code's automatic stay functions as a quasi-jurisdictional statute that precludes proceedings, without leave of the bankruptcy court, in nonbankruptcy courts that otherwise have concurrent jurisdiction." (*quoting Fidelity Nat'l Title Ins. Co. v. Franklin (In re Franklin)*, 179 B.R. 913, 919 (Bankr. E.D. Cal. 1995))). A clear statement by this Court that affirms that it has exclusive jurisdiction to determine the ownership of the Tax Refunds would likely prevent the Trustee from incurring the significant cost and burden of litigating these issues on multiple fronts and prevent further delay.

## CONCLUSION

13. Wherefore, on the basis of the foregoing, the Bondholders respectfully request that the Court (i) grant the Trustee's Motion, (ii) deny the FDIC's motion, (iii) qualify any order that may be entered with respect to the FDIC's Motion, if necessary, to provide that this Court retains exclusive jurisdiction to determine the ownership of the Tax Refunds, and (iv) grant such other and further relief as the Court deems just and appropriate.

Date: Wilmington, Delaware
January 14, 2010

BLANK ROME LLP

*Michael DeBaecke for*

Bonnie Glantz Fatell
1201 Market Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464

-and-

FRIED, FRANK, HARRIS, SHRIVER
& JACOBSON LLP
Michael de Leeuw
One New York Plaza
New York, New York 10004
Telephone: (212) 859-8000
Facsimile: (212) 859-4000

Counsel to the Ad Hoc Committee of Bondholders