**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| DOWNEY FINANCIAL CORP., | : | Case No. 08-13041-(CSS) |
| | : | |
| | : | Related to D.I. 299 |
| Debtor. | : | |

**CHAPTER 7 TRUSTEE'S REPLY TO THE OBJECTION OF THE
RECEIVER OF DOWNEY SAVINGS & LOAN ASSOCIATION, F.A., TO
THE TRUSTEE'S MOTION SEEKING ENFORCEMENT OF THE AUTOMATIC STAY**

Montague S. Claybrook, the chapter 7 trustee (the "Trustee") for the estate of Downey Financial Corp. (the "Debtor"), hereby replies to the objection of the Federal Deposit Insurance Corporation as receiver (the "Receiver") for Downey Savings & Loan, F.A., ("Downey Savings") to the Trustee's motion seeking enforcement of the automatic stay. By this reply, the Trustee is not repeating those arguments set forth in the motion. Nor is the Trustee responding to each argument and position set forth by the Receiver. Instead, the Trustee focuses on the principal misstatements and misinterpretations of the Receiver that are essential to resolution of the motion. The Trustee reserves all rights.

**I.       The Receiver's Filing Of The 56-F Form Is Barred By The Automatic Stay Because It, At A Minimum, Is Designed To Perfect The Receiver's Assertion Of Rights With Regard To The Tax Return**

The Receiver asserts a far too narrow view of the automatic stay. The Receiver claims that the filing of the Form 56-F is merely a ministerial act and, therefore, does not violate the stay. In essence, the Receiver argues that the 56-F simply perfects its ability to assert its alleged tax rights at a later point in time. However, perfecting its alleged tax rights with a filing of the Form 56-F is an "act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

Indeed, in other situations, the performance of an asserted ministerial act by a government entity that would be to the benefit of a holder of an unperfected security interest is stayed. In re Alberto, 66 B.R. 132, 143 (Bankr. D.N.J. 1985). In In re Alberto, Maryland National Bank (the "Bank") had an unperfected mortgage in the debtor's yacht. Id. The debtor filed a petition under Chapter 11 of the Bankruptcy Code on August 28, 1984. Id. at 133. In order for the Bank to have a perfected security interest, the Bank sent the necessary documentation to the United States Coast Guard on April 13, 1984. Id. However, the mortgage was not recorded, indexed and endorsed on the vessel's title until October 30, 1984, two months after the Chapter 11 petition. In re Alberto, 66 B.R. at 135. The Bank asserted that the automatic stay should not stay the Coast Guard's ministerial acts, specifically the recording, indexing and endorsing of the Bank's mortgage. Id. at 143. The Court found that §§ 362(a)(4) and (a)(5) prevented the Coast Guard from recording the Bank's mortgage because that would be for the benefit of the Bank – i.e. to perfect its security interest. Id. at 143-44. Therefore, post-petition acts to perfect an interest in a debtor's property violates the stay.

The Receiver asserts that the filing of the Form 56-F merely gives notice to the IRS of the Receiver's appointment *vis a vis* Downey Savings. However, the provision of such notice violates the stay. Courts consistently find that post-petition filings of UCC financing statements, which give notice that a party has a security interest in property, is subject to the automatic stay. See, e.g., In re Marta Group, Inc., 33 B.R. 634, 639 (Bankr. E.D. Pa. 1983). In In re Marta, the debtor ordered goods on consignment from a creditor. Id. at 637. Pre-petition, the creditor filed financing statements, but erroneously used the debtor's former name, and thus the creditor's rights were unperfected. Id. The creditor filed amended UCC filings post-petition to change the name listed of the debtor in order to properly perfect the creditors security interest. Id. In

2

addressing the amendments to the financing statements, the Court found the attempts to amend the financing statements were void and in violation of the automatic stay because the filings occurred post-petition. Id. at 639. Therefore, the creditor was barred from further action regarding the goods without leave of the Court. In re Marta, 33 B.R. at 641.

The same is true with regard to enforcing a mortgage post-petition. The recording of a deed after the stay is a violation of the stay because it is an act to enforce a lien or perfect a security interest against property of the estate. In re Penfil, 40 B.R. 474, 476 (Bankr. E.D. Mich. 1984). In In re Penfil, the bank conducted a foreclosure sale and was the winning bidder. Id. at 476. On the same day, one-hour before the foreclosure sale ended, the debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Court found that the mere recording of the sheriff's deed after the foreclosure sale was "in and of itself, a violation of the automatic stay." Id. see also In re Weber, 283 B.R. 630, 635-36 (Bankr. D. Mass. 2002) (finding that offending act occurring during the pendency of the automatic stay that was a "necessary predicate" for a later issued default judgment violated the stay).

Here, the act of filing the 56-F,[1] according to the Receiver, served the purpose of providing notice to the IRS of the Receiver's potential claim to any tax refund associated with a tax return filed by the Trustee. Further, the Receiver admits that its ability to file a competing tax return is contingent on its filing of the 56-F. The Receiver also asserts that merely because of the pendency of the 56-F form, the IRS could pay the Debtor's refund to the Receiver – a quintessential act to obtain property of the estate. See Receiver Objection at 10, ¶22. Thus, just

---

[1] Curiously, the Receiver submits well over a hundred pages of materials in support of its objection to the Trustee's motion, admits that it has filed "one or more" Form 56-Fs, yet has failed to disclose the contents of the actual forms filed by the Receiver. Thus, the Receiver asserts that the form does not violate the stay, yet does not provide the form for review by the Court and parties. Notably, the very regulations relied upon by the Receiver for the proposition that it is entitled to file the 56-F form, as well as a "competing" tax return, specifically require the Receiver to send a copy of the filed form to the parent corporation. The Receiver has failed to do so. Considering

3

like the recording of a mortgage or a UCC financing statement, the 56-F form "perfects" the Receiver's ability to stake its claim to the tax refund. The act of filing the 56-F violates the stay. Finally, the Receiver may not ignore the actual facts of this case. Here, the IRS would not process[2] the Trustee's tentative refund request because the Receiver filed the 56-F. The Receiver's attempt to control to property of the estate is not theoretical. The Receiver's act, in fact, did exercise control over that property.

## II. The Receiver Fails To Acknowledge That The Loss Taken On The Returns Is The Loss Of The Debtor

The Receiver's arguments set forth in its objections are based on a fundamental failure to recognize that the Debtor has <u>its own losses</u> that formed a basis for seeking a tax refund. That failure is reflected in the Receiver's arguments that (1) any tax refund is not property of the estate because the Receiver claims the estate has no equitable interest in the refund; (2) any tax refund is held in trust for the Receiver; and (3) the estate will be unjustly enriched by receipt of the tax refund. Because all of the Receiver's arguments are premised on the incorrect notion that the Trustee is taking the losses of Downey Savings, such arguments have no merit.

First, the Receiver ignores the fact that the Debtor invested significant resources into Downey Savings – all of which was eliminated when Downey Savings was placed into receivership and its assets sold to U.S. Bank. Indeed, the tax return filed by the Debtor states a loss of over $1.7 billion. The Receiver would like this Court to believe that the Debtor had no losses and that only the losses incurred by Downey Savings count. In fact, the Receiver pretends

---

that the Receiver is not complying with the law upon which it relies, this Court should ignore the Receiver's requested relief and should grant the Trustee's motion.

[2] The Receiver asserts that it did not exercise control of estate property when the IRS refused to "process" the Trustee's return, claiming that there is some distinction between processing a claim and paying a claim. Of course, the IRS must process the return before it may pay the refund. Thus, preventing the IRS from processing the claim is also preventing the refund from being paid to the estate.
4
PH1 2454916v3 01/19/10

that all economic activity associated with the consolidated tax group was generated by Downey Savings. The Receiver ignores the fact that, but for the equity investment by the Debtor, as well as the $200 million of funds generated by the Debtor through the sale of debt instruments to bondholders which are now creditors of the estate, Downey Savings would not have been in a position to generate any economic activity. Thus, contrary to the Receiver's assertions, the Debtor's loss of over $1.7 billion gives the Debtor more than a mere title interest in any tax refund. Instead, the Debtor has an equitable interest in that refund and has every right to assert and protect that interest.

Similarly, the Receiver's argument that the Trustee must hold the tax refund in trust for Downey Savings assumes at its core that the refund belongs to Downey Savings.[3] Because the Trustee claimed the Debtor's losses on the tax return he filed with the Internal Revenue Service ("IRS"), that refund is not held in trust for the Receiver. Instead, the refund will be available for all creditors of the bankruptcy estate and distributed according to the dictates of the Bankruptcy Code. The Receiver, as a creditor of the estate, has filed a claim, which, if valid, would result in a distribution from the estate as set forth by the Code.

Finally, the estate will not be unjustly enriched. By taking the Debtor's loss on the tax return, the tax refund is available for distribution to all creditors of the estate according to the priorities of the Code. The Receiver does not want any other creditor to share in the benefits of the tax refund. As stated by the Receiver in its objection:

> the FDIC-R is not arguing that it has merely a claim as the largest creditor of this Estate. Rather, the FDIC-R is arguing that the tax refunds are its property and that it owns them.

---

[3] To be clear, even if Downey Savings' losses were taken on the 2008 tax return, any refund resulting from carrying back those losses would still belong to the bankruptcy estate under various theories of law and fact.

5

Receiver Objection at 28, ¶62. The Receiver's attempt to take the refund for itself, notwithstanding the losses suffered by the Debtor and other creditors is inequitable, contrary to the overarching principles of bankruptcy law and itself would create an unjust enrichment for the Receiver to the detriment of the estate.[4]

### III. <u>Automatic Stay May Not Be Waived</u>

The Receiver cites to not a single case standing for the proposition that its filing of the Form 56-F does not violate the automatic stay. Instead, it asserts that the Trustee waived the Receiver's violation of the automatic stay because the Trustee did not inform the Receiver between October 29, 2009 and December 30, 2009 that the Receiver's filing of the Form 56-F violated the automatic stay. The Receiver is incorrect because as a matter of law, the automatic stay may not be waived and the Receiver's argument incorrectly assumes that the Trustee did not take appropriate action in reaction to the violation of the stay.

The Third Circuit has addressed in several contexts whether the automatic stay may be waived. In each instance, the Court has unequivocally held that the stay may not be waived. <u>See, e.g.</u>, <u>Acands, Inc. v. Travelers Cas. and Surety Co.</u>, 435 F.3d 252, 259 (3d Cir. 2006) ("Because the automatic stay serves the interests of both debtors and creditors, it may not be waived and its scope may not be limited by a debtor.") (quoting <u>Maritime Electric Co., Inc. v. United Jersey Bank</u>, 959 F.2d 1194, 1204 (3d Cir. 1992); <u>Constitution Bank v. Tubbs</u>, 68 F.3d 685, 691 (3d Cir. 1995) ("The automatic stay cannot be waived. Relief from the stay can be

---

[4] The Receiver has on several occasions before this Court argued it is acting to protect all "taxpayers," presumably to imply that its position is somehow more equitable <u>See, e.g.</u>, Receiver Objection at 6, ¶12. The Receiver's statements in that regard are simply wrong. First, the Receiver is acting in its receivership capacity, on behalf of the receivership estate of Downey Savings – not in the FDIC's corporate capacity. Moreover, the FDIC itself admits that it does not receive taxpayer money. See www.fdic.gov/about/learn/symbol/index.html ("The FDIC receives no Congressional appropriations – it is funded by premiums that banks and thrift institutions pay for deposit insurance coverage and from earnings on investments in U.S. Treasury securities.")

granted only by the bankruptcy court having jurisdiction over a debtor's case"). Accordingly, as a matter of law, the Receiver's argument has no merit.

The Receiver claims that the Trustee must have "believed" that the filing of the Form 56-F was not a violation of the stay because the Receiver believes the Trustee took no action when the Trustee was notified in October, 2009 that the Internal Revenue Service ("IRS") would not process the Trustee's tentative request for a tax refund. This is a complete red herring. What the Trustee supposedly believed is irrelevant. The automatic stay protects the debtor, the bankruptcy estate <u>and all the creditors</u>, and the Court, and only the Court, may grant relief from the stay. <u>See</u> <u>Acands, Inc.</u>, 435 F.3d at 259; <u>Constitution Bank</u>, 68 F.3d at 691.

Moreover, the Receiver's assumption that the Trustee "did nothing" is wrong. In fact, in reaction to the notice from the IRS and as set forth in the Receiver's papers, the Trustee evaluated the estate's factual and legal position on the issue. Second, the Trustee initiated communications with the IRS with regard to the fact that the Trustee claimed the losses of the Debtor – not the alleged losses of the Receiver – as the basis for the refund. Third, as a result of the IRS notice, in part, and because of the change to tax law effective November 6, 2009, the Trustee immediately started preparing the Debtor's amended returns for tax years 2003 through 2007, which asserted a formal claim for a refund – not a "tentative" refund – a not so small endeavor. The Trustee acted immediately and swiftly to the law change and may be the first entity to file returns under the new law. Fourth, when the Receiver informed the Trustee's counsel that it intended to file a competing tax return which would affect property of the estate, the Trustee reacted quickly, over the December holidays, to inform the Receiver that such a filing would violate the stay and that the Form 56-F (which formed the basis for the filing of the competing return) needed to be withdrawn because it also was filed in violation of the stay. It

7

was only thereafter that the Receiver filed its motion seeking leave to file a competing return and it refused to withdraw its Form 56-F.

### IV. The Receiver's "Creative Interpretation" Of The Tax Sharing Agreement Is Belied By The Agreement's Actual Terms.

The Receiver offers a "creative interpretation" of the Tax Sharing Agreement that is not supported by the agreement itself. Specifically, the Receiver claims:

> [a]mong other things, and without limitation, under the Tax Sharing Agreement, DFC is required to seek the input of its affiliates on the tax elections made in any given tax year, something which the Trustee failed to do, filing his tax return without any prior review by, or notice to, the FDIC-R.

Receiver Objection at 11, ¶24. The Receiver misstates the actual terms of the Agreement, which provides:

> Financial shall prepare and file consolidated returns, and any other returns, documents or statements required to be filed with the Internal Revenue Service with respect to the determination of the tax liability of Financial and the Affiliated Group members for all taxable periods commencing with the tax period applicable as of the date of the execution of this Agreement. Financial shall have the right, in its sole discretion: (i) to determine (A) the manner in which such returns shall be prepared and filed, including, without limitation, the manner in which any item of income, gain, loss, deduction or credit shall be reported; provided, however, that <u>Financial shall consider in good faith any treatment proposed by the Affiliated Group members, (B) whether any extensions of the statute of limitations may be granted and (C) the elections that will be made pursuant to the Code on behalf of any member of the consolidated group (it being agreed, however, that Financial shall not unreasonably withhold its consent to any elections which members of the Affiliated Group desire to make)</u>; (ii) to contest, compromise or settle any adjustment or deficiency proposed, asserted or assessed as a result of any audit of any such returns; (iii) to file, prosecute, compromise or settle any claim for refund; and (iv) to determine whether any refunds to which the consolidated group may be entitled shall be paid by way of refund or credited against the tax liability of the consolidated group.

Tax Sharing Agreement, Section 2.4a. (emphasis added). By its plain terms, the Agreement only requires that the Trustee "consider in good faith any treatment proposed by [the Receiver]."

Here, beginning in March, 2009 when the Trustee filed papers to retain professionals and consultants to prepare the tax returns until the 2008 tax return was filed on September 15, 2009,

8

the Receiver never proposed that the Trustee apply any tax treatment and never proposed any election to be made before the 2008 tax return was filed. The Receiver never asked the Trustee to consult with the Receiver with regard to the preparation of the taxes and never even asked for a draft of the tax returns before they were filed. Instead, the Receiver sat on its hands, content that the estate was expending its own resources to prepare the tax return (a costly endeavor). Only after receiving a copy of the tax return did the Receiver raise its objection that the Trustee was utilizing the Debtor's losses as the basis for a tax refund.

The Receiver's representations with regard to the terms of the Tax Sharing Agreement are belied by the actual terms of that Agreement.

**WHEREFORE**, the Trustee, respectfully requests the entry of an Order by the Court that the filing of the 56-F form by the Receiver violated the automatic stay and, thus, the Form 56-F is void *ab initio*, and for such other relief as may be just and proper.

Respectfully submitted,

**FOX ROTHSCHILD LLP**

  */s/ Sheldon K. Rennie*
Sheldon K. Rennie (DE Id. No. 3772)
919 North Market Street, Suite 1300
Wilmington, DE 19801-3046
Tel (302) 654-7444/Fax (302) 656-8920
srennie@foxrothschild.com

-and-

Michael Menkowitz
William H. Stassen
2000 Market Street, Twentieth Floor
Philadelphia, PA 19103-3291
Tel (215) 299-2897/Fax (215) 299-2150
mmenkowitz@foxrothschild.com

-and-

9

<table>
<tr><td>Date: January 19, 2010</td><td>Raymond M. Patella<br>1301 Atlantic Avenue<br>Midtown Building - Suite 400<br>Atlantic City, NJ 08401<br>Tel (609) 572-2254/Fax (609) 348-6834<br>rpatella@foxrothschild.com<br><br>Attorneys for Montague S. Claybrook,<br>Chapter 7 Trustee for the estate of Downey<br>Financial Corp.</td></tr>
</table>