## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| DOWNEY FINANCIAL CORP., | : | Case No. 08-13041-(CSS) |
| | : | |
| | : | |
| | : | |
| Debtor. | : | **Hearing Date:** |
| | : | **Objection Deadline:** |

**CHAPTER 7 TRUSTEE'S OBJECTION TO MOTION OF THE
RECEIVER OF DOWNEY SAVINGS & LOAN ASSOCIATION, F.A.,
FOR AN EMERGENCY HEARING AND TO SHORTEN THE
NOTICE PERIOD WITH RESPECT TO THE MOTION SEEKING
AN ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY**

Montague S. Claybrook, the chapter 7 trustee (the "Trustee") for the estate of Downey Financial Corp. (the "Debtor"), hereby responds and objects to the motion of the Federal Deposit Insurance Corporation as receiver (the "FDIC-R" or the "Receiver") for Downey Savings & Loan, F.A., ("DSL" or "Downey Savings") For An Emergency Hearing And To Shorten The Notice Period With Respect To The Motion Seeking An Order Granting Relief From The Automatic Stay (the "Motion") and in support thereof states as follows.

## I. INTRODUCTION

On an expedited basis, without the completion of any discovery and without a full evidentiary hearing, the FDIC-R seeks to annul the automatic stay in this bankruptcy proceeding to validate its post bankruptcy petition filing of a tax form 56-F with the Internal Revenue Service ("IRS"), obtain the Court's blessing with regard to other communications with the IRS related to the FDIC-R's objections to the Trustee's tax return,[1] and to lift the automatic stay to permit it to file a tax return that directly and adversely competes with the tax return already filed

---

[1] The FDIC-R incorporates previous motions it has filed into the current Motion and the FDIC-R seeks very broad relief from the automatic stay that would bless the FDIC-R's ability to "take all steps necessary to preserve and protect the tax rights of the receivership." See FDIC-R Motion at 1-2.

by the Trustee as well as take any number of future actions related to the tax refund. The FDIC-R's request that the Court lift the automatic stay to permit it to "take all necessary steps to preserve and protect the rights of the receivership" is an attempt to obtain *nunc pro tunc* approval for the vast extent of stay violations already committed by the FDIC-R. The Receiver downplays the significance of its motion and the impact the requested relief will have on the bankruptcy estate.

The crux of the FDIC-R's Motion is that the Court should lift the automatic stay to allow it to file a competing tax return and that the relief its seeks is emergent because the FDIC-R only has until September 15, 2010 to make an election to carryback losses for five years. The FDIC-R neglects the fact that the Trustee has already filed a return that makes the election to carryback those losses for the full five years. Thus, to the extent there is a September 15, 2010 deadline, the Trustee has already met that deadline with the filing of his returns.

The present "emergency" is only a ruse to gain the Court's permission to file a competing tax return and in reality serves absolutely no other purpose than to reduce or eliminate what may be the bankruptcy estate's single biggest asset in excess of $300 million due and owing from its worthless stock losses arising from its failed investment in DSL and the tax refund resulting therefrom. The Debtor's tax returns, which are already filed, assert as an alternative basis for tax refund, the very same theory the FDIC-R wants to pursue in its own tax refund, i.e., that a refund is due as a result of the net operating loss of DSL. Therefore, no additional refund would result from the Receiver's proposed tax refund claim.

Moreover, the short listing is designed to get the FDIC-R a hearing before this Court prior to the Trustee being able to complete discovery to which he is entitled regarding the FDIC-

PH1 2591424v2 08/31/10

R's interactions with the IRS concerning the tax returns. The FDIC-R has refused, to date, to produce any documents related to those interactions.

The Receiver goes to great lengths to argue that it is not seeking to recover a claim or exercise its rights against Downey Financial Corp. What is clear – and not once stated in its Motion – is that the Receiver's requested relief is an attempt to directly and adversely affect a multi-million dollar asset of the Debtor's bankruptcy estate that subverts the very purpose of the automatic stay. While the Receiver admits that the tax return it intends to file will "compete" with the returns already filed by the Trustee, at not one point does the Receiver explain to the court that if the court were to grant the relief requested, the Receiver's tax return would claim DSL's operating losses and reduce or eliminate for all purposes the Debtor's $1.7 billion net operating loss. This is disingenuous on the Receiver's part. In fact, this Court has already approved a stipulation between the FDIC-R and the Trustee pursuant to which the FDIC-R agrees that the IRS may process the Trustee's return and make payment to the Trustee's escrow account. Thus, the FDIC-R's current motion violates the stipulation it entered into and which was approved by this Court.

## II.    ARGUMENT

### A.    There Is No Need For An Emergency Hearing Or To Shorten The Notice Period

The FDIC-R asserts that there is a need for an emergency hearing so that the FDIC-R may seek relief from the automatic stay because the FDIC-R claims "September 15, 2010 is the deadline for filing the FDIC-R Return which asserts the increased carryback period for up to five years." See FDIC Motion at 3, ¶2. The FDIC-R further explains that pursuant to the American Recovery and Reinvestment Act of 2009 (hereafter the "2009 Act"), the election to increase the carryback period for an applicable net operating loss for up to five years, as opposed to two years

3

under prior law, "must be made by the due date (including extension of time)" "which, in this case, following a six-month extension, is September 15, 2010." Id. at 3 ¶2 n.5.[2]

The FDIC-R's feigned need for a quick hearing is belied by the admissions in its own motion. The FDIC-R admits that

> On December 31, 2009, the Trustee, on behalf of the Consolidated Group, filed a Form 1120X, U.S. Federal Income Tax Claims for Refunds for Overpayments in Tax, for the Taxable Years Ending December 31, 2003, 2004, 2005, 2006 and 2007 (the "Amended Return"). The Amended Return expanded the claim in the Tentative Carryback Refund to request a carryback of the worthless stock deduction for the additional three years permitted by the 2009 Act, for a total of approximately $314 million.

See FDIC-R Motion at 13-14, ¶30.

Accordingly, the FDIC-R admits that the Trustee's 2008 consolidated tax return asserting a claim for a tax refund of approximately $314 million made the election to increase the carryback period to the full five years. Thus, the "election" has already been made by the Trustee many months before the alleged deadline. Simply put, there is no emergent need to have a court hearing.

Further, the Trustee has been diligently working on the tax returns to insure that the refund received by the estate is the full amount available. In fact, the Trustee's counsel previously informed the FDIC-R's counsel that the FDIC-R's calculations of the refund understate the amount of the refund by multiple millions of dollars. Thus, the FDIC-R's suggestion that only it can protect the refund amount is untrue and that suggestion may be fully tested during an evidentiary hearing.

---

[2]    It is noteworthy that the FDIC-R appears to be admitting that it filed some document with the IRS seeking an extension of time to file its competing return. The Trustee has no knowledge of such a filing and has never been provided a copy of such filing by the FDIC-R. The filing of the request for an extension is yet another willful and blatant violation of the automatic stay by the FDIC-R. The Trustee asserts that he should be allowed to conduct discovery with regard to this potential violation.

PH1 2591424v2 08/31/10

**B.     Shortening The Notice Period Is Not Appropriate Because The Parties Need To Complete Discovery Needed For The Requested Hearing**

The scope of issues that the FDIC-R wants the Court to address and the broad nature of the relief sought by the FDIC-R is not appropriately addressed on short notice without discovery and a full evidentiary hearing. The FDIC-R's Motion implicates a vast array of issues relating to the estate's largest asset. Indeed, the FDIC-R's motion also incorporates the "Initial Motion" filed by the FDIC-R related to its post-petition filing of Form 56-Fs with the IRS. See FDIC-R's Motion at 14, ¶15. The issues presented by the FDIC-R in its Motion include at a minimum, *inter alia*, whether:

1.  the automatic stay applies to the filing of the Form 56-Fs by the FDIC-R;

2.  the automatic stay applies to the filing of a competing tax return by the FDIC-R;

3.  the FDIC violated the automatic stay by its engaging in communications with the IRS expressing its opposition to the payment of the refund to the bankruptcy estate without any notice to the Trustee or this Court;

4.  the FDIC-R has the "tax rights" it alleges;

5.  the Trustee's tax filings protect the interest of the interested parties;

6.  the FDIC has any subrogation rights pursuant to 12 U.S.C. § 1821(g)(1);

7.  Downey Financial "made no tax payments itself" (which the Trustee knows to be a false statement of fact);

8.  the tax refund is property of the bankruptcy estate; and

9.  the FDIC-R met its burden of showing the stay should be lifted when its only alleged harm is unknown and completely speculative.

PH1 2591424v2 08/31/10

The FDIC-R's request that the Court lift the automatic stay to permit it to "take all necessary steps to preserve and protect the rights of the receivership" is an attempt to obtain *nunc pro tunc* approval for the vast extent of stay violations already committed by the FDIC-R. The FDIC-R has refused to date to provide any documents that will expose the full extent of its stay violations. For example, on December 30, 2009, counsel for the Trustee made a request for documents provided by the FDIC to the IRS related to Downey. See Letter from Trustee counsel dated December 30, 2009. On February 2, 2010, counsel for the Trustee renewed the Trustee's request vial email to counsel for the FDIC-R specifically requesting "copies of any additional information related to Downey submitted by the Receiver to the IRS." Further, on June 10, 2010, counsel for the Trustee, via correspondence directed to FDIC-R counsel, again requested that the FDIC "provide to the Trustee copies of all communications between the FDIC and the IRS relevant to the Downey Financial Consolidated Group." To date, the FDIC has not produced any documents responsive to the Trustee's requests. The Trustee is entitled to obtain the documents he has requested and should be provided the opportunity to review those documents before the FDIC-R's lift stay motion is heard.

Moreover, the Trustee should be permitted to obtain discovery regarding disputed issues of fact that are raised in the FDIC-R's Motion. For example, the FDIC-R asserts "on information and belief" that Downey Savings & Loan funded all or substantially all the tax payments made by the consolidated group and that "DFC made no tax payments itself." See FDIC-R Motion at 11, ¶25. The Trustee is entitled to discovery to explore these statements made by the FDIC-R.

Finally, the FDIC-R seeks the ability to file a competing tax return, but does not provide the Trustee or the Court with the return it intends to file – nor has it provided the Trustee with the

PH1 2591424v2 08/31/10

back-up information and calculations related to its competing return. The Trustee is entitled to discovery related to the return.

Ultimately, the FDIC-R seeks to usurp the Trustee's right to file tax returns for the Consolidated Group in order to improve its possibility to take the tax refunds for itself. The FDIC-R's attempts to control the largest asset of this estate should not be decided on a short listing, without full discovery and a full evidentiary hearing. The actual prejudice to the estate is too great to allow the FDIC-R to proceed in such fashion.

C.    The Current "Emergency" Is Of The FDIC-R's Own Creation

The FDIC-R's failure to plan should not create an emergency for this Court, the Trustee and for the other interested parties of this bankruptcy estate. The FDIC-R admits that "[t]he FDIC-R initially sought relief similar to that currently requested by Motion filed on January 4, 2010 [Docket Nos. 268-88]." See FDIC Motion at 14, ¶32. The relief requested by the FDIC-R is not new or based on new developments. Indeed, the FDIC-R has known about the 2009 Act since at least it was enacted and apparently filed for an extension of time with the IRS approximately six months ago to extend the time period for it to file its competing return. The Trustee has offered to meet with the FDIC-R tax specialists to go over the calculations of the tax refund, yet, to date, the FDIC-R has failed to follow through with the scheduling of that meeting. The fact that the FDIC-R waited until the late evening of August 30 to file its emergent motion because of an alleged September 15, 2010 deadline should not inconvenience the Court or the parties.

In fact, this Court has already approved a stipulation between the FDIC-R and the Trustee pursuant to which the FDIC-R agreed that the IRS may process the Trustee's return and pay the

PH1 2591424v2 08/31/10

refund to the Trustee's escrow account. Thus, the FDIC-R's current motion violates the stipulation it entered into and which was approved by this Court.

The alleged emergency (the FDIC-R's desire to file a competing tax return before September 15, 2010) is solely the creation of the FDIC-R. The issues involved in the FDIC-R's Motion are far too important to proceed on an emergent basis, without full discovery and the ability of all interested parties to enjoy due process.

**WHEREFORE**, the Trustee, respectfully requests that the Court deny the FDIC-R's Motion For An Emergency Hearing And To Shorten The Notice Period With Respect To The Motion Seeking An Order Granting Relief From The Automatic Stay and for such other relief as may be just and proper.

Respectfully submitted,

**FOX ROTHSCHILD LLP**

_/s/ Jason Cornell_
Jason Cornell (DE Id. No. 3821)
919 North Market Street, Suite 1300
Wilmington, DE 19801-3046
Tel (302) 654-7444/Fax (302) 656-8920
srennie@foxrothschild.com

-and-

Michael Menkowitz
William H. Stassen
2000 Market Street, Twentieth Floor
Philadelphia, PA 19103-3291
Tel (215) 299-2897/Fax (215) 299-2150
mmenkowitz@foxrothschild.com

-and-

PH1 2591424v2 08/31/10

Raymond M. Patella
1301 Atlantic Avenue
Midtown Building - Suite 400
Atlantic City, NJ 08401
Tel (609) 572-2254/Fax (609) 348-6834
rpatella@foxrothschild.com

Attorneys for Montague S. Claybrook,
Chapter 7 Trustee for the estate of Downey
Date: August 31, 2010                                          Financial Corp.

PH1 2591424v2 08/31/10