IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| In re: | : Chapter 7 |
|---|---|
| DOWNEY FINANCIAL CORP., | : Case No. 08-13041-(CSS) |
| Debtor. | : Hearing Date: September 22, 2010 at 10:00 a.m. |
| | : Objection Deadline: September 15, 2010 at 4:00 p.m. |

## CHAPTER 7 TRUSTEE'S RENEWED AND EXPANDED MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 362 FINDING THAT THE FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR DOWNEY SAVINGS & LOAN ASSOCIATION, F.A., VIOLATED THE AUTOMATIC STAY

Montague S. Claybrook, the chapter 7 trustee (the "Trustee") for the estate of Downey Financial Corp. (the "Debtor"), hereby seeks the entry of an order, pursuant to Section 105(a) and Section 362 of title 11 of the United States Code (the "Bankruptcy Code"), finding that the Federal Deposit Insurance Corporation as receiver for Downey Savings & Loan, F.A., (the "Receiver") violated the automatic stay (the "Motion"), and in support thereof states as follows:

### Summary

The Receiver has engaged in multiple, continuing and willful violations of the automatic stay designed to take for itself, and to the exclusion of any other creditor, the single biggest asset of the Debtor's estate – a federal tax refund totaling in excess of $370 million. Further, the Receiver's acts also constitute a post-petition attempt to create or perfect a claim against the bankruptcy estate in violation of the automatic stay. While the Trustee's investigation has confirmed the Receiver's blatant violations of the stay, the full extent of the Receiver's violations are not yet known. The Trustee's investigation has been hampered by certain parties'

1

failure to cooperate with the Trustee's discovery efforts.[1] The harm caused to the Debtor's estate by the Receiver's conduct has been significant and continues to this day. In fact, the Receiver has prevented, in the first instance, the Trustee from collecting its tax refund. For these reasons, the Debtor, respectfully requests that the Court enter an Order finding that the Receiver violated the automatic stay pursuant to 11 U.S.C. §§ 105 and 362, striking the Forms 56-F and any other filings made by the Receiver in violation of the stay as *void ab initio*, and granting the Trustee such other relief as may be just and proper, or, in the alternative, allowing the Trustee to take discovery to more fully explore the Receiver's violations of the automatic stay.

## Jurisdiction

1. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

2. Venue is proper pursuant to 28 U.S.C. § 1408 and 1409.

3. This contested proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

4. The statutory predicates in support of the relief requested herein are 11 U.S.C. §§ 105(a) and 362.

## Background

### A. The Receivership and Bankruptcy

5. On November 21, 2008 (the "Receivership Date"), the Director of the Office of Thrift Supervision ("OTS"), by order number 2008-49, appointed the FDIC as the Receiver of Downey Savings & Loan Association, F.A. ("Downey Savings"), a federally chartered savings

---

[1] Indeed, the Trustee has been forced to file a Freedom of Information Act complaint against the Internal Revenue Service as a result of the IRS' failure to produce documents to the Trustee. *See* Claybrook v. IRS, No. 10-1275 (D.D.C.).

2

association, and took possession of Downey Savings. Downey Savings was a wholly-owned subsidiary of the Debtor.

6. Immediately after its appointment, the Receiver sold substantially all of the former assets of Downey Savings, to U.S. Bank National Association ("U.S. Bank") pursuant to a purchase and assumption agreement, dated as of November 21, 2008 (the "Purchase and Assumption Agreement").

7. On November 25, 2008 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in this Court (the "Bankruptcy Case"). Immediately upon the filing of the Petition, the automatic stay in the Debtor's Bankruptcy Case prohibited any entity, including the Receiver, from, among other things, taking any action to obtain possession of property of the Debtor's bankruptcy estate or to exercise control over such property.

**B.  The Tax Sharing Agreement**

8. Prior to the Receivership Date and Petition Date, the Debtor and Downey Savings, among others, were parties to a Tax Sharing Agreement, effective February 29, 2000 (the "Tax Sharing Agreement"). A copy of the Tax Sharing Agreement is attached hereto as **Exhibit A**.

9. The Tax Sharing Agreement provides, in relevant part:

> A U.S. consolidated income tax return will be filed by Financial[2] for each taxable year for which this Agreement is in effect and for which members of the Affiliated Group[3] are required or permitted to file a consolidated tax return.

*     *     *     *

---

[2] The Debtor is referred to as "Financial" in the Tax Sharing Agreement.

[3] "Affiliated Group" shall include those corporations included in the filing of [Debtor's] consolidated tax return for federal income tax purposes, including Downey Savings. Tax Sharing Agreement, Section 2.1(b). *See id.*, Section 1.3 ("Affiliated Group" shall have the meaning assigned in Section 1504(a) of the Code").

3

Financial shall prepare and file consolidated returns, and any other returns, documents or statements required to be filed with the Internal Revenue Service with respect to the determination of the tax liability of Financial and the Affiliated Group members for all taxable periods commencing with the tax period applicable as of the date of the execution of this Agreement. <u>Financial shall have the right, in its sole discretion: (i) to determine (A) the manner in which such returns shall be prepared and filed, including, without limitation, the manner in which any item of income, gain, loss, deduction or credit shall be reported</u>; provided, however, that Financial shall consider in good faith any treatment proposed by the Affiliated Group members, (B) whether any extensions of the statute of limitations may be granted and (C) the elections that will be made pursuant to the Code on behalf of any member of the consolidated group (it being agreed, however, that Financial shall not unreasonably withhold its consent to any elections which members of the Affiliated Group desire to make); (ii) to contest, compromise or settle any adjustment or deficiency proposed, asserted or assessed as a result of any audit of any such returns; (iii) <u>to file</u>, prosecute, compromise or settle <u>any claim for refund</u>; and (iv) to determine whether any refunds to which the consolidated group may be entitled shall be paid by way of refund or credited against the tax liability of the consolidated group.

Tax Sharing Agreement, Section 2.1c.; 2.4a. (emphasis and footnotes added). Thus, the Tax Sharing Agreement provides the Trustee with the sole right to file the consolidated tax returns, to choose the manner in which losses shall be reported, and to file any claim for refund.

10. The Tax Sharing Agreement is property of the Debtor's bankruptcy estate pursuant to Section 541 of the Bankruptcy Code.

C. **The Debtor's Tax Returns and The Receiver's Interference With Those Returns In Violation of the Automatic Stay**

11. Three days after the Petition Date, on November 28, 2008, the Receiver filed a Form 56-F, Notice Concerning Fiduciary Relationship of Financial Institution ("Form 56-F"), with the IRS, notifying the IRS of the newly created fiduciary relationship between Downey Savings and the Receiver. A copy of Form 56-F with transmittal letter, is attached hereto as **Exhibit B**.

12. Although Mr. James F. Vordtriede marked the box on the Form 56-F stating that a copy of the form "has" been sent to the common parent of the group (as required by applicable IRS regulation), it appears that Mr. Vordtriede did not send the form until March 12, 2009, three

4

and a half months later. He also sent the form to "Downey Financial Corporation" in Newport Beach addressed to "Sir or Madam" when he knew that Montague Claybrook was appointed as Trustee of the Downey Financial Corp. bankruptcy estate and that the Trustee was represented by counsel both of whom were located at an address other than Newport Beach, California. The FDIC did not send the form to the Trustee.

13. The post-petition filing of the Form 56-F has prevented the Debtor's bankruptcy estate from receiving the Debtor's tax refund.

14. On September 15, 2009, the Trustee, on behalf of the Debtor's bankruptcy estate, filed a 2008 consolidated tax return (the "2008 Tax Return"). A copy of the 2008 Tax Return is not attached due to its voluminous nature, but will be made available to the Court. A copy of the 2008 Tax Return was provided to the Receiver on September 25, 2009. The 2008 Tax Return claimed a worthless stock deduction in the Debtor's investment in Downey Savings of $1,750,597,505.

15. On or about September 16, 2009, the Trustee filed a Form 1139, Corporation Application for Tentative Carryback Refund, for a tentative carryback refund claim (the "Tentative Carryback Refund") with the IRS pursuant to Section 6411 of title 26 of the Internal Revenue Code. The Tentative Carryback Refund sought to carryback the Debtor's worthless stock deduction arising from its failed investment in Downey Savings and sought a tax refund of approximately $145,000,000 for the tax years ending December 31, 2006 and December 31, 2007.

16. The Trustee has recently learned that the Receiver communicated its objection to the Trustee's Form 1139 refund request to the IRS and, thus, to the payment of the refund to the

estate. The Receiver, thereby, directly interfered with the payment of the tax refund to the estate. The Receiver's communications to the IRS violated the automatic stay.

17. By letter dated October 26, 2009, attached hereto as **Exhibit C**, the IRS indicated that it "can't approve" the Form 1139 and the Trustee's Tentative Carryback Refund. The IRS advised the Trustee that the:

> Form 1139, Corporation Application for Tentative Carryback Refund, cannot be processed. [The Trustee's] application does not contain the signature of the FDIC. The FDIC filed a Form 56-F, Notice Concerning Fiduciary relationship of Financial Institution, with the Service.

Accordingly, the Receiver's post-petition filing of the Form 56-F caused the IRS to refuse to process the Debtor's tax refund claim.

18. Subsequent to the Trustee's filing of the Form 1139, President Obama signed the Worker, Homeownership and Business Assistance Act of 2009 on November 6, 2009,[4] which permits the Trustee to carryback the Debtor's losses for up to 5 years, instead of the normal 2 year carryback rule.

19. On December 31, 2009, because of the Receiver's improper post-petition Form 56-F filing and to take advantage of the additional 3 years of carryback under the 2009 Act, the Trustee, on behalf of the Debtor's bankruptcy estate, filed a Form 1120X, U.S. Federal Income Tax Claims for Refunds for Overpayments in Tax, for the Taxable Years Ending December 31, 2003, 2004, 2005, 2006, and 2007 (the "Amended Returns"). The Trustee's Amended Returns claimed refunds arising from the Debtor's worthless stock deduction in the Debtor's investment in Downey Savings of $19,707,343.36; $31,758,454.81; $116,256,584.75; $107,928,565.43; and $38,684,249.85 for those respective years, for a total of $314,335,197.20. Copies of the

---

[4] 26 U.S.C. §§ 6511 & 172(b)(1)(H) (as amended by § 13 of the Worker, Homeownership, and Business Assistance Act of 2009 (Pub. L. No. 111-92, 123 Stat. 29840 (the "2009 Act").

6

Amended Returns are not attached due to their voluminous nature, but will be made available to the Court. Copies of the Amended Returns were provided to the Receiver.

20. By letter dated December 30, 2009, the Trustee, by and through his attorneys, sent a letter to the Receiver's counsel requesting that the Receiver "withdraw the IRS Form 56-F that was filed post-petition." The Trustee informed the Receiver's counsel that the post-petition filing of the Form 56-F was an act to obtain possession of property of the bankruptcy estate and to exercise control over property of the bankruptcy estate in violation of 11 U.S.C. § 362. To date, the Receiver has not withdrawn the Form 56-F despite the Trustee's request.

21. The Receiver, thereafter, filed a motion seeking to lift the automatic stay *nunc pro tunc* to allow the Receiver to file "one or more" Forms 56-F. It was from reading the Receiver's motion that the Trustee learned for the first time that the Receiver may have filed more than one Form 56-F. The Receiver did not attach a copy of any 56-F forms actually filed by the Receiver to the motion to lift the stay *nunc pro tunc*.

22. The second Form 56-F filed on or about October, 7, 2009, nearly eleven months after the Debtor was under the protection of the automatic stay, is attached as **Exhibit D**. The first Form 56-F reveals that the Receiver informed the IRS that is was acting on behalf of the Debtor. The second Form 56-F filed by the Receiver reveals that IRS was informed that the Receiver acts on behalf of "Downey Financial Corporation c/o Claybrook & Associates." Thus, the Receiver improperly represented to the IRS that is was acting on behalf of the Debtor care of the Trustee's accounting firm.

23. Again, notwithstanding the fact that the Receiver stated on the Form 56-F that the Receiver had provided a copy of the Form 56-F to the Debtor, no such notice was provided.

24. Following discussions between counsel for the Trustee and the Receiver, the Receiver withdrew, without prejudice, its motion to lift the stay and the parties entered into a Stipulation with regard to the tax refunds. A copy of the Stipulation is attached as **Exhibit E**.

25. Pursuant to the Stipulation, which was approved by this Court, the Receiver agreed that the tax refunds shall be paid by the IRS to the Trustee's escrow account. The Receiver also agreed "to the processing of the [Trustee's] Federal Returns and to the payment of the Federal Returns to the Trustee. . . ." *Id.*

26. Notwithstanding agreement that the IRS could process the Trustee's tax return and pay the refund to the Trustee's escrow account, the Trustee has recently discovered that the Receiver has been communicating behind the scenes with the IRS to undermine the Trustee's tax return, which has further prevented and delayed payment of the refund to the estate. The full extent of the Receiver's continuing violations of the automatic stay are not known and discovery will have to be conducted to determine the full scope of these violations of the automatic stay.

27. Finally, it appears that yet another stay violation was inadvertently disclosed by the Receiver in its recent filing with the Court where the Receiver seeks to lift the automatic stay to file a tax return that "competes" with the return filed by the Trustee.

28. Specifically, in the Receiver's filing, the Receiver states that its deadline to file that return is September 15, 2010: "September 15, 2010 is the deadline for filing the FDIC-R Return which asserts the increased carryback period for up to five years." *See* FDIC Motion to Lift Stay at 3, ¶2. The Receiver further explains that pursuant to the American Recovery and Reinvestment Act of 2009 (hereafter the "2009 Act"), the election to increase the carryback period for an applicable net operating loss for up to five years, as opposed to two years under

8

prior law, "must be made by the due date (including extension of time)" "which, in this case, **following a six-month extension**, is September 15, 2010." *Id.* at 3 ¶2 n.5 (emphasis added).

29. Accordingly, the Receiver appears to be admitting that it filed some document with the IRS seeking an extension of time to file its competing return. The Trustee has no knowledge of such a filing and has never been provided with a copy of such filing by the Receiver. The filing of the request for an extension is yet another violation of the automatic stay by the Receiver. The Trustee asserts that he should be allowed to conduct discovery with regard to this violation.

### Relief Requested

30. The Trustee respectfully requests that the Court enter an order finding that the Receiver violated the automatic stay pursuant to 11 U.S.C. §§ 105 and 362; and strike any and all documents including, but not limited to, any Forms 56-F and requests for extension filed by the Receiver as acts done in violation of the stay and thus, *void ab initio*.[5]

### Argument

A. **11 U.S.C. § 105**

31. Section 105(a) of the Bankruptcy Code provides in pertinent part:

> The Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11. U.S.C. § 105(a) (emphasis added).

---

[5] As a result of the Receiver's continuing stay violations, the Trustee reserves the right to seek an award of actual damages, including costs and attorneys' fees, and punitive damages, and to assess those damages as sanctions against the Receiver pursuant to 11 U.S.C. §§ 105(a) and 362(k)(1), and to move to equitably subordinate any claim the Receiver has in this case.

9

32. Section 105(a) serves as the statutory basis for the civil contempt power of bankruptcy judges. *See In re Stephen W. Gross, P.C.*, 84 B.R. 377, 385 (Bankr. E.D. Pa. 1988).

**B.** **11 U.S.C. § 362**

33. Section 362(a) of the Bankruptcy Code provides in pertinent part:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities of –
>
> \*\*\*\*
>
> (3) <u>any act to obtain possession</u> of property of the estate or of property <u>from the estate</u> or to <u>exercise control over property of the estate</u>.

11 U.S.C. § 362(a) (emphasis added).

34. Section 362(a)(3) implements a stay of any action, whether against the debtor or third parties, that seeks to obtain possession of or exercise control over property of a debtor's estate. *Borman v. Raymark Indus., Inc.*, 942 F.2d 1031, 1035 (3d Cir. 1991) (*citing* 11 U.S.C. § 362(a)(3)). "[T]here is no doubt that the scope of the automatic stay is broad." *In re Krystal Cadillac Oldsmobile GMC Truck, Inc.*, 142 F.3d 631, 637 (3d Cir. 1998).

35. The automatic stay applies to the FDIC, as well as other government entities. *In re Colonial Realty Co.*, 980 F.2d 125, 134 (2d Cir. 1992). In addition, the automatic stay applies equally to actions taken by a receiver to exercise control over the debtor's estate. *In re Hull*, No. 02-10216, 2003 WL 22000599, \* 2 (Bankr. D. Del. 2003) (citing *Underwood v. Hilliard (In re Rimsay, Ltd.)*, 98 F.3d 956, 961 (7th Cir. 1996)). Thus, it is clear that the Receiver is required to, if otherwise possible, obtain relief from the automatic stay. It is equally clear that the Receiver has not sought such relief, but rather engaged in actions designed to divert the estate's property to it.

**C.** **11 U.S.C. § 541**

36. Section 541(a)(1) of the Bankruptcy Code provides in pertinent part:

> (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
>
> (1) Except as provided in subsection (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

11 U.S.C. § 541(a)(1).

37. Courts have consistently held that "federal tax refunds themselves have long been defined as property of the estate for purposes of bankruptcy" pursuant to 11 U.S.C. § 541(a)(1). *In re Harchar*, 2006 WL 3196846, *9 (Bankr. N.D. Ohio 2006) (the debtors' federal tax refund was 'property of the estate' because § 541(a)(1) is "expansive and includes all of a debtors' legal and equitable interests in property"); *see also Borman*, 942 F.2d at 1035 (3d Cir. 1991) (estate property does not have to be in a debtor's possession for § 362(a)(3) to apply); and *Williams v. Johnson (In re Williams Bros. Asphalt Paving Co.)*, 56 F.3d 66 (6th Cir. 1995) (debtor's anticipated refund was property of the estate). Furthermore, a debtor's interest in a carryback of a NOL "constitutes property of the estate within the scope of 11 U.S.C. § 541(a)(1) and is entitled to the protection of the automatic stay imposed pursuant to 11 U.S.C. § 362(a)(3)." *In re Southeast Banking Co.*, 1994 WL 1893513, *2 (Bankr. S.D. Fla. 1994) (finding that a transfer of the debtor's common stock would impair or eliminate the value of the debtor's interest in the NOL and constituted an exercise of control over property of the debtor's estate in violation of § 362(a)(3)).

38. Loss-carryback refund claims for losses incurred by a debtor in tax years prior to the filing of a bankruptcy petition are property of a debtor's bankruptcy estate. *Segal v. Rochelle*, 382 U.S. 375, 380-81 (1966). Loss-carryback refund claims are "sufficiently rooted in the prebankrutpcy past . . . that [they] should be regarded as property of the estate." *Id.* at 381. The Court in *In re Roy Glenn* explained the holding in *Segal* that "as of the date the petition was

filed[,] the debtors had a property interest in the refund claim because § 70a(5) of the Bankruptcy Act vested in the trustee the debtors' title to the property." *In re Roy Glenn*, 207 B.R. 418, 421 (E.D. Pa. 1997) (finding that the debtor's refund was "sufficiently rooted in the pre-bankruptcy" life of the debtor that it was property of the estate). Furthermore, Judge Mary Walrath of this Court recently followed *Segal* in *In re Flying J, Inc.*, and held that a tax loss for a current tax year and a corresponding tentative refund claim for previous tax years, are property of the debtor's estate when the debtor files for bankruptcy relief before the end of the current tax year. *In re Flying J, Inc.*, No 08-133484, 9 [D.I. 2451] (Walrath, J.) (Bankr. D. Del. Dec 28, 2009) (*citing Segal v. Rochelle*, 382 U.S. 375, 380 (1966)), a copy of which is attached as **Exhibit F**. In *In re Flying J, Inc.*, the "loss-carryback refund claim was 'sufficiently rooted in the pre-bankruptcy past'" such that it was property of the debtor's bankruptcy estate for purposes of 11 U.S.C. § 553. *Flying J,* at 9.

39. The Debtor's Tentative Carryback Refund - and all tax refunds - are property of the Debtor's estate pursuant to 11 U.S.C. § 541(a)(1) and are entitled to protection under 11 U.S.C. § 362(a)(3). The Trustee claimed the Debtor's own losses on the 2008 Tax Return. The Amended Returns carry back the Debtor's losses to obtain taxes previously paid. Any tax refund generated from the carryback of the Debtor's losses are property of the estate. In line with the Supreme Court's and this Court's precedent in *Segal* and *In re Flying J, Inc.*, a tax refund resulting from the Debtor's loss is "sufficiently rooted in the pre-bankruptcy past" to make it property of the Debtor's estate.

D. **The Receiver has Violated the Automatic Stay**

40. Preventing a debtor from receiving a tax refund for a period of time "exercise[s] control" over property of a debtor's estate in violation of 11 U.S.C. § 362(a)(3). *In re Harchar,*

2006 WL 3196846, at *13; *In re Del Mission Ltd.*, 98 F.3d 1147, 1151 (9th Cir. 1996) (a State's efforts to collect disputed taxes and retain disputed taxes violates the automatic stay provisions pursuant to § 362(a)(3) because the State is exercising control over the property of the debtor's estate); *In re Southeast Banking Co.*, 1994 WL1893513, at *2 (an act that impairs or eliminates the value of a tax refund constitutes an exercise of control over the property of the debtor's estate in violation of § 362(a)(3)). Even the act of sending a letter to a third party violates the automatic stay when the letter attempts to "exercise control" over property of the debtor's estate. *In re All Trac Transp.*, 306 B.R. 859, 870 (Bankr. N.D. Tex. 2004).

41. The Receiver took an affirmative act to "exercise control" over the Trustee's right to file the Debtor's tax returns and is preventing the IRS from paying to the Trustee a very large tax refund. The Form 56-F filed by the Receiver "exercise[ed] control" over the Tentative Carryback Refund because it has the effect of preventing the Trustee from receiving the Tentative Carryback Refund. In the letter dated October 26, 2009, the IRS specifically denied the Form 1139 because the "FDIC filed Form 56-F." See **Exhibit B**. The Receiver's affirmative interference violates the automatic stay protection afforded to property of the estate under 11 U.S.C. § 362(a)(3).

42. The Receiver claims that the filing of the Form 56-F is merely a ministerial act and, therefore, does not violate the stay. In essence, the Receiver argues that the 56-F simply perfects its ability to assert its alleged tax rights at a later point in time. However, perfecting its alleged tax rights with a filing of the Form 56-F is an "act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

13

43. Indeed, in other situations, the performance of an asserted ministerial act by a government entity that would be to the benefit of a holder of an unperfected security interest is stayed. *In re Alberto*, 66 B.R. 132, 143 (Bankr. D.N.J. 1985). In *In re Alberto*, Maryland National Bank (the "Bank") had an unperfected mortgage in the debtor's yacht. *Id.* The debtor filed a petition under Chapter 11 of the Bankruptcy Code on August 28, 1984. *Id.* at 133. In order for the Bank to have a perfected security interest, the Bank sent the necessary documentation to the United States Coast Guard on April 13, 1984. *Id.* However, the mortgage was not recorded, indexed and endorsed on the vessel's title until October 30, 1984, two months after the Chapter 11 petition. *In re Alberto*, 66 B.R. at 135. The Bank asserted that the automatic stay should not stay the Coast Guard's ministerial acts, specifically the recording, indexing and endorsing of the Bank's mortgage. *Id.* at 143. The Court found that §§ 362(a)(4) and (a)(5) prevented the Coast Guard from recording the Bank's mortgage because that would be for the benefit of the Bank – i.e. to perfect its security interest. *Id.* at 143-44. Therefore, post-petition acts to perfect an interest in a debtor's property violates the stay.

44. The Receiver also asserts that the filing of the Form 56-F merely gives notice to the IRS of the Receiver's appointment *vis-a-vis* Downey Savings; however, providing such notice violates the stay. Courts consistently find that post-petition filings of UCC financing statements, which give notice that a party has a security interest in property, are subject to the automatic stay. *See, e.g., In re Marta Group, Inc.*, 33 B.R. 634, 639 (Bankr. E.D. Pa. 1983). In *In re Marta*, the debtor ordered goods on consignment from a creditor. *Id.* at 637. Pre-petition, the creditor filed financing statements, but erroneously used the debtor's former name, and thus the creditor's rights were unperfected. *Id.* The creditor filed amended UCC filings post-petition to change the name listed of the debtor in order to properly perfect the creditors security interest.

14

*Id.* In addressing the amendments to the financing statements, the Court held that the attempts to amend the financing statements were void and in violation of the automatic stay because the filings occurred post-petition. *Id.* at 639. Therefore, the creditor was barred from further action regarding the goods without leave of the Court. *In re Marta*, 33 B.R. at 641.

45. The same is true with regard to enforcing a mortgage post-petition. The recording of a deed after the stay is a violation of the stay because it is an act to enforce a lien or perfect a security interest against property of the estate. *In re Penfil*, 40 B.R. 474, 476 (Bankr. E.D. Mich. 1984). In *In re Penfil*, the bank conducted a foreclosure sale and was the winning bidder. *Id.* at 476. On the same day, one-hour before the foreclosure sale ended, the debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Court found that the mere recording of the sheriff's deed after the foreclosure sale was "in and of itself, a violation of the automatic stay." *Id. see also In re Weber*, 283 B.R. 630, 635-36 (Bankr. D. Mass. 2002) (finding that offending act occurring during the pendency of the automatic stay that was a "necessary predicate" for a later issued default judgment violated the stay).

46. Here, the act of filing the 56-F, according to the Receiver, served the purpose of providing notice to the IRS of the Receiver's potential claim to any tax refund associated with a tax return filed by the Trustee. Further, the Receiver has admitted that its ability to file a competing tax return is contingent on its filing of the 56-F. The Receiver has also asserted that merely because of the pendency of the 56-F form, the IRS could pay the Debtor's refund to the Receiver – a quintessential act to obtain property of the estate. Thus, just like the recording of a mortgage or a UCC financing statement, the 56-F form acts to "perfect" the Receiver's ability to stake its claim to the tax refund. The act of filing the 56-F violates the stay.

15

47. Finally, the Receiver may not ignore the facts. Here, the IRS would not process the Trustee's tentative refund request because the Receiver filed the 56-F. The Receiver's attempt to control to property of the estate is not theoretical. The Receiver's acts, in fact, did exercise control over property of the Debtor's estate.

48. Therefore, this Court should enter an order finding that the Receiver violated the automatic stay and striking all Form 56-Fs, and any other document filed by the Receiver with the IRS relating to Downey Financial as *void ab initio*.

**WHEREFORE**, the Debtor, respectfully requests that the Court enter an Order finding that the Receiver violated the automatic stay pursuant to 11 U.S.C. §§ 105 and 362, striking the Forms 56-F and any other filings made by the Receiver in violation of the stay as *void ab initio*, and granting the Trustee such other relief as may be just and proper, or, in the alternative, allowing the Trustee to take discovery to more fully explore the Receiver's violations of the automatic stay.

Dated: September 3, 2010

**FOX ROTHSCHILD LLP**

_/s/ John H. Strock_
John H. Strock (DE Id. No. 4965)
919 North Market Street, Suite 1300
Wilmington, DE 19801-3046
Tel (302) 654-7444/Fax (302) 656-8920
jstrock@foxrothschild.com

-and-

Michael Menkowitz
William H. Stassen
2000 Market Street, Twentieth Floor
Philadelphia, PA 19103-3291
Tel (215) 299-2897/Fax (215) 299-2150
mmenkowitz@foxrothschild.com

-and-

Raymond M. Patella
1301 Atlantic Avenue
Midtown Building - Suite 400
Atlantic City, NJ 08401
Tel (609) 572-2254/Fax (609) 348-6834
rpatella@foxrothschild.com

Attorneys for Montague S. Claybrook,
Chapter 7 Trustee for the estate of Downey
Financial Corp.