IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------X

| | |
|---|---|
| In re: | Chapter 7 |
| DOWNEY FINANCIAL CORP., | Case No. 08-13041 (CSS) |
| | Hearing Date: January 3, 2011 at 10:00 a.m. |
| | Objection Deadline: December 27, 2010 |
| Debtor. | at 4:00 p.m. |

------------------------------------------------------X

## MOTION OF THE FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF DOWNEY SAVINGS AND LOAN ASSOCIATION, F.A., FOR AN ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY

The Federal Deposit Insurance Corporation (the "FDIC"), as Receiver ("FDIC-R" or "Receiver") of Downey Savings and Loan Association, F.A. ("Downey Savings"), by its undersigned counsel, files this motion[1] seeking entry of an Order, *inter alia*, lifting the automatic stay pursuant to § 362(d) of Title 11 of the United States Code (the "Bankruptcy Code"), to the extent such relief may be required, to permit the FDIC-R to protect its interests to tax refunds in excess of $400 million (the "Tax Refunds"), the ownership of which is the subject of the adversary proceeding (Adv. Proc. Case No. 10-53731) filed by the Chapter 7 Trustee (the "Trustee") before this Court on October 28, 2010 (the "October Ownership Action"),[2] by (i) intervening in an action that the Trustee commenced on October 29, 2010, without notice to this Court or the FDIC-R, against The United States in the United States Court of Federal Claims (the "Court of Claims"),

---

[1] The FDIC-R expressly reserves all rights to which the FDIC-R is entitled under Title 12 of the United States Code.

[2] The Trustee has also asserted claims with respect to the Tax Refunds in the adversary proceeding he filed against the FDIC-R on November 24, 2010 (Adv. Proc. Case No. 10-55567, the "November Omnibus Action"). *See* discussion *infra*.

1

styled *Claybrook v. The United States* (No. 10-734T) (the "Court of Claims Action")[3], which seeks to recover the Tax Refunds, or commencing a different action in a Court of competent jurisdiction concerning the same issues, and/or (ii) participating in the Internal Revenue Service ("IRS") administrative process in connection with the Tax Refunds by, *inter alia*, responding to a "Notice of Proposed Adjustments," dated December 6, 2010, and related materials sent to the FDIC-R by the IRS (collectively, the "IRS Proposed Adjustments"), to which, upon information and belief, the Trustee may have already responded. In addition, should the Court grant this motion, the FDIC-R respectfully requests that the Court waive the 14-day stay imposed by Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

In support of the motion, the FDIC-R respectfully submits as follows:

## PRELIMINARY STATEMENT

1. On October 28, 2010, the Trustee commenced the October Ownership Action. The very next day, the Trustee commenced the Court of Claims Action against the IRS, seeking to recover the very same Tax Refunds that are the subject of the October Ownership Action. The Trustee failed to advise either this Court or the FDIC-R of the Court of Claims Action until December 3, 2010, when his counsel sent a letter by regular mail to counsel for the FDIC-R. This lack of notice occurred notwithstanding the fact that there were no less than three (3) court appearances and numerous contacts between counsel for the Trustee and the FDIC-R after October 29, 2010, including the November 1, 2010 Court conference at which the trial date for the October Ownership Action was set. The Court of Claims Action is yet another effort by the Trustee to use the automatic

---

[3] A copy of the Complaint the Trustee filed in the Court of Claims Action is appended as Exhibit "A" to the accompanying Declaration of Melanie L. Cyganowski.

stay as a sword to foreclose the FDIC-R's ability to participate as alternate agent in the consideration of the Tax Refunds, and is an attempt to unilaterally circumvent the relief the Court granted to the FDIC-R by Order entered September 13, 2010.

2. Indeed, the Trustee has not only sought to exclude the FDIC-R from the Court of Claims Action, but in his complaint in that Action, he failed to advise the Court of Claims that the FDIC-R, as alternate agent, also filed a 2008 tax return with the IRS, failed to state that the FDIC-R also asserts a claim to the same Tax Refunds, and failed to so much as mention the proceedings before this Court regarding the Tax Refunds, including the October Ownership Action. The Court of Claims may render a judgment that would be binding upon the IRS (and thereby affect the FDIC-R) without the benefit of the full facts and circumstances surrounding the disputed Tax Refunds. These confounding circumstances, which have been set in motion by the Trustee, create a substantial risk that the FDIC-R will be divested of its right to set forth its claim to the Tax Refunds to the tax decision-maker.

3. Accordingly, by this motion, the FDIC-R seeks stay relief to allow it to seek to intervene in the Court of Claims Action, or to commence suit in another Court of competent jurisdiction if intervention is not applicable and/or to participate in the Internal Revenue Service administrative process in connection with the Tax Refunds.

## BACKGROUND

### The Court's Concerns Regarding the Trustee's Use of the Stay as a Sword and *Ex Parte* Communications by Either Party with the IRS

4. By Order entered September 13, 2010 (the "Lift Stay Order") [Docket No. 461], this Court granted the FDIC-R's request for relief from the stay to permit it to file with the IRS a 2008 tax return, and, if necessary, a bank-only return for 2009, in

3

accordance with 26 U.S.C. § 6402(k) and 26 C.F.R. § 301.6402-7. Upon entry of the Lift Stay Order, the FDIC-R filed a tax return for the 2008 tax year, which asserts Downey Savings' net operating losses ("NOLs") as the basis for the Tax Refunds. The Trustee's 2008 tax return relied principally upon DFC's alleged worthless stock loss.

5. In granting the FDIC-R the requested relief, the Court expressed its concern that the Trustee was using the automatic stay as a sword to bar the FDIC-R from exercising rights granted to it by law with respect to tax-related matters of the insolvent depository institution for which it acts as a receiver. In this regard the Court stated:

> [W]hat the trustee is trying to do in this instance is assert the automatic stay as a sword to further its substantive position on who is entitled to whatever refund may be available from the IRS by foregoing its opponent from being able to make a filing with the IRS.
>
> I think that is a violation of the spirit, if you will, of the automatic stay, and is not what it is intended to accomplish.

Transcript of September 13, 2010 hearing at 34 [Docket No. 468]. Moreover, the Court noted that the FDIC-R should not be forced to rely upon the Trustee's tax filings. *See id.* at 20, 34.

6. At the September 13, 2010 hearing, the Court also directed that there should be no additional communications with the IRS. At a hearing on September 22, 2010, the Court clarified its September 13th ruling and directed that neither the FDIC-R nor the Trustee were to engage in any further *ex parte* communications with the IRS:

> [C]ertainly no more ex parte communications to the IRS should occur, and really, *to both parties, I don't think any communication to the IRS should occur without either agreement amongst the parties or a Court order or a Court authorization.* So if you start talking to him at this point, the automatic stay is not your problem. I'm you're problem and I'm not going away, at least not yet.

4

Transcript of September 22, 2010 hearing at 12 [Docket No. 476] (emphasis added).

7.   By letter dated November 16, 2010, counsel to the FDIC-R advised the Court that they had learned that a representative of the FDIC sent two transmittal letters to the IRS in connection with tax returns that the Court authorized the FDIC-R to file by the Lift Stay Order. On November 17, 2010, the Court held a telephonic conference regarding the transmittal letters, during which the Court emphasized its September 22 directive that *ex parte* communications with the IRS are not permitted, and that any further communications may result in sanctions. Upon inquiry by the Court if the Trustee wished to be heard during the hearing, the Trustee responded that he had no comments. Conspicuously absent were any comments by the Trustee that he had already filed a new action with another tribunal involving the very same Tax Refunds.

## Commencement of the Required Adversary Proceeding to Adjudicate the Issue of Ownership of the Tax Refunds, and the Scheduling Thereof

8.   At a hearing on October 20, 2010, the Court granted the FDIC-R's motion to require the Trustee to proceed through adversary proceeding, rather than a contested matter, on the predicate issue of ownership of the Tax Refunds. *See* Transcript of October 20, 2010 hearing, at 35 [Docket No. 504]. As required by the Court Order dated October 25, 2010, the Trustee commenced the October Ownership Action on October 28, 2010. *See* Order dated October 25, 2010 [Docket No. 501].

9.   On November 1, 2010, the Court held a status conference at which time the Court scheduled the trial in the October Ownership Action for early May 2011.

10.  The parties next appeared at the November 17, 2010 telephonic conference, and later at a status conference held at the request of the FDIC-R on

5

December 1, 2010. During the December 1st conference, several issues were discussed, including, *inter alia*: (i) the ability of the parties to communicate with the IRS regarding discovery, (ii) a subpoena that the Trustee issued to the IRS on October 1, 2010, without notice to the FDIC-R, which the FDIC-R found in the Trustee's recent document production, and (iii) certain procedural issues raised by the November Omnibus Action commenced by the Trustee the prior week. *See* Transcript of December 1, 2010 hearing, at 5-8, 12-18 [Docket No. 552]. In the course of discussing these issues, the Trustee articulated his position that "neither party" should advocate a position to the IRS in the context of discovery. *See id.* at 11. However, again, the Trustee failed to advise this Court that he had commenced an action in another tribunal involving the very same Tax Refunds.

## The Trustee's Commencement of the Court of Claims Action, Without Notice to this Court or the FDIC-R, to Recover the Tax Refunds

11. The Trustee filed the Court of Claims Action on October 29, 2010, one day after the commencement of the October Ownership Action. In that Action, the Trustee seeks to recover from The United States the Tax Refunds which are at issue in the October Ownership Action. The Trustee did not name the FDIC-R as a party in the Court of Claims Action. Nor did the Trustee give the Court of Claims any notice of the fact that the FDIC-R, as alternate agent of the consolidated group, had submitted its own tax return concerning the same Tax Refunds.

12. The Trustee did not disclose the existence of the Court of Claims Action at the November 1st scheduling conference (at which time the Court set the trial date for the October Ownership Action), the November 17th telephonic hearing, or the December 1st conference, notwithstanding the obvious relationship of the Court of Claims Action to the

6

issues being discussed at that time, including potential jurisdictional issues that arise from the Court of Claims Action. In fact, the FDIC-R did not learn of the Court of Claims Action until over a month after its filing, when, on December 6, 2010, FDIC-R's counsel received a letter from Trustee's counsel, dated December 3, 2010, revealing the Trustee's commencement of the action.

**The Notice of Proposed Adjustments Sent to the FDIC-R by the IRS**

13. While the Trustee seeks to recover the Tax Refunds in the Court of Claims Action, the IRS is apparently still in the process of completing its audit examination. On December 9, 2010, the FDIC-R received, unsolicited and without prior notice, a binder containing the IRS Proposed Adjustments from the IRS agent responsible for examining the Trustee's and the FDIC-R's respective tax returns and claims for refunds.[4] In a cover letter, the IRS agent notes that the final audit report for the 2008 tax year and carryback years 2003 through 2007 will be forwarded to the FDIC-R by January 31, 2011.

14. The FDIC-R has not responded to the IRS regarding the IRS Proposed Adjustments, nor does it know whether the Trustee has received them and, if so, whether he has responded to the IRS regarding the IRS Proposed Adjustments.

## RELIEF REQUESTED

15. By this motion, the FDIC-R seeks entry of an Order, *inter alia*, (i) lifting the automatic stay pursuant to § 362(d) of the Bankruptcy Code, to the extent such relief may be required, to permit the FDIC-R to protect its interests the Tax Refunds by (a) intervening in the Court of Claims Action, or commencing a different action in a Court of

---

[4] Due to its voluminous and confidential nature, the FDIC-R is not attaching the Notice of Proposed Adjustments, but, upon request, will provide the Court with a copy of the Notice of Proposed Adjustments under seal.

7

competent jurisdiction concerning the same issues, and/or (b) participating in the IRS administrative process in connection with the Tax Refunds including by, *inter alia*, responding to the IRS Proposed Adjustments; (ii) waiving the 14-day stay imposed by Bankruptcy Rule 4001(a)(3); and (iii) granting the FDIC-R such other further relief as is just and proper.

## BASIS FOR THE RELIEF REQUESTED

### I. THE AUTOMATIC STAY DOES NOT APPLY TO THE ACTIONS THE FDIC-R SEEKS TO TAKE TO PRESERVE ITS INTERESTS IN AND TO THE TAX REFUNDS

16. The automatic stay under Section 362(a) of the Bankruptcy Code does not apply to the actions the FDIC-R seeks to take to preserve its interests in and to the Tax Refunds. As the Court is aware, the FDIC-R asserts that the Tax Refunds are not "property of the estate" under Section 541 of the Bankruptcy Code. As such, it is submitted that the actions that the FDIC-R seeks to take do not affect any purported property interest of the Chapter 7 estate, and thus do not implicate the automatic stay.

### II. TO THE EXTENT THAT THE AUTOMATIC STAY IS DEEMED TO APPLY, CAUSE EXISTS TO LIFT THE STAY

17. Nevertheless, should the Bankruptcy Court determine that the automatic stay applies to the FDIC-R's proposed actions, "cause" exists to lift the stay.

18. Section 362(d)(1) of the Bankruptcy Code provides that:

> ... the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay –
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest....

11 U.S.C. § 362(d)(1). The FDIC-R bears the burden of showing that such cause exists. *See* 11 U.S.C. § 362(g).

19. Under the circumstances, sufficient "cause" certainly exists to grant the FDIC-R the relief from the automatic stay that it seeks by this motion. As this Court recognized when granting the FDIC-R stay relief to file an alternate 2008 tax return, by law, the FDIC-R is granted standing to assert a claim for tax refunds as an alternate agent of the consolidated group. Yet, in opposing the relief sought by the FDIC-R and in his actions after the September 13, 2010 hearing, the Trustee is using the automatic stay offensively even while the Trustee takes steps to adversely affect those interests in the Tax Refunds. Simply put, this is not the purpose of the automatic stay.

20. Moreover, the FDIC-R should be permitted to provide the IRS with guidance on whether it agrees or disagrees with the IRS' proposed determinations of the FDIC-R's tax return and set of claims. Otherwise, the FDIC-R's standing to file an alternate return would be rendered toothless. The FDIC-R does not know whether the Trustee has received the IRS Proposed Adjustments and, if so, whether he has responded to the IRS regarding the proposals. However, the parties' rights to communicate with the IRS in this regard should certainly be equal.

21. The affirmative actions the Trustee has taken to sidestep the IRS' determination process and the Order and directives of this Court, each without notice to the FDIC-R or this Court, and without making a full disclosure to the Court of Claims of the circumstances surrounding the claims for the Tax Refunds, render uncertain the status of a determination on the FDIC-R's tax return. Accordingly, stay relief is warranted to allow the FDIC-R to remedy this state of affairs by intervening in the Court of Claims

Action, or commencing a different action in a Court of competent jurisdiction concerning the same issues, and/or (ii) participating in the IRS administrative process in connection with the Tax Refunds by, *inter alia*, responding to the IRS Proposed Adjustments.

### III. RELIEF FROM BANKRUPTCY RULE 4001(a)(3) IS APPROPRIATE

22. Bankruptcy Rule 4001(a)(3) provides that "[a]n order granting a motion for relief from an automatic stay…is stayed until the expiration of 14 days after the entry of the order, *unless the court orders otherwise.*" Fed. R. Bankr. P. 4001(a)(3) (emphasis added). Relief from Bankruptcy Rule 4001(a)(3) is necessary and appropriate here because of the FDIC-R's immediate need to either intervene in the Court of Claims Action or commence a separate action in a Court of competent jurisdiction to appropriately safeguard its interests in and to the Tax Refunds. Accordingly, the FDIC-R requests that this Court waive the 14-day stay imposed by Bankruptcy Rule 4001(a)(3) with respect to any Order that it enters on the motion.

### CONCLUSION

23. By reason of the foregoing, cause exists for this Court to lift the automatic stay, to the extent that it applies, to permit the FDIC-R to take the proposed actions to protect its interests the Tax Refunds.

WHEREFORE, the FDIC-R respectfully requests that this Court enter an Order, in the form attached hereto, *inter alia*, (i) lifting the automatic stay pursuant to § 362(d) of the Bankruptcy Code, to the extent such relief may be required, to permit the FDIC-R to (a) intervene in the Court of Claims Action, or commence a different action in a Court of competent jurisdiction concerning the same issues, and/or (b) participate in the IRS administrative process in connection with the Tax Refunds by, *inter alia*, responding to

the IRS Proposed Adjustments; (ii) waiving the 14-day stay imposed by Bankruptcy Rule 4001(a)(3); and (iii) granting the FDIC-R such other further relief as is just and proper.

Dated: December 20, 2010

FEDERAL DEPOSIT
INSURANCE CORPORATION

Kathryn R. Norcross
Senior Counsel
Sonya L. Levine
Counsel
Federal Deposit Insurance Corporation
Legal Division
3501 Fairfax Drive
Arlington, VA 22226
Tel: (703) 562-2783
Fax: (703) 562-2475

BAYARD, P.A.
*/s/ Daniel A. O'Brien, Esq.*
Neil B. Glassman (No. 2087)
Charlene D. Davis (No. 2336)
Daniel A. O'Brien (No. 4897)
222 Delaware Ave., Suite 900
Wilmington, Delaware 19899
Tel.: (302) 655-5000
Fax: (302) 658-6395

-and-

OTTERBOURG, STEINDLER,
HOUSTON & ROSEN, P.C.
Melanie L. Cyganowski
Peter Feldman
(Admitted *Pro Hac Vice*)
230 Park Avenue
New York, New York 10169
Tel.: (212) 661-9100
Fax: (212) 682-6104

*Counsel for the Federal Deposit Insurance Corporation, in its Capacity as Receiver*